JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ADAMS CARPET CENTER INC.

**DEFENDANTS**

SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Sussex
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Scott R. Gallant, Esq. Gallant & Tull, One Penn Ctr., Ste 880, 1617 JFK Blvd., Phila PA 19103 (215)568-2900

Attorneys *(If Known)*

Amy J. Blumenthal, Esq. Kutak Rock LLP, Two Logan Sq. 100 N. 18th St., Ste 1920, Phila PA 19103 (215)299-4384

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [x] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [x] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | **LABOR** | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** | | |
| | [ ] 448 Education / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § § 1441 and 1446, et seq
Brief description of cause:
Insurance Coverage Breach of Contract and Bad Faith Claim

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
11/16/2023

SIGNATURE OF ATTORNEY OF RECORD
Amy J. Blumenthal

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions</u>.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff:  2850 Emerald Street, Philadelphia, PA 19134

Address of Defendant:  40 Wantage Avenue, Branchville, New Jersey 07890

Place of Accident, Incident or Transaction:  2850 Emerald Street, Philadelphia, Pennsylvania

---

**RELATED CASE IF ANY:**

Case Number: _____ Judge: _____ Date Terminated _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?   Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?   Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?   Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ **is** / ☒ **is not** related to any now pending or within one year previously terminated action in this court except as note above.

DATE: *Amy J Blumenthal* _____     206304 _____

Attorney-at-Law *(Must sign above)*     Attorney I.D. # (if applicable)

---

**Civil (Place a √ in one category only)**

**A.  Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. All Other Federal Question Cases. *(Please specify):* _____

**B.  Diversity Jurisdiction Cases:**

- ☒ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases:  *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, Amy J. Blumenthal _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☒ Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: 11/16/2023 _____     *Amy J Blumenthal*     206304 _____

Attorney-at-Law *(Sign here if applicable)*     Attorney ID # (if applicable)

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADAMS CARPET CENTER INC.

               Plaintiff,

     v.

SELECTIVE INSURANCE COMPANY OF
THE SOUTHEAST,

               Defendant.

Civil Action No.

## <u>NOTICE OF REMOVAL</u>

Please take notice that defendant Selective Insurance Company of the Southeast ("Selective"), through its undersigned attorneys and pursuant to 28 U.S.C. §§ 1441 and 1446, files this Notice of Removal and hereby removes this case brought by Adams Carpet Center Inc. ("Plaintiff") from the Court of Common Pleas of Philadelphia County at Case No. 231001459 (the "State Court Action") to the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1441, *et seq.*, and in support of this removal states as follows:

1.     Plaintiff and defendant Selective are citizens of different states.

2.     Plaintiff is a citizen of Pennsylvania. "Plaintiff, Adams Carpet Center Inc., is a Pennsylvania corporation with a principal place of business at the address set forth above" in Plaintiff's Complaint, which is listed as "2850 Emerald Street, Philadelphia, PA 19134". *See* **Exhibit 1**, Plaintiff's Complaint, attached hereto, at ¶ 1.

3.      Defendant Selective is a corporation organized and existing under the laws of the Indiana with its principal place of business at 40 Wantage Avenue, Branchville, New Jersey 07890, and Plaintiff identifies the correct New Jersey address in its Complaint.

4.      Plaintiff's Complaint concerns alleged damage to " . . . Plaintiff's premises located at 2850 Emerald Street, Philadelphia, Pennsylvania, 19134". *Id.* at ¶ 3.

5.      Plaintiff alleges in the Complaint that "On or about October 16, 2022, while the [applicable] said policy of insurance was in full force and effect, Plaintiff suffered a sudden and accidental direct physical loss to the insured premises, resulting in damage and loss. *Id.* at ¶ 5.

6.      Plaintiff states further that "[s]olely as a result of Defendant's failure and refusal to pay benefits to Plaintiff as required under the aforementioned policies of insurance, as well as the mishandling of Plaintiff's claim, Plaintiff has suffered loss and damage in an amount in excess of $50,000". *Id.* at ¶ 10.

7.      Plaintiff brings a count for Breach of Contract. *Id*. at ¶¶ 11-12.

8.      Plaintiff also brings a count for Bad Faith in alleged violation of 42 Pa.C.S.A. §8371. *Id*. at ¶¶ 13-16.

9.      In addition to compensatory damages, Plaintiff seeks "punitive damages, counsel fees and costs, together with interest on Plaintiff's claim in an amount equal to the prime rate of interest plus three percent (3%), in an amount in excess of $50,000." *Id.*

10.     The amount in controversy is based on the complaint allegations and where a specific amount is not alleged, it is based on a determination of whether "'to a legal certainty the claim is really for less than the jurisdictional amount.'" *Golden v. Golden*, 382 F.3d 348, 354 (3d Cir. 2004) (quoting *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961)).

11.     Demands for punitive damages are included in the calculation of the amount in controversy.  *See, e.g., Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004) ("a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum.").

12.     Additionally, when attorney's fees are recoverable under an alleged statutory cause of action, such fees are included in the calculation of the amount in controversy.  *See, e.g., Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) ("attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action.").

13.     Pennsylvania's statute creating a cause of action for insurance bad faith, 42 Pa. C.S.A. § 8371, permits recovery by a successful plaintiff of punitive damages, attorney's fees, interest and costs.

14.     Accordingly, the amount in controversy in this matter exceeds $75,000.

15.     Pursuant to 28 U.S.C. § 1441, "[A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."

16.     This Court has, and at the time of the filing of the State Court Action in Philadelphia County, had, original jurisdiction based upon diversity of citizenship over this action pursuant to 28 U.S.C. § 1332 (a) (1).

17.     In the instant action, Plaintiff filed a Complaint in the Court of Common Pleas of Philadelphia County on October 13, 2023; Plaintiff mailed the Complaint to Selective on

October 17, 2023; Selective was served with the Complaint on October 20, 2023 via Certified

Mail/Return Receipt Requested with tracking number 9589 0710 5270 0649 3890 06; and an

Affidavit of Service was filed with the Court on October 31, 2023 noting the October 20, 2023

service date.

18.     No further documents have been filed in this matter.

19.     This Notice for Removal is timely made under 28 U.S.C. § 1446(b) because it has

been filed within thirty days of the October 20, 2023 date of service of Plaintiff's Complaint

upon Selective.

20.     Given Plaintiff's alleged contractual and statutory based damages, plus interest

and costs, the instant action satisfies the amount in controversy requirement pursuant to 28

U.S.C. § 1332 insofar as the amount in controversy exceeds $75,000, although Selective denies

that Plaintiff will ultimately recover such amount.

21.     The Complaint contains the information necessary to ascertain removal.

22.     A copy of the Complaint filed in the State Court Action and received by Selective

is attached hereto as **Exhibit 1**.

23.     Pursuant to Fed. R. Civ. P. 7.1, Selective's Corporate Disclosure Statement will

be filed with the Court.

24.     Pursuant to 28 U.S.C. § 1446 (d), Selective shall give written notice to Plaintiff

and shall file a copy of this notice with the clerk of the State court, which shall affect the

removal and the State court shall proceed no further unless and until the case is remanded.

25.     Selective hereby reserves all defenses which it may be able to assert or as to

which it otherwise is entitled to as a matter of law and does not waive any such defenses.

WHEREFORE, Defendant Selective, pursuant to 28 U.S.C. § § 1441 and 1446, *et seq.*, hereby gives notice that the case pending in the matter of *Adams Carpet Center Inc. v. Selective Insurance Company of the Southeast*, Court of Common Pleas of Philadelphia County, at Docket No. 231001459, is hereby removed to this Court.


Dated:  November 16, 2023

Respectfully submitted,

KUTAK ROCK LLP


By: _____

Amy J. Blumenthal
PA ID: 206304
100 N. 18th Street, Suite 1920
Philadelphia, PA 19103
(215) 299-4384
amy.blumenthal@kutakrock.com

*Attorneys for Defendant Selective*
*Insurance Company of the Southeast*

# EXHIBIT 1

# GALLANT & TULL

*Attorneys at Law*

SCOTT R. GALLANT *
STEPHAN J. TULL**

* admitted in PA and NJ
** admitted in PA, NJ, and MD

PHILADELPHIA OFFICE
ONE PENN CENTER, SUITE 880
1617 JOHN F. KENNEDY BOULEVARD
PHILADELPHIA, PENNSYLVANIA 19103
TELEPHONE: (215) 568-2900
FAX: (215) 568-2901
WWW.SGALLANTLAW.COM
SGALLANT@SGALLANTLAW.COM
STULL@SGALLANTLAW.COM

NEW JERSEY OFFICE
110 MARTER AVENUE, SUITE 306
MOORESTOWN, NEW JERSEY 08057


RECEIVED
OCT 2 0 2023
Selective Insurance
Corporate Legal Department

FILE No.:  7170                    October 17, 2023

**CERTIFIED MAIL RRR**
**9589 0710 5270 0649 3890 06**
Selective Insurance Company of the Southeast
40 Wantage Avenue
Branchville, NJ 07890

RE:    *Adams Carpet Center Inc. v. Selective Insurance Company of the Southeast*
        *Philadelphia County; CCP; October Term, 2023, No. 1459*

Dear Sir/Madam:

Enclosed please find a Civil Action Complaint, which has been filed against you in the above-referenced matter. I would advise you to forward this document to your attorney immediately as it requires an Answer within thirty (30) days. If you would like to discuss an amicable resolution of this matter, please do not hesitate to contact me.

Thank you for your attention to this matter.

Very truly yours,
S. GALLANT LAW, P.C.

SCOTT R. GALLANT

SRG/kc
Enclosure

Court of Common Pleas of Philadelphia County
Trial Division

**Civil Cover Sheet**

For Prothonotary Use Only (Docket Number)

**OCTOBER 2023**

E-Filing Number: 2310028625

**01459**

| | |
|---|---|
| PLAINTIFF'S NAME<br>ADAMS CARPET CENTER INC. | DEFENDANT'S NAME<br>SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST |
| PLAINTIFF'S ADDRESS<br>2850 EMERALD STREET<br>PHILADELPHIA PA 19134 | DEFENDANT'S ADDRESS<br>40 WANTAGE AVENUE<br>BRANCHVILLE NJ 07890 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>RECEIVED<br>OCT 2 0 2023 |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>Selective Insurance<br>Corporate Legal Department |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |

| TOTAL NUMBER OF PLAINTIFFS<br>1 | TOTAL NUMBER OF DEFENDANTS<br>1 | COMMENCEMENT OF ACTION<br>☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☐ Writ of Summons  ☐ Transfer From Other Jurisdictions |
|---|---|---|

| AMOUNT IN CONTROVERSY<br>☐ $50,000.00 or less<br>☒ More than $50,000.00 | COURT PROGRAMS<br>☐ Arbitration  ☐ Mass Tort  ☐ Commerce  ☐ Settlement<br>☐ Jury  ☐ Savings Action  ☐ Minor Court Appeal  ☐ Minors<br>☒ Non-Jury  ☐ Petition  ☐ Statutory Appeals  ☐ W/D/Survival<br>☐ Other: |
|---|---|

CASE TYPE AND CODE
10 — CONTRACTS OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CAPTION AND DOCKET NUMBER)

**FILED**
**PRO PROTHY**
OCT **13** 2023
**C. SMITH**

IS CASE SUBJECT TO COORDINATION ORDER?   YES   NO

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: ADAMS CARPET CENTER INC.

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>SCOTT R. GALLANT | ADDRESS<br>S GALLANT LAW PC<br>ONE PENN CENTER SUITE 880<br>1617 JOHN F KENNEDY BLVD<br>PHILADELPHIA PA 19103 |
|---|---|
| PHONE NUMBER (215)568-2900 | FAX NUMBER (215)568-2901 | |
| SUPREME COURT IDENTIFICATION NO.<br>69676 | E-MAIL ADDRESS<br>sgallant@sgallantlaw.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>SCOTT GALLANT | DATE SUBMITTED<br>Friday, October 13, 2023, 01:26 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

# RECEIVED

OCT 2 0 2023

**GALLANT & TULL**
By: SCOTT R. GALLANT, ESQUIRE
Identification No. 69676
One Penn Center, Suite 880
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
sgallant@sgallantlaw.com
Telephone: (215) 568-2900

Selective Insurance
Corporate Legal Department

**MAJOR NON-JURY**

Filed and Attested by the
Office of Judicial Records
13 OCT 2023 01:26 pm
C. SMITH

Attorney for Plaintiff

---

ADAMS CARPET CENTER INC.
2850 Emerald Street
Philadelphia, PA 19134

        v.

SELECTIVE INSURANCE COMPANY
OF THE SOUTHEAST
40 Wantage Avenue
Branchville, NJ 07890

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

OCTOBER TERM, 2023

NO.

---

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal. |
| You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help. | |

PHILADELPHIA COUNTY BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
ONE READING CENTER
PHILADELPHIA, PENNSYLVANIA 19107
TELEPHONE: (215) 238-6333

**GALLANT & TULL**
By: SCOTT R. GALLANT, ESQUIRE
Identification No. 69676
One Penn Center, Suite 880
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
sgallant@sgallantlaw.com
Telephone: (215) 568-2900

**MAJOR NON-JURY**       RECEIVED

Attorney for Plaintiff       OCT 2 0 2023

Selective Insurance
Corporate Legal Department

---

ADAMS CARPET CENTER INC.
2850 Emerald Street
Philadelphia, PA 19134

    v.

SELECTIVE INSURANCE COMPANY
OF THE SOUTHEAST
40 Wantage Avenue
Branchville, NJ 07890

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

OCTOBER TERM, 2023

NO.

---

**CIVIL ACTION**
**(1C. Contracts)**

1.    Plaintiff, Adams Carpet Center Inc., is a Pennsylvania corporation with a principal place of business at the address set forth above.

2.    Defendant, Selective Insurance Company of the Southeast, is a corporation duly organized and existing which is licensed to issue policies of insurance in the Commonwealth of Pennsylvania and maintains its principal place of business at the address set forth above. Defendant regularly conducts business in the State of Pennsylvania.

3.    Defendant, Selective Insurance Company of the Southeast, in its regular course of business issued to Plaintiff a policy of insurance, policy number 2210263 covering Plaintiff's premises located at 2850 Emerald Street, Philadelphia, PA 19134. A copy of the policy is attached hereto and marked as Exhibit "A".

4.   At all times material hereto, Defendant was acting either individually or through their duly authorized agents, servants, workmen or employees, who were acting within the course and scope of their employment and on the business of said employer.

5.   On or about October 16, 2022 while said policy of insurance was in full force and effect, Plaintiff suffered a sudden and accidental direct physical loss to the insured premises, resulting in damage and loss.

6.   Notice of Plaintiff's covered loss was given to Defendant in a prompt and timely manner and Plaintiff has done and otherwise performed all things required of them under the policy of insurance issued by Defendant, including cooperating with Defendant's investigation; mitigating damages where reasonable, required and/or possible; providing Defendant with all available information and complying with all conditions precedent.

7.   Defendant denied coverage for the aforementioned loss without a reasonable basis for doing so.

8.   To the extent that Defendant failed and refused to fully indemnify Plaintiff completely for the loss, Defendant denied coverage for certain aspects of the claim in whole or in part.

9.   Defendant, despite demand for benefits under its policy of insurance have failed and refused to pay to Plaintiff those benefits due and owing under said policy of insurance.

10.   Solely as a result of Defendant's failure and refusal to pay benefits to Plaintiff as required under the aforementioned policies of insurance, as well as the

mishandling of Plaintiff's claim, Plaintiff has suffered loss and damage in an amount in excess of $50,000.00.

## COUNT I - BREACH OF CONTRACT

11.    Plaintiff incorporates by reference herein the facts and allegations contained in the forgoing paragraphs as though same were set forth herein at length.

12.    Defendant has breached its contractual obligation to pay benefits to Plaintiff for a loss covered under Defendant's policy of insurance.

**WHEREFORE**, Plaintiff demands judgment against Defendant in an amount in excess of $50,000.00 together with interest and costs.

## COUNT II - BAD FAITH

13.    Plaintiff incorporates by reference herein the facts and allegations contained in the forgoing paragraphs as though same were set forth herein at length.

14.    Defendant has engaged in Bad Faith conduct toward Plaintiff and has treated Plaintiff unreasonably and unfairly with respect to its adjustment of Plaintiff's covered loss, in violation of 42 Pa.C.S.A. §8371.

15.    In furtherance of its bad faith and wrongful denial and refusal to pay benefits for Plaintiff's covered loss, Defendant, acting by and through its duly authorized agents, servants, workmen or employees, has engaged in the following conduct:

(a)    in failing and/or refusing to pay for all damages suffered by Plaintiff in his covered claim without reasonable basis;

(b)    in failing to acknowledge and act promptly upon written or oral communications made by Plaintiff and/or his representatives;

(c)      in failing to effectuate a prompt, fair and equitable settlement of Plaintiff's claim when its liability under the policies became reasonably clear;

(d)      in misrepresenting pertinent facts or policy or contract provisions relating to the coverages at issue;

(e)      in refusing to pay Plaintiff's claim without conducting a reasonable and fair investigation based upon all available information;

(f)      in refusing to submit the disagreement concerning the extent and amount of the loss suffered by Plaintiff to appraisal as required under the terms and conditions of the policy of insurance issued by Defendant;

(g)      in failing to complete a prompt and thorough investigation of Plaintiff's claim before representing to Plaintiff that such claim is not covered under this policy of insurance;

(h)      in failing to pay Plaintiff's covered loss in a prompt and timely manner;

(i)      in failing to conduct a prompt and adequate investigation in order to promptly conclude its adjustment of Plaintiff's claim;

(j)      in acting in an obstructive, deceitful and dilatory manner;

(k)      in failing to acknowledge or otherwise act upon Plaintiff's claim in a prompt and timely manner;

(l)      in treating Plaintiff with reckless indifference and disregard under the circumstances;

(m)   in not having a reasonable basis for denying Plaintiff's benefits under the policy and in knowingly or recklessly disregarding their lack of reasonable basis when it denied Plaintiff's claim;

(n)   in interpreting ambiguous terms, provisions and/or conditions of the aforementioned policies in their favor and against Plaintiff;

(o)   in delaying settlement of this claim and by making unreasonable and unnecessary demands on the Plaintiff;

(p)   In deviating from construction and/or industry standards, practices and principles;

16.   Solely as a result of Defendant's bad faith misconduct as aforesaid, Plaintiff has been required to obtain counsel to commence the present action to recover benefits due and owing under the policy of insurance issued by Defendant for Plaintiff's covered loss, and has incurred costs and other expenses in connection with said claim.

**WHEREFORE**, Plaintiff demands judgment against Defendant for punitive damages, counsel fees and costs, together with interest on Plaintiff's claim in an amount equal to the prime rate of interest plus three percent (3%), in an amount in excess of $50,000.00.

**S. GALLANT LAW, P.C.**

BY:   /s/ Scott R. Gallant
        SCOTT R. GALLANT, ESQUIRE
        Attorney for Plaintiff

Case ID: 231001459

## VERIFICATION

The undersigned, having read the attached document, verifies that the within document is based on information furnished to counsel, which information has been gathered by counsel in the course of this lawsuit. The language of the document is that of counsel and not of signer. Signer verifies that he/she has read the within document and that it is true and correct to the best of signer's knowledge, information, and belief. To the extent that the contents of the document are that of counsel, verifier has relied upon counsel in taking this Verification. This Verification is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

X _____

**ERNIE RADBILL ON BEHALF OF ADAMS CARPET CENTER, INC**

**FILE NO.: 7170**

Case ID: 231001459

# EXHIBIT "A"

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F    rance Company

| Policy Number |
| S  2210263 |

## SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST
3426 TORINGDON WAY, CHARLOTTE, NC 28277

## COMMERCIAL POLICY COMMON DECLARATION

**Named Insured and Address**
ADAMS CARPET CENTER INC
2850 EMERALD ST
PHILADELPHIA, PA 19134-3548

**Policy Period**
From:  FEBRUARY 12, 2022
To:      FEBRUARY 12, 2023

12:01 A.M. Standard Time At
Location of Designated Premises.

**Named Insured is:**
CORPORATION

**Producer Number:**
00-02680-00000

**Producer:**
THE REINARD AGENCY INC
PENNSYLVANIA

### Schedule of Coverage

COMMERCIAL AUTOMOBILE COVERAGE
BUSINESSOWNERS COVERAGE
COMMERCIAL UMBRELLA COVERAGE
EMPLOYMENT PRACTICES LIABILITY
CYBER LIABILITY

REFER TO THE ATTACHED IMPORTANT NOTICE CA7048 FOR
INFORMATION REGARDING COLLISION COVERAGE ON RENTAL VEHICLES
PREMIUM INCLUDES       TERRORISM - CERTIFIED ACTS         $152.00
PREMIUM INCLUDES       TERRORISM - AUTO                         $88.00

In return for payment of the premium,  and subject to all the terms of this policy,  we agree with
you to provide the insurance indicated in the schedule above.  Insurance is provided only for those
coverages for which a specific limit is shown on the attached coverage declaration(s).

**PAYMENT METHOD**
D/B - 10

**Total Policy Premium** _____ $13,098.00
(This premium may be subject to adjustment.)

**Date Issued:**      JANUARY 20, 2022
**Issuing Office:**   MID ATLANTIC REGION

**Authorized Representative** _____

IL-7025 (11/89)

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

Policy Number
S  2210263

# SCHEDULE OF LOCATIONS

| Policy Effective Date: | FEBRUARY 12, 2022 | Schedule Effective Date: | FEBRUARY 12, 2022 |
|---|---|---|---|

| Prem. No. | Location | Bldg. No. | Occupancy |
|---|---|---|---|
| 1 | 2850 EMERALD ST PHILADELPHIA, PA 19134 | 1 | CARPET STORE |
| 2 | 2066 STREET RD BENSALEM, PA 19020 | 1 | CARPET STORE |
| 3 | 7039 RIDGE AVE PHILADELPHIA, PA 19128 | 1 | FLOOR COVERING |

IL-7036 (01/93)                    INSURED'S COPY                    Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| | Policy Number |
|---|---|
| | S  2210263 |

## COMMERCIAL POLICY FORMS AND ENDORSEMENT SCHEDULE

| Policy Effective Date:  FEBRUARY 12, 2022 | Schedule Effective Date:  FEBRUARY 12, 2022 |
|---|---|

THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
COMMON COVERAGE PART:

```
IL 70 25B   1189   COMMERCIAL POLICY COMMON DECLARATION
IL 70 36    0193   SCHEDULE OF LOCATIONS
IL 00 03    0908   CALCULATION OF PREMIUM
IL 00 17    1198   COMMON POLICY CONDITIONS
IL 00 21    0908   NUCLEAR ENERGY LIABILITY EXCLUSION
IL 70 65    1219   PA CHANGES - CANC AND NONRENEWAL
IL 89 48    0818   EXCLUSION-LEAD HAZARD
IL 89 56    0818   ASBESTOS EXCLUSION
```

THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
BUSINESS AUTOMOBILE COVERAGE PART:

```
CA 70 57    0292   AUTO DEC -LOSS PAYEE
CA 70 58A   0292   BUSINESS AUTO COVERAGE DECLARATION PAGE2
CA 00 01    1013   BUSINESS AUTO COVERAGE FORM
CA 01 80    0321   PENNSYLVANIA CHANGES
CA 04 42    1013   EXCL FED EMPLOYEES USING AUTO IN GOV BUS
CA 20 54    1013   EMPLOYEE HIRED AUTOS
CA 21 92    1015   PA UM-NON STACKED
CA 21 93    1013   PENNSYLVANIA UNDERINSURED NON STACKED
CA 22 37    1013   PA BASIC FIRST PARTY BENEFIT
CA 22 38    1015   PA ADDED AND COMB FIRST PARTY BEN ENDT
CA 70 38A   0818   PHYSICAL DAMAGE COVERAGE
CA 77 59    0818   PA UM AND UIM COVERAGE CHANGES
CA 77 74    0706   LIMITED MOBILE EQUIPMENT COVERAGE
CA 78 09    1117   ELITEPAC COMMERCIAL AUTO EXT END
CA 78 16    1117   COMMERCIAL AUTO ELITEPAC SCHEDULE
IL 02 46    0907   PENNSYLVANIA CHANGES-CANC & NONRFNL
IL 09 10    0702   PENNSYLVANIA NOTICE(H0291 WC570602)
```

THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
COMMERCIAL BUSINESS OWNERS COVERAGE PART:

```
BP 71 19    0919   BUSINESSOWNERS COVERAGE DECLARATIONS
BP 72 49    0919   BUSINESSOWNERS SCHEDULE PLUS COVERAGE
BP IN 01    0713   BUSINESSOWNERS COVERAGE FORM INDEX
BP 00 03    0713   BUSINESSOWNERS COVERAGE FORM
BP 01 42    0315   PA CHANGES
BP 01 91    0702   PENNSYLVANIA NOTIC
BP 04 17    0110   EMPLOYMENT RELATED PRACTICES EXCLUSION
BP 04 83    0110   REMOVAL OF INSURANCE TO VALUE PROVISION
BP 05 01    0702   CALCULATION OF PREMIUM
BP 05 23    0115   CAP ON LOSS FROM CERT ACTS OF TERRORISM
BP 05 77    0106   FUNGI OR BACTERIA EXCLUSION LIABILITY
BP 14 17    0110   DESIGNATED LOC GENERAL AGGR LIMIT
BP 15 04A   0514   EXCL ACCESS DISCLOSURE CONFIDENTIAL INFO
BP 70 27    0918   ELECTRONIC INFORMATION SYSTEMS COVERAGE
BP 71 35    0918   EQUIPMENT BREAKDOWN
BP 72 24    0918   EMPL THEFT-INCL EMPL BENEFIT PLANS
BP 72 25    0918   COMPUTER FRAUD ENDORSEMENT
BP 72 26    0918   FUNDS TRANSFER FRAUD ENDT
BP 72 27    0918   FINE ARTS
BP 72 46    0721   BUSINESSOWNERS PROPERTY ENHANCEMENT END
BP 72 47    0919   BOP LIABILITY ENHANCEMENT ENDORSEMENT
BP 72 67    0918   ORDINANCE OR LAW
BP 72 68    0918   FORGERY OR ALTERATIONS ENDORSEMENT
BP 72 75    0918   BUS LIAB COV - AGG LIMITS OF INS
```

**NOTICE TO POLICYHOLDER:**  All the forms and endorsements contained in this policy as of the "Schedule Effective Date" are listed above. Forms and endorsements added to the policy after this date will appear on a "Policy Changes" endorsement. Please read your policy and all "Policy Changes" carefully.

NOTE: All applicable "IL" endorsements  will be attached in the Common Section of the policy.

IL-7035 (08/93)

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| | Policy Number |
|---|---|
| | S  2210263 |

# COMMERCIAL POLICY FORMS AND ENDORSEMENT SCHEDULE

| Policy Effective Date: | FEBRUARY 12, 2022 | Schedule Effective Date: | FEBRUARY 12, 2022 |
|---|---|---|---|

THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
COMMERCIAL BUSINESS OWNERS COVERAGE PART:

| BP 72 76A | 0918 | ADDITIONAL LIAB EXP SCHED |
|---|---|---|
| BP 72 85 | 1020 | AMENDATORY ENDORSEMENT |
| BP 80 13 | 0918 | EQUIPT BRKDWN DED END |
| BP 80 30 | 0918 | TWO OR MORE POL ISSUED-ANTI STACK |
| IL 09 85 | 1220 | DISCL PURSUANT TO TERR RISK INS ACT |

THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
COMMERCIAL UMBRELLA COVERAGE PART:

| CX 00 03A | 0199 | COMMERCIAL EXCESS/UMBRELLA DEC |
|---|---|---|
| CXL   4 | 0403 | COMMERCIAL UMBRELLA LIAB COVG |
| CXL  17 | 1099 | ASBESTOS EXCLUSION |
| CXL  63A | 0199 | PROPERTY OF OTHERS EXCLUSION |
| CXL 132 | 0403 | PERSONAL & ADVERTISING INJURY LIAB |
| CXL 162 | 0403 | PA CHANGES-CANCELLATION & NON-RENEWAL |
| CXL 167 | 0199 | PENNSYLVANIA NOTICE |
| CXL 211 | 0403 | EMPLOYEE BENEFITS LIABILITY LIMITATION |
| CXL 318 | 0403 | EXCLUSION - LEAD HAZARD |
| CXL 383 | 0702 | FUNGI OR BACTERIA EXCLUSION |
| CXL 388 | 0115 | CAP ON LOSSES FROM CERT ACTS OF TERR |
| CXL 400 | 0403 | NUCLEAR ENERGY LIABILITY EXCLUSION END |
| CXL 423 | 0714 | RESULTING DAMAGE TO YOUR WORK |
| CXL 453 | 0413 | EXCL-EMPLOYMENT PRACTICES LIABILITY |
| CXL 462 | 1115 | COMMERCIAL UMBRELLA LIABILITY |
| CXL 497 | 0620 | EXCLUSION - CYBER LIABILITY |
| IL 09 85 | 1220 | DISCL PURSUANT TO TERR RISK INS ACT |

THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART:

| EPL 00 03 | 0407 | EMPL PRACTICES LIAB COVERAGE DEC |
|---|---|---|
| EPL 00 01 | 0918 | POLICY FORM |
| IL 09 10 | 0702 | PENNSYLVANIA NOTICE(H0291 WC370602) |

THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
CYBER LIABILITY COVERAGE PART:

| CB 00 10 | 1219 | CYBER LIABILITY DECLARATIONS CB0010 |
|---|---|---|
| CB 00 01 | 1219 | CYBER LIABILITY AND DATA BREACH COV FORM |
| CB 70 10 | 1219 | PA CHANGES |
| CB 79 08 | 0620 | ADDITIONAL INSURED - AUTO STATUS |
| CB 80 01 | 1219 | NUCLEAR ENERGY EXCLUSION |
| CB 80 02 | 1219 | RADIOACTIVE CONTAMINATION EXCLUSION |
| CB 80 03 | 1219 | SANCTION LIMITATION AND EXCLUSION CLAUSE |
| IL 09 85 | 1220 | DISCL PURSUANT TO TERR RISK INS ACT |

**NOTICE TO POLICYHOLDER:**  All the forms and endorsements contained in this policy as of the "Schedule Effective Date" are listed above. Forms and endorsements added to the policy after this date will appear on a "Policy Changes" endorsement.  Please read your policy and all "Policy Changes" carefully.

**NOTE:** All applicable "IL" endorsements will be attached in the Common Section of the policy.

IL-7035 (08/93)

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

# ~~DISCLOSURE PURSU~~ANT TO TERRORISM RISK INSURANCE ACT

POLICY NUMBER: S  2210263

IL 09 85 12 20

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

## SCHEDULE

| SCHEDULE — PART I |
|---|
| Terrorism Premium (Certified Acts)        $162.00 |
| This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies): |
| BUSINESSOWNERS COVERAGE PART<br>UMBRELLA LIABILITY COVERAGE PART |
| |
| Additional Information, if any, concerning the terrorism premium: |
| |

| SCHEDULE — PART II |
|---|
| Federal share of terrorism losses     80     % |
| (Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Copyright, Insurance Services Office, Inc., 2020

INSURED'S COPY

IL 09 85 12 20
Page 1 of 2

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

### A. Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

### B. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### C. Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Copyright, Insurance Services Office, Inc., 2020

INSURED'S COPY

IL 09 85 12 20
Page 2 of 2

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| | Policy Number |
|---|---|
| | S  2210263 |

Company Name:   SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST

# CYBER LIABILITY AND DATA BREACH RESPONSE POLICY DECLARATIONS

INSURING AGREEMENTS 1., 3., 4. AND 5. OF THIS POLICY PROVIDE COVERAGE ON A CLAIMS MADE AND REPORTED BASIS AND APPLY ONLY TO "CLAIMS" FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. AMOUNTS INCURRED AS "CLAIMS EXPENSES" UNDER THIS POLICY SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO RETENTIONS.

INSURING AGREEMENTS 2., 6., 7., 8., 9. AND 10. OF THIS POLICY PROVIDE FIRST PARTY COVERAGE.

| Named Insured and Address: SEE COMMERCIAL POLICY COMMON DECLARATION: IL-7025 | Policy Period From:   02/12/2022 To:      02/12/2023 12:01 A.M Standard Time At Named Insured Mailing Address. |
|---|---|
| | Producer Number: 00-02680-00000 |

Producer: THE REINARD AGENCY INC

| Item 1. | |
|---|---|
| **Policy Aggregate Limit of Liability:** Aggregate for all loss, including "claims expenses", subject to the following: | $50,000 |
| Information Security and Privacy Liability Aggregate Limit: | $50,000 |
| Regulatory Defense and Penalties Aggregate Sublimit: | $25,000 |
| Website Media and Content Liability Aggregate Limit: | $50,000 |
| PCI Fines, Expenses and Costs Aggregate Sublimit: | $25,000 |
| Cyber Extortion Aggregate Sublimit: | $20,000 |
| First Party Data Protection Aggregate Sublimit: | $10,000 |
| First Party Network Business Interruption Aggregate Sublimit: | $10,000 |
| Fraudulent Instruction Aggregate Sublimit: | $5,000 |
| Electronic Crime Aggregate Sublimit: | $5,000 |

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 00 10 12 19
Page 1 of 2

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| Item 2. | |
|---|---|
| **Retention Per "Claim" or Incident** | |
| Information Security and Privacy Liability Retention: | N/A |
| Regulatory Defense and Penalties Retention: | N/A |
| Website Media and Content Liability Retention: | N/A |
| PCI Fines, Expenses and Costs Retention: | N/A |
| Cyber Extortion Retention: | $2,500 |
| First Party Data Protection Retention: | $2,500 |
| First Party Network Business Interruption Retention: | the greater of $2,500 or income loss during 12 hour waiting period |
| Fraudulent Instruction Retention: | $2,500 |
| Electronic Crime Retention: | $2,500 |

| Item 3. | |
|---|---|
| **Privacy Breach Response Services Aggregate Limit of Coverage**<br>The Privacy Breach Response Services Aggregate Limit of Coverage is separate from and in addition to the Policy Aggregate Limit of Liability. | |
| "Computer Expert Services", "Legal Services" and "Public Relations and Crisis Management Expenses" Aggregate Limit: | $50,000 |
| Notified Individuals - "Notification Services", "Call Center Services" and "Breach Resolution and Mitigation Services" Aggregate Limit: | 5,000 Notified Individuals |

| Item 4. | |
|---|---|
| **Privacy Breach Response Services Retention Per Incident** | |
| "Computer Expert Services", "Legal Services" and "Public Relations and Crisis Management Expenses" Retention: | N/A |
| Notified Individuals Threshold: | N/A Notified Individuals |

| Item 5. | |
|---|---|
| **Retroactive Date** | NONE |

| Policy Premium | $50.00 |
|---|---|

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 00 10 12 19
Page 2 of 2

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

# CYBER LIABILITY AND DATA BREACH RESPONSE COVERAGE FORM

CYBER LIABILITY AND DATA BREACH RESPONSE
CB 00 01 12 19

## PLEASE READ THE ENTIRE POLICY CAREFULLY.

**INSURING AGREEMENTS 1., 3., 4. AND 5. OF THIS POLICY PROVIDE COVERAGE ON A CLAIMS MADE AND REPORTED BASIS AND APPLY ONLY TO "CLAIMS" FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. AMOUNTS INCURRED AS "CLAIMS EXPENSES" UNDER THIS POLICY SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO RETENTIONS.**

**INSURING AGREEMENTS 2., 6., 7., 8., 9. AND 10. OF THIS POLICY PROVIDE FIRST PARTY COVERAGE.**

**IF WE HAVE ISSUED THIS POLICY BASED UPON YOUR APPLICATION FOR THIS INSURANCE, WE HAVE DONE SO BASED UPON INFORMATION ON THAT APPLICATION, WHICH IS A REPRESENTATION OF THE CORRECTNESS OF THE INFORMATION.**

The terms and conditions of the Cyber Liability and Data Breach Response Policy govern the scope of coverage and your and our duties. The Application for this insurance coverage will become part of the Policy upon issuance of the coverage.

Throughout this Policy, the words "you" and "your" refer to the "named insured(s)" shown in the Declarations and any other person(s) or organization(s) qualifying as a "named insured" under this Policy.

The words "we", "us" and "our" refer to the company providing this coverage. The word "insured" means any person or organization qualifying as such under **SECTION III — WHO IS AN INSURED.**

This Policy provides cyber liability and data breach response coverage. Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine your rights and duties and what is and is not covered. The terms, conditions, exclusions, and limits of liability set forth in this Policy apply only to the coverage provided by this Policy.

Words and phrases that appear in quotation marks have special meaning. Refer to **SECTION XI — DEFINITIONS.** To the extent any words or phrases used in this Policy are defined elsewhere in endorsements attached to this Policy, such definitions provided elsewhere do not apply to give meaning to the words or phrases used in this Policy.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 00 01 12 19
Page 1 of 24

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

## SECTION I — INSURING AGREEMENTS

Coverage is provided under the following insuring agreements for which limits of liability are shown in the Declarations:

### 1. Information Security and Privacy Liability

We will pay on behalf of the insured, "damages" and "claims expenses", in excess of the retention, which the insured shall become legally obligated to pay because of any "claim", including a "claim" for a violation of a "privacy law", first made against any insured and reported in writing to us during the "policy period" or any applicable extended reporting period, subject to **SECTION VIII — NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM** for:

**A.** theft, loss, or "unauthorized disclosure" of "personally identifiable information" or "third party information" that is in the care, custody or control of the "insured organization", or a third party for whose theft, loss or "unauthorized disclosure" of "personally identifiable information" or "third party information" the "insured organization" is legally liable (a third party shall include a business associate as defined by the Health Insurance Portability and Accountability Act (HIPAA)), provided such theft, loss or "unauthorized disclosure" first takes place on or after the retroactive date and before the end of the "policy period";

**B.** one or more of the following acts or incidents that directly result from a failure of "computer security" to prevent a "security breach", provided that such act or incident first takes place on or after the retroactive date and before the end of the "policy period":

    **I.** the alteration, corruption, destruction, deletion, or damage to data stored on "computer systems";

    **II.** the failure to prevent transmission of "malicious code" from "computer systems" to computer or network systems that are not owned, operated or controlled by an insured; or

    **III.** the participation by the "insured organization's" "computer systems" in a "denial of service attack" directed against a computer or network systems that are not owned, operated or controlled by an insured;

**C.** the "insured organization's" failure to timely disclose an incident described in Paragraphs **A.** or **B.** of this section in violation of any "breach notice law"; provided such incident giving rise to the "insured organization's" obligation under a "breach notice law" must first take place on or after the retroactive date and before the end of the "policy period";

**D.** failure by the insured to comply with that part of a "privacy policy" that specifically:

    **I.** prohibits or restricts the "insured organization's" disclosure, sharing or selling of a person's "personally identifiable information";

    **II.** requires the "insured organization" to provide access to "personally identifiable information" or to correct incomplete or inaccurate "personally identifiable information" after a request is made by a person; or

    **III.** mandates procedures and requirements to prevent the loss of "personally identifiable information";

provided the acts, errors or omissions that constitute failure to comply with a "privacy policy" must first take place on or after the retroactive date and before the end of the "policy period", and the "insured organization" must, at the time of such acts, errors or omissions, have in force a "privacy policy" that addresses those subsections above that are relevant to such "claim"; or

**E.** failure by the insured to administer:

    **I.** an identity theft prevention program as required by regulations and guidelines promulgated pursuant to 15 U.S.C. Section1681m(e), as amended, or

    **II.** an information disposal program required by regulations and guidelines promulgated pursuant to 15 U.S.C Section1681W, as amended;

provided the acts, errors or omissions that constitute such failure must first take place on or after the retroactive date and before the end of the "policy period".

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**2.  Privacy Breach Response Services**

We will provide privacy breach response services to the "insured organization", in excess of the retention, because of an incident, or a reasonably suspected incident, described in Paragraphs A. or B. of **SECTION I – INSURING AGREEMENTS, 1. Information Security and Privacy Liability,** that first takes place on or after the retroactive date and before the end of the "policy period" and is both discovered by the insured and is reported to us during the "policy period" or as otherwise provided in **SECTION VIII – NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM.**

Privacy breach response services means the following:

**A.**  "computer expert services";

**B.**  "legal services";

**C.**  "public relations and crisis management expenses";

Paragraphs **A.** through **C.** are subject to a monetary limit in excess of the retention as noted in the Declarations;

**D.**  "notification services" to provide notification to:

    **I.**  individuals who are required to be notified by the "insured organization" under the applicable "breach notice law"; or

    **II.**  in our discretion, individuals affected by an incident in which their "personally identifiable information" has been subject to theft, loss, or "unauthorized disclosure" in a manner which compromises the security or privacy of such individual by posing a significant risk of financial, reputational or other harm to the individual;

**E.**  "call center services"; and

**F.**  "breach resolution and mitigation services";

Paragraphs **D.** though **F.** are subject to a maximum notified individual limit and the threshold noted in the Declarations.

Privacy breach response services will be provided subject to the terms and conditions of this Policy, subject to the applicable retentions and limitations set forth in the Declarations and shall not include any internal salary or overhead expenses of the "insured organization". Privacy breach response services will be provided by service providers from our panel selected by us in consultation with the "insured organization".

**3.  Regulatory Defense and Penalties**

We will pay on behalf of the insured, "claims expenses" and "penalties" , in excess of the retention, which the insured shall become legally obligated to pay because of any "claim" in the form of a "regulatory proceeding", first made against any insured and reported in writing to us during the "policy period" or any applicable extended reporting period, subject to **SECTION VIII – NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM,** for a violation of a "privacy law" and caused by an incident described in Paragraphs A., B. or C. of **SECTION I – INSURING AGREEMENTS, 1. Information Security and Privacy Liability** that first takes place on or after the retroactive date and before the end of the "policy period". Coverage under this insuring agreement is sub-limited to the amount set forth in the Declarations.

**4.  Website Media Content Liability**

We will pay on behalf of the insured, "damages" and "claims expenses", in excess of the retention, which the insured becomes legally obligated to pay resulting from any "claim" first made against any insured and reported in writing to us during the "policy period" or any applicable extended reporting period, subject to **SECTION VIII – NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM,** for one or more of the following acts first committed on or after the retroactive date and before the end of the "policy period" in the course of the "insured organization's" display of "media material" on its website or on social media web pages created and maintained by or on behalf of the "insured organization":

**A.**  defamation, libel, slander, trade libel, infliction of emotional distress, outrage, outrageous conduct, or other tort related to disparagement or harm to the reputation or character of any person or organization;

**B.**  a violation of the rights of privacy of an individual, including false light and public disclosure of private facts;

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 00 01 12 19
Page 3 of 24

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**C.** invasion of or interference with an individual's right of publicity, including commercial appropriation of name, persona, voice or likeness;

**D.** plagiarism, piracy or misappropriation of ideas under implied contract;

**E.** infringement of copyright;

**F.** infringement of domain name, trademark, trade name, trade dress, logo, title, metatag, slogan, service mark, service name; or

**G.** improper deep-linking or framing within electronic content.

### 5. PCI Fines, Expenses and Costs

We will indemnify the insured for "PCI fines, expenses, and costs", in excess of the retention, which the insured shall become legally obligated to pay because of a "claim" first made against any insured and reported in writing to us during the "policy period" or any applicable extended reporting period, subject to **SECTION VIII — NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM.** Coverage under this insuring agreement is sub-limited to the amount set forth in the Declarations. **SECTION II — DEFENSE AND SETTLEMENT OF CLAIMS** does not apply to any "claim" for "PCI fines, expenses, and costs" and we will have no obligation to pay "claims expenses" under this insuring agreement.

### 6. Cyber Extortion

We will indemnify the "named insured" for "cyber extortion loss", in excess of the retention, incurred by the "insured organization" as a direct result of an "extortion threat" first made against the "insured organization" during the "policy period" and reported in writing to us during the "policy period" or as otherwise provided in **SECTION VIII — NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM.** We will not pay for "cyber extortion loss" which is part of a series of related "extortion threats" that began prior to the "policy period".

### 7. First Party Data Protection

We will indemnify the "named insured" for "data protection loss", in excess of the retention, incurred by the "insured organization" as a direct result of:

**A.** alteration, corruption, destruction, deletion or damage to a "data asset", or

**B.** inability to access a "data asset"

that is directly caused by a failure of "computer security" to prevent a "security breach"; provided that such "security breach" takes place on or after the retroactive date and before the end of the "policy period" and is reported in writing to us during the "policy period" or as otherwise provided in **SECTION VIII — NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM.**

### 8. First Party Network Business Interruption

We will indemnify the "named insured" for "business interruption loss", in excess of the retention, the "insured organization" sustains during the "period of restoration" as a direct result of the actual and necessary interruption of "computer systems" caused directly by a failure of "computer security" to prevent a "security breach"; provided such "security breach" first takes place on or after the retroactive date and before the end of the "policy period" and is reported in writing to us during the "policy period" or as otherwise provided in **SECTION VIII — NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM.**

### 9. Fraudulent Instruction

We will indemnify the "named insured" for loss, in excess of the applicable retention, resulting directly from an insured having transferred, paid, or delivered any "money" or "securities" as a direct result of "fraudulent instructions", provided such loss is first discovered by the insured and reported in writing to us during the "policy period" or as otherwise provided in **SECTION VIII — NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM** and occurs on or after the retroactive date and before the end of the "policy period".

### 10. Electronic Crime

We will indemnify the "named insured" for the loss of "money" or "securities", in excess of the applicable retention, contained in a "transfer account" at a "financial institution" resulting directly from "funds transfer fraud" committed solely by a third party; provided that such loss must be discovered by the insured during the "policy period" and reported in writing to us during the "policy period" or as otherwise provided in **SECTION VIII — NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM** and occurs on or after the retroactive date and before the end of the "policy period".

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**CB 00 01 12 19**
**Page 4 of 24**

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

## SECTION II — DEFENSE AND SETTLEMENT OF CLAIMS

1. We shall have the right and duty to defend:

   A. any "claim" against the insured seeking "damages" which are payable under the terms of this Policy, even if any of the allegations of the "claim" are groundless, false or fraudulent; or

   B. under **SECTION I — INSURING AGREEMENTS, 3. Regulatory Defense and Penalties**, any "claim" in the form of a "regulatory proceeding".

   Selection of defense counsel shall be mutually agreed upon between the "named insured" and us; however, in the absence of such agreement, our decision shall be final.

2. With respect to any "claim" against the insured seeking "damages" or "penalties" which are payable under this Policy, we will pay "claims expenses" in excess of the retention incurred with our prior written consent. The Limit of Liability available to pay "damages" and "penalties" shall be reduced and may be completely exhausted by payment of "claims expenses".

3. If the insured refuses to consent to any settlement or compromise recommended by us and acceptable to the claimant and elects to contest the "claim", our liability for any "damages", "penalties", and "claims expenses" shall not exceed:

   A. (i) the amount for which the "claim" could have been settled, less the remaining retention, plus the "claims expenses" incurred up to the time of such refusal; plus

      (ii) sixty percent (60%) of any "claims expenses" incurred after the date such settlement or compromise was recommended to the insured plus sixty percent (60%) of any damages above the amount for which the "claim" could have been settled. The remaining forty percent (40%) of such "claims expenses" and "damages" must be borne by the "insured" at their own risk and uninsured; or

   B. the applicable Limit of Liability;

   whichever is less, and we shall have the right to withdraw from further defense thereof by tendering control of said defense to the insured. The portion of any proposed settlement or compromise that requires the insured to cease, limit or refrain from actual or alleged infringing or otherwise injurious activity or is attributable to future royalties or other amounts that are not "damages" (or "penalties" for "claims" covered under **SECTION I — INSURING AGREEMENTS, 3. Regulatory Defense and Penalties**) shall not be considered in determining the amount for which a "claim" could have been settled.

4. We agree that the insured may settle any "claim" where the "damages", "penalties" and "claims expenses" do not exceed the retention, provided that the entire "claim" is resolved and the insured obtains a full release on behalf of all insureds from all claimants.

## SECTION III — WHO IS AN INSURED

Whether expressed in the singular or plural, insured shall mean:

1. The "named insured" and any "subsidiaries" of the "named insured";

2. A director, "manager", or officer of the "insured organization", but only with respect to the performance of his or her duties as such on behalf of the "insured organization";

3. An employee of the "insured organization", but only for work done while acting within the scope of his or her employment and related to the conduct of the "insured organization's" business;

4. A principal if the "named insured" is a sole proprietorship, or a partner if the "named insured" is a partnership, but only with respect to the performance of their duties as such on behalf of the "insured organization";

5. Any person previously qualified as an insured under Paragraphs **2., 3.** or **4.** of this section prior to the termination of the required relationship with the "insured organization", but only with respect to the performance of his or her duties as such on behalf of the "insured organization";

6. The estate, heirs, executors, administrators, assigns and legal representatives of any insured in the event of such insured's death, incapacity, insolvency or bankruptcy, but only to the extent that such insured would otherwise be provided coverage under this Policy; and

7. The lawful spouse, including any natural person qualifying as a domestic partner under the provisions of any applicable federal, state, or local law in the United States of America, of any insured, but solely by reason of any act, error or omission of an insured other than such spouse or domestic partner.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

## SECTION IV -- EXCLUSIONS

This insurance does not apply to any "claim" or "loss":

1. For, arising out of or resulting from:

   A. physical injury, sickness, disease or death of any person, including any mental anguish or emotional distress resulting from such physical injury, sickness, disease or death; or

   B. physical injury to or destruction of any tangible property, including the loss of use thereof; provided that electronic data shall not be considered tangible property for purposes of this exclusion.

2. For, arising out of or resulting from any employer-employee relations, policies, practices, acts or omissions, or any actual or alleged refusal to employ any person, or misconduct with respect to employees, whether such "claim" is brought by an employee, former employee, applicant for employment, or relative or domestic partner of such person; provided, that this exclusion shall not apply to an otherwise covered "claim" under Paragraph A. or B. under **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability** by a current or former employee of the "insured organization", or to the providing of privacy breach response services involving current or former employees of the "insured organization".

3. For, arising out of or resulting from any actual or alleged act, error or omission or breach of duty by any director, officer or "manager" in the discharge of their duty if the "claim" is brought by or on behalf of the "named insured", a "subsidiary", or any principals, directors, officers, "managers", stockholders, members or employees of the "named insured" or a "subsidiary" in his or her capacity as such.

4. For, arising out of or resulting from any contractual liability or obligation or arising out of or resulting from breach of contract or agreement, either oral or written; however, this exclusion will not apply:

   A. with respect only to the coverage provided pursuant to Paragraph A. of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability**, to any obligation of the "insured organization" to maintain the confidentiality or security of "personally identifiable information" or of "third party information";

   B. with respect only to Paragraph D. of **SECTION I — INSURING AGREEMENTS, 4. Website Media Content Liability**, for misappropriation of ideas under implied contract;

   C. to "computer expert services" or "legal services" covered under **SECTION I — INSURING AGREEMENTS, 2. Privacy Breach Response Services;**

   D. to "PCI fines, expenses and costs" covered under **SECTION I — INSURING AGREEMENTS, 5. PCI Fines, Expenses and Costs,** or

   E. to the extent the insured would have been liable in the absence of such contract or agreement.

5. For, arising out of or resulting from any actual or alleged antitrust violation, restraint of trade, unfair competition, or false, deceptive or misleading advertising or violation of the Sherman Antitrust Act, the Clayton Act, or the Robinson-Patman Act, as amended.

6. For, arising out of or resulting from any actual or alleged false, deceptive or unfair trade practices; however, this exclusion does not apply to:

   A. any "claim" covered under Paragraphs A., B. or C. of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability** or **SECTION I — INSURING AGREEMENTS, 3. Regulatory Defense and Penalties;** or

   B. the provision of privacy breach response services covered under **SECTION I — INSURING AGREEMENTS, 2. Privacy Breach Response Services;**

   that results from a theft, loss or "unauthorized disclosure" of "personally identifiable information" provided that no member of the "control group" participated or colluded in such theft, loss or "unauthorized disclosure".

7. For, arising out of or resulting from:

   A. the actual or alleged unlawful collection, acquisition or retention of "personally identifiable information" (except as otherwise covered under Paragraph E. of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability**) or other personal information by, on behalf of, or with the consent or cooperation of the "insured organization"; or the failure to comply with a legal requirement to provide individuals with the ability to assent to or withhold assent (e.g. opt-in or opt-out) from the collection, disclosure or use of "personally identifiable information"; provided that this exclusion shall not apply to the actual or alleged unlawful collection, acquisition or retention of "personally identifiable information" by a person or entity that is not a "related party" and without the knowledge of the "insured organization"; or

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**CB 00 01 12 19**
**Page 6 of 24**

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**B.** the distribution of unsolicited email, text messages, direct mail, or facsimiles, wiretapping, audio or video recording, or telemarketing, if such distribution, wiretapping or recording is done by or on behalf of the "insured organization".

**8.** For, arising out of or resulting from:

**A.** that which was the subject of written notice given to us or to any other insurer prior to the inception date of this coverage; or

**B.** which was the subject of any prior and/or pending written demand made against any insured or a civil administrative or arbitration proceeding commenced against any insured, prior to the inception date of this coverage, or that involved the same or substantially the same fact, circumstance or situation underlying or alleged in such prior demand or proceeding.

**9.** For, arising out of or resulting from any related or continuing acts, errors, omissions, incidents or events where the first such act, error, omission, incident or event was committed or occurred prior to the retroactive date.

**10.** For, arising out of resulting from any of the following:

**A.** any actual or alleged violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced and Corrupt Organizations Act or RICO), as amended;

**B.** any actual or alleged violation of any securities law, regulation or legislation, including but not limited to the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Act of 1940, the Sarbanes-Oxley Act of 2002 or any Blue Sky laws;

**C.** any actual or alleged acts, errors or omissions related to any of the "insured organization's" pension, healthcare, welfare, profit sharing, mutual or investment plans, funds of trusts, including any violation of any provision of the Employee Retirement Income Security Act of 1974 (ERISA);

**D.** any actual or alleged violation of a regulation promulgated under any of the laws described in Paragraphs **A.**, **B.** or **C.** above; or

**E.** any actual or alleged violation of a federal, state, local or foreign laws or legislation similar to the laws described in Paragraphs **A.**, **B.** or **C.** above;

however, this exclusion does not apply to any otherwise covered "claim" under Paragraph **A.**, **B.** or **C.** of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability** or to providing privacy breach response services covered under **SECTION I — INSURING AGREEMENTS, 2. Privacy Breach Response Services**, that results from a theft, loss or "unauthorized disclosure" of "personally identifiable information", provided that no member of the "control group" participated or colluded in such theft, loss or "unauthorized disclosure".

**11.** Any actual or alleged unlawful discrimination of any kind including but not limited to age, color, race, sex, creed, national origin, marital status, sexual preference, disability or pregnancy.

**12.** Arising out of or resulting from any criminal, dishonest, fraudulent, or malicious act, error or omission, any intentional "security breach", intentional violation of a "privacy policy", or intentional or knowing violation of the law, if committed by an insured, or by others if the insured colluded or participated in any such conduct or activity; provided this exclusion shall not apply to:

**A.** "claims expenses" incurred in defending any "claim" alleging the foregoing until such time as there is a final adjudication, judgment, binding arbitration decision or conviction against the insured which is not subject to appeal, or written admission by the insured, establishing such conduct, or a plea of nolo contendere or no contest regarding such conduct, at which time the "named insured" shall reimburse us for all "claims expenses" incurred defending the "claim" and we shall have no further liability for "claims expenses"; or

**B.** a "claim" or "loss" against a natural person insured if such insured did not personally commit, participate in or know about any act, error, omission, incident or event giving rise to such "claim" or "loss".

For purposes of this exclusion, only acts, errors, omissions or knowledge of a member of the "control group" will be imputed to the "insured organization".

**13.** For, arising out of or resulting from any actual or alleged:

**A.** infringement of patent or patent rights or misuse or abuse of patent or patent rights;

**B.** infringement of copyright arising from or related to software code or software products other than infringement resulting from a theft or "unauthorized access or use" of software code by a person who is not a "related party";

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 00 01 12 19
Page 7 of 24

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

C. use or misappropriation of any ideas, trade secrets or third party corporate information by, or on behalf of, the "insured organization", or by any other person or entity if such use or misappropriation is done with the knowledge, consent or acquiescence of a member of the "control group";

D. disclosure, misuse or misappropriation of any ideas, trade secrets or confidential information that came into the possession of any person or entity prior to the date the person or entity became an employee, officer, director, "manager", principal, partner or "subsidiary" of the insured; or

E. under Paragraph B. of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability,** theft of or "unauthorized disclosure" of data.

**14.** In connection with or resulting from a "claim" brought by or on behalf of any state, federal, local or foreign governmental entity, in such entity's regulatory or official capacity; provided, this exclusion shall not apply to an otherwise covered "claim" under **SECTION I — INSURING AGREEMENTS, 3. Regulatory Defense and Penalties** or to the provision of privacy breach response services under **SECTION I — INSURING AGREEMENTS, 2. Privacy Breach Response Services** to the extent such services are legally required to comply with a "breach notice law".

**15.** For, arising out of or resulting from a "claim" by or on behalf of one or more insureds under this Policy against any other insured or insureds under this Policy, provided this exclusion shall not apply to an otherwise covered "claim" under Paragraphs **A., B.** or **C.** of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability** made by a current or former employee of the "insured organization".

**16.** For, arising out of or resulting from:

A. any "claim" made by any business enterprise in which any insured has greater than a fifteen percent (15%) ownership interest or made by any parent company or other entity which owns more than fifteen percent (15%) of the "named insured"; or

B. the insured's activities as a trustee, partner, member, "manager", officer, director or employee of any employee trust, charitable organization, corporation, company or business other than that of the "insured organization".

**17.** For, arising out of or resulting from any of the following:

A. trading losses, trading liabilities or change in value of accounts;

B. any loss, transfer or theft of monies, securities or tangible property of others in the care, custody or control of the "insured organization";

C. the monetary value of any transactions or electronic fund transfers by or on behalf of the insured which is lost, diminished, or damaged during transfer from, into or between accounts; or

D. the value of coupons, price discounts, prizes, awards, or any other valuable consideration given in excess of the total contracted or expected amount; provided that subsections **A., B.** and **C.** of this exclusion shall not apply to "loss" covered under **SECTION I — INSURING AGREEMENTS, 9. Fraudulent Instruction** or **10. Electronic Crime.**

**18.** For, arising out of or resulting from:

A. the actual or alleged obligation to make licensing fees or royalty payments;

B. any costs or expenses incurred or to be incurred by the insured or others for the reprinting, reposting, recall, removal or disposal of any "media material" or any other information, content or media, including any media or products containing such "media material", information, content or media;

C. any "claim" brought by or on behalf of any intellectual property licensing bodies or organizations;

D. the actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services, cost guarantees, cost representations, or contract price estimates, the authenticity of any goods, products or services, or the failure of any goods or services to conform with any represented quality or performance;

E. any actual or alleged gambling, contest, lottery, promotional game or other game of chance; or

F. any "claim" made by or on behalf of any independent contractor, joint venture or venture partner arising out of or resulting from disputes over ownership of rights in "media material" or services provided by such independent contractor, joint venture or venture partner.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**CB 00 01 12 19**
**Page 8 of 24**

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

19. For, arising out of or resulting from, directly or indirectly occasioned by, happening through or in consequence of: war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority; provided that this exclusion will not apply to cyber terrorism. For purposes of this exclusion, cyber terrorism means the premeditated use of disruptive activities, or threat to use disruptive activities, against a computer system or network with the intention to cause harm, further social, ideological, religious, political or similar objectives, or to intimidate any person(s) in furtherance of such objectives.

20. Either in whole or in part, directly or indirectly arising out of or resulting from or in consequence of, or in any way involving:

   A. asbestos, or any materials containing asbestos in whatever form or quantity;

   B. the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungi, molds, spores or mycotoxins of any kind; any action taken by any party in response to the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of fungi, molds, spores or mycotoxins of any kind, such action to include investigating, testing for, detection of, monitoring of, treating, remediating or removing such fungi, molds, spores or mycotoxins; and any governmental or regulatory order, requirement, directive, mandate or decree that any party take action in response to the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of fungi, molds, spores or mycotoxins of any kind, such action to include investigating, testing for, detection of, monitoring of, treating, remediating or removing such fungi, molds, spores or mycotoxins; we will have no duty or obligation to defend any insured with respect to any "claim" or governmental or regulatory order, requirement, directive, mandate or decree which either in whole or in part, directly or indirectly, arises out of or results from or in consequence of, or in any way involves the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungi, molds, spores or mycotoxins of any kind;

   C. the existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that actually or allegedly affects the health, safety or condition of any person or the environment, or that affects the value, marketability, condition or use of any property; or

   D. the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or any governmental, judicial or regulatory directive or request that the insured or anyone acting under the direction or control of the insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including gas, acids, alkalis, chemicals, heat, smoke, vapor, soot, fumes or waste. Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed.

21. With respect to **SECTION I — INSURING AGREEMENTS, 7. First Party Data Protection** and **8. First Party Network Business Interruption,** for, arising out of or resulting from:

   A. any failure or malfunction of electrical or telecommunication infrastructure or services, provided that this exclusion shall not apply to any otherwise covered "claim" or "loss" arising out of failure of "computer security" to prevent a "security breach" that was solely caused by a failure or malfunction of telecommunications infrastructure or services under the insured's direct operational control;

   B. fire, flood, earthquake, volcanic eruption, explosion, lightning, wind, hail, tidal wave, landslide, act of God or other physical event; or

   C. any satellite failures.

22. With respect to **SECTION I — INSURING AGREEMENTS, 6. Cyber Extortion,** for, arising out of or resulting from:

   A. any threat to physically harm or kidnap any person; or

   B. any threat to harm, take, or transfer property other than any "data asset", even if such threat is made in conjunction with a threat to a "data asset".

23. With respect to **SECTION I — INSURING AGREEMENTS, 6. Cyber Extortion,** for, arising out of or resulting from an "extortion threat" first made against the "insured organization" during the "policy period" by any of the "insured organization's" directors, officers, principals, trustees, governors, "managers", members, management committee members, members of the management board, partners, or any person in collusion with any of the foregoing.

24. Arising out of or resulting from any seizure, nationalization, confiscation or destruction of "computer systems" or "data assets" by order of any governmental or public authority.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**25.** With respect to **SECTION I — INSURING AGREEMENTS, 9. Fraudulent Instruction,** for, arising out of or resulting from, either directly or indirectly:

**A.** the actual or alleged use of credit, debit, charge, access, convenience, customer identification or other cards;

**B.** any transfer of money, goods, information or other item involving any person or entity that had authorized access to the insured's authentication mechanism;

**C.** the processing of, or the failure to process, credit, check, debit, personal identification number debit, electronic benefit transfers or mobile payments for merchant accounts;

**D.** any "fraudulent instruction" that was not verified with the requestor using an "out-of-band authentication";

**E.** the failure of any party to perform, in whole or in part, under any contract or agreement;

**F.** the failure, malfunction, inadequacy or illegitimacy of any product or service;

**G.** accounting or arithmetical errors or omissions;

**H.** indirect or consequential loss of any kind including income not realized as the result of a covered loss;

**I.** fees, costs or expenses incurred in defending or prosecuting any legal proceeding or claim; or

**J.** any transfer of "money" or "securities" to a "third party" or "vendor" where the received funds have been returned before having cleared the insured's bank account.

**26.** With respect to **SECTION I — INSURING AGREEMENTS, 10. Electronic Crime,** for, arising out of or resulting from, either directly or indirectly:

**A.** the type or kind covered by the "insured organization's" financial institution bond or commercial crime policy, regardless of any deductible amount or Limit of Liability;

**B.** any actual or alleged fraudulent, dishonest or criminal act or omission by any "employee", whether acting alone or in collusion with any other person or entity;

**C.** indirect or consequential loss of any kind;

**D.** punitive, exemplary or multiplied damages of any kind or any fines, penalties or loss of any tax benefit;

**E.** the giving or surrendering of any "money" or "securities" in any exchange or purchase, whether fraudulent or not;

**F.** fees, costs or expenses incurred or paid by the "insured organization" in defending or prosecuting any legal proceeding or claim;

**G.** proving or establishing the existence of loss under this Policy;

**H.** the theft, disappearance, destruction of, or unauthorized access to, confidential information including, but not limited to, trade secrets, customer lists, and intellectual property;

**I.** any "fraudulent instruction" if the sender, or anyone acting in collusion with the sender, ever had access to the "insured organization's" password, PIN (personal identification number) or other security code;

**J.** any forged, altered or fraudulent negotiable instruments, "securities", documents or instructions;

**K.** any actual or alleged use of credit, debit, charge, access, convenience or other cards or the information contained on such cards;

**L.** damages of any type for which the "insured organization" is legally liable, except for direct compensatory damages arising directly from "funds transfer fraud"; or

**M.** costs or expenses incurred by a customer or client of the "insured organization".

## SECTION V — LIMIT OF LIABILITY AND COVERAGE

**1.** The Policy Aggregate Limit of Liability set forth in the Declarations is our combined total Limit of Liability for all "damages", "penalties", "PCI fines, expenses and costs", "cyber extortion loss", "data protection loss", "business interruption loss" and "claims expenses" and loss under **SECTION I — INSURING AGREEMENTS, 9. Fraudulent Instruction** and **10. Electronic Crime** payable under this Policy.

**2.** The Information Security and Privacy Liability Aggregate Limit stated in the Declarations is the aggregate Limit of Liability payable under **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability** of this Policy and is part of and not in addition to the Policy Aggregate Limit of Liability.

**3.** The Regulatory Defense and Penalties Aggregate Sublimit stated in the Declarations is the aggregate sublimit of liability payable under **SECTION I — INSURING AGREEMENTS, 3. Regulatory Defense and Penalties** of this Policy and is part of and not in addition to the Policy Aggregate Limit of Liability.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 00 01 12 19
Page 10 of 24

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

4.  The Website Media Content Liability Aggregate Limit stated in the Declarations is the aggregate limit of liability payable under **SECTION I — INSURING AGREEMENTS, 4. Website Media Content Liability** of this Policy and is part of and not in addition to the Policy Aggregate Limit of Liability.

5.  The PCI Fines, Expenses and Costs Aggregate Sublimit stated in the Declarations is the aggregate sublimit of liability payable under **SECTION I — INSURING AGREEMENTS, 5. PCI Fines, Expenses and Costs** of this Policy and is part of and not in addition to the Policy Aggregate Limit of Liability.

6.  The Cyber Extortion Aggregate Sublimit stated in the Declarations is the aggregate sublimit of liability payable under **SECTION I — INSURING AGREEMENTS, 6. Cyber Extortion** of this Policy and is part of and not in addition to the Policy Aggregate Limit of Liability. Multiple related or continuing "extortion threats" shall be considered a single "extortion threat" for purposes of this Policy and shall be deemed to have occurred at the time of the first such "extortion threat". Prior to the payment of any "extortion payment", the "insured organization" shall make every reasonable effort to determine that the "extortion threat" is not a hoax, or otherwise not credible. The "insured organization" shall take all steps reasonable and practical to avoid or limit the payment of an "extortion payment".

7.  The First Party Data Protection Aggregate Sublimit stated in the Declarations is the aggregate sublimit of liability payable under **SECTION I — INSURING AGREEMENTS, 7. First Party Data Protection** of this Policy and is part of and not in addition to the Policy Aggregate Limit of Liability. A "data protection loss" will be deemed to occur at the time such alteration, corruption, destruction, deletion of damage to or inability to access a "data asset" is first discovered by the "insured". All "data protection loss" that arises out of the same or a continuing "security breach", from related or repeated "security breaches", or from multiple "security breaches" resulting from a failure of "computer security" shall be deemed to be a single "data protection loss".

8.  The First Party Network Business Interruption Aggregate Sublimit stated in the Declarations is the aggregate sublimit of liability payable under **SECTION I — INSURING AGREEMENTS, 8. First Party Network Business Interruption** of this Policy and is part of and not in addition to the Policy Aggregate Limit of Liability. All "business interruption loss" resulting from multiple covered interruptions of "computer systems" that arise out of the same or a continuing "security breach", from related or repeated "security breaches", or from multiple "security breaches" resulting from a failure of "computer security" shall be deemed to be a single "business interruption loss"; provided, however, that a separate "waiting period" shall apply to each "period of restoration".

9.  The Fraudulent Instruction Aggregate Sublimit stated in the Declarations is the aggregate sublimit of liability payable under **SECTION I — INSURING AGREEMENTS, 9. Fraudulent Instruction** of this Policy and is part of and not in addition to the Policy Aggregate Limit of Liability. All losses arising out of or resulting from the same "fraudulent instruction", multiple or series of "fraudulent instructions" purporting to be from the same "vendor", "client" or "authorized employee" or related "vendors", "clients" or "authorized employees", or multiple or a series of "fraudulent instructions" from the same third party or related "third parties" shall be deemed to be each a single loss under this Policy subject to the "retention".

10. The Electronic Crime Aggregate Sublimit stated in the Declarations is the aggregate sublimit of liability payable under **SECTION I — INSURING AGREEMENTS, 10. Electronic Crime** of this Policy and is part of and not in addition to the Policy Aggregate Limit of Liability.

11. Neither the inclusion of more than one insured under this Policy, nor the making of "claims" by more than one person or entity shall increase the applicable Aggregate Limit, Aggregate Sublimit or Policy Aggregate Limit of Liability.

12. We shall not be obligated to pay any "damages", "penalties", "PCI Fines, Expenses and Costs", "cyber extortion loss", "data protection loss", "business interruption loss" or "claims expenses", or loss under **Section I — Insuring Agreements, 9. Fraudulent Instruction** and **10. Electronic Crime**, or to undertake or continue defense of any suit or proceeding after the Policy Aggregate Limit of Liability has been exhausted by payment of "damages", "penalties", "PCI Fines, Expenses and Costs", "cyber extortion loss", "data protection loss", "business interruption loss", "claims expenses", or loss under **Section I — Insuring Agreements, 9. Fraudulent Instruction** and **10. Electronic Crime**, or after deposit of the Policy Aggregate Limit of Liability in a court of competent jurisdiction. Upon such payment, we shall have the right to withdraw from further defense of any "claim" under this Policy by tendering control of said defense to the insured.

13. The Notified Individuals Aggregate Limit stated in the Declarations is the maximum total number of "notified individuals" to whom notification will be provided or attempted for all incidents or series of related incidents giving rise to an obligation to provide "notification services", "call center services" or "breach resolution and mitigation services".

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

Case ID: 231001459

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

14. The Aggregate Limit of Coverage stated for "computer expert services", "legal services" and "public relations and crisis management expenses" in the Declarations is the aggregate limit of coverage for all "computer expert services", "legal services" and "public relations and crisis management expenses" combined. This is a separate limit, apart from and in addition to the Policy Aggregate Limit of Liability.

15. If the total number of notifications made pursuant to Paragraph **D.** of **SECTION I — INSURING AGREEMENTS, 2. Privacy Breach Response Services** aggregates to more than the Notified Individuals Aggregate Limit stated in the Declarations, the "insured organization" will be responsible for paying for privacy breach response services with respect to any excess notification, and such costs will not be covered under this Policy. If an incident involves notifications made pursuant to Paragraph **C.** of **SECTION I — INSURING AGREEMENTS, 2. Privacy Breach Response Services** both within the Notified Individuals Aggregate Limit stated in the Declarations and in excess of such limit, all excess notifications will be provided by the same service provider that provides "notification services" covered under this Policy, and the costs will be allocated between us and the "insured organization" pro rata based on the number of covered and non-covered notifications.

16. To the extent privacy breach response services costs are covered pursuant to a "claim" as described in Paragraph **6.D.** of **SECTION XI — DEFINITIONS**, such "costs" shall be covered solely under **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability.**

## SECTION VI — RETENTION

1. The retention amounts set forth in the Declarations apply separately to each incident, event or related incidents or events giving rise to a "claim". The retention shall be satisfied by monetary payments up to the retention amounts set forth in the Declarations by the "named insured" of "damages", "claims expenses", "penalties" or "PCI Fines, Expenses and Costs".

2. "Notification services", "call center services" and "breach resolution and mitigation services" will only be provided for each incident, event or related incidents or events, requiring notification to at least the number of individuals in the "notified individuals" threshold amount set forth in the Declarations. For incidents involving notification to fewer individuals, there shall be no coverage for any such services.

3. For all "computer expert services", "legal services" and "public relations and crisis management expenses", the retention amount set forth in the Declarations applies separately to each incident, event or related incidents or events, giving rise to an obligation to provide such services; and the applicable retention stated in the Declarations shall be satisfied by monetary payments by the "named insured" for such services.

4. With respect to **SECTION I — INSURING AGREEMENTS, 6. Cyber Extortion,** the retention set forth in the Declarations applies separately to each "extortion threat". The retention shall be satisfied by monetary payments by the "named insured" of covered "cyber extortion loss".

5. With respect to **SECTION I — INSURING AGREEMENTS, 7. First Party Data Protection,** the retention set forth in the Declarations applies separately to each "security breach". The retention shall be satisfied by monetary payments by the "named insured" of covered "data protection loss".

6. With respect to **SECTION I — INSURING AGREEMENTS, 8. First Party Network Business Interruption,** the retention set forth in the Declarations applies separately to each "security breach". The retention shall be satisfied by covered "business interruption loss" retained by the "insured organization". The retention applicable to **SECTION I — INSURING AGREEMENTS, 8. First Party Network Business Interruption** shall be reduced on a dollar-for-dollar basis by the amount of "income loss" that was sustained by the "insured organization" during the "waiting period".

7. With respect to **SECTION I — INSURING AGREEMENTS, 9. Fraudulent Instruction** and **10. Electronic Crime,** the "retention" amount set forth in the Declarations applies separately to each incident, event, or related incidents or events, giving rise to an obligation to pay loss under these insuring agreements.

8. In the event that any "damages", "claims expenses", "penalties" or "PCI Fines, Expenses and Costs" arising out of a "claim" are subject to more than one retention, the applicable retention amount shall apply to such "damages", "claims expenses", "penalties" or "PCI Fines, Expenses and Costs", provided, that the sum of such retention amounts shall not exceed the largest applicable retention amount.

9. In the event that "cyber extortion loss", "data protection loss" or "business interruption loss" arising out of a single incident are subject to more than one retention, the applicable retention amounts shall apply to such "cyber extortion loss", "data protection loss" or "business interruption loss", provided that the sum of such retention amounts shall not exceed the largest applicable retention amount.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

10. Satisfaction of the applicable retention is a condition precedent to the payment by us of any amounts or providing of any services hereunder, and we shall be liable only for the amounts in excess of such retention subject to our total liability not exceeding the Policy Aggregate Limit of Liability or Aggregate Limits of Coverage for "privacy breach response services" set forth in the Declarations. The "named insured" shall make direct payments within the retention to appropriate other parties designated by us.

## SECTION VII — EXTENDED REPORTING PERIODS

1. This provision applies only to **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability, 3. Regulatory Defense and Penalties, 4. Website Media Content Liability** and **5. PCI Fines, Expenses and Costs.**

2. We will provide an extended reporting period, as described below, if:

   A. This policy is cancelled or not renewed for any reason except for the non-payment of premium ; or

   B. We renew or replace this policy with insurance that has a retroactive date later than the date shown in the Declarations of this policy.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the "policy period" and lasts for sixty (60) days.

   The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

4. A Supplemental Extended Reporting Period option of one (1) year is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, as described in Paragraph 3, above, ends.

   You must give us a written request for the endorsement within 60 days after the end of the "policy period". The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   The additional premium for the Supplemental Extended Reporting Period shall be one hundred percent (100%) of the current term's annual premium.

   This Supplemental Extended Reporting Period endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

5. Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided. They apply only to "claims" arising out of any act, error or omission committed on or after the retroactive date, if any, shown in the Declarations and before the end of the "policy period".

   "Claims" for such injury or damage which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the "policy period".

6. The limit of liability for the extended reporting periods shall be part of, and not in addition to, the applicable Policy Aggregate Limit of Liability for the "policy period". The extended reporting periods do not in any way increase the Policy Aggregate Limit of Liability or any sublimit of liability.

7. At the commencement of the Supplemental Extended Reporting Period the entire premium shall be deemed earned, and in the event the "named insured" terminates the Supplemental Extended Reporting Period for any reason prior to its natural expiration, we will not be liable to return any premium paid for the Supplemental Extended Reporting Period.

## SECTION VIII — NOTICE AND DUTIES IN THE EVENT OF A CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM

1. With respect to **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability, 3. Regulatory Defense and Penalties, 4. Website Media Content Liability** and **5. PCI Fines, Expenses and Costs:**

   A. If any "claim" is made against the insured, the "named insured" shall forward as soon as practicable to us written notice of such "claim" by facsimile, email or express or certified mail, together with every demand, notice, summons or other process received by the insured or the insured's representative. In no event shall we be given notice of a "claim" later than the end of the "policy period" or any applicable extended reporting period.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B781F

**B.** If, during the "policy period", the "named insured" becomes aware of any circumstance that could reasonably be the basis for a "claim", it may give written notice to us in the form of a facsimile, email or express or certified mail as soon as practicable during the "policy period". Such notice must include:

    **i.** the specific details of the act, error, omission, or "security breach" that could reasonably be the basis for a "claim";

    **ii.** the injury or damage which may result or has resulted from the circumstance; and

    **iii.** the facts by which the insured first became aware of the act, error, omission or "security breach".

    Any subsequent "claim" made against the insured arising out of such circumstance which is the subject of the written notice will be deemed to have been made at the time written notice complying with the above requirements was first given to us.

**C.** A "claim" or legal obligation under Paragraph **A.** of this section shall be considered to be reported to us when written notice is first received by us in the form of a facsimile, email or express or certified mail of the "claim" or legal obligation, or of an act, error, or omission, which could reasonably be expected to give rise to a "claim" if provided in compliance with this paragraph.

**D.** In the event coverage is renewed by us and privacy breach response services are provided because of such incident or suspected incident that was discovered by the "insured" prior to the expiration of this coverage, and first reported during the "policy period" or any applicable extended reporting period, then any subsequent "claim" arising out of such incident or suspected incident is deemed to have been made during this "policy period".

**2.** With respect to **SECTION I — INSURING AGREEMENT, 2. Privacy Breach Response Services** and **6. Cyber Extortion:**

  **A.** If any incident, or reasonably suspected incident, described in Paragraphs **A.** or **B.** of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability** occurs, or in the event of an "extortion threat" under **SECTION I — INSURING AGREEMENTS, 6. CYBER EXTORTION,** the "named insured" must report such incident, or reasonably suspected incident, to us in writing by facsimile, email or express or certified mail as soon as practicable during the "policy period" after discovery by the insured. In no event shall we be given notice of such incident later than the end of the "policy period" or sixty (60) days after the expiration date of the "policy period".

**3.** With respect to **SECTION I — INSURING AGREEMENT, 7. First Party Data Protection** and **8. First Party Network Business Interruption:**

  **A.** Notice of "Data Protection Loss" or "Business Interruption Loss"

    **i.** With respect to **SECTION I — INSURING AGREEMENT, 7. First Party Data Protection,** the "named insured" must forward written notice by facsimile, email or express or certified mail immediately upon discovery of alteration, corruption, destruction, deletion or damage to or inability to access a "data asset" to which this Policy applies. In no event shall we be given notice of "data protection loss" later than the end of the "policy period" or sixty (60) days after the expiration date of the "policy period".

    **ii.** With respect to **SECTION I — INSURING AGREEMENT, 8. First Party Network Business Interruption,** the "named insured" must forward written notice by facsimile, email or express or certified mail immediately upon discovery of the interruption or suspension of "computer systems" to which this Policy applies. In no event shall we be given notice of "business interruption loss" later than the end of the "policy period" or sixty (60) days after the expiration date of the "policy period".

  **B.** Proof of Loss and Appraisal

    **i.** Before coverage will apply, the "named insured" must prepare and submit to us a written and detailed proof of loss sworn by an officer of the "named insured" within ninety (90) days after the insured discovers a "data protection loss" or the "insured organization" sustains a "business interruption loss", as applicable, but in no event later than six (6) months following the end of the "policy period" (unless such period has been extended by our written consent). Such proof of loss shall include a narrative with full particulars of such "data protection loss" or "business interruption loss", including, the time, place and cause of the "data protection loss" or "business interruption loss", a detailed calculation of any "data protection loss" or "business interruption loss", the "insured organization's" interest and the interest of all others in the property, the sound value thereof and the amount of "data protection loss" or "business interruption loss" or damage thereto and all other insurance thereon.

---

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

    ii.  The "named insured" must, upon our request, submit to an examination under oath and provide copies of the underlying documents, data and materials that reasonably relate to or are part of the basis of the claim for such "data protection loss" or "business interruption loss". The costs and expenses of preparing and submitting a proof of loss, and establishing or proving "data protection loss", "business interruption loss" or any other "loss" under this Policy shall be the insured's obligation.

    iii.  If we do not agree with the "named insured" on the amount of a "data protection loss" or a "business interruption loss", each party shall select and pay a qualified and disinterested appraiser or other qualified expert (the "Appraiser(s)") to state the amount of the loss or reasonable expenses, and the Appraisers shall choose an umpire. If the Appraisers cannot agree on an umpire, the "named insured" or we may request a judge of a court having jurisdiction to make the selection. Each Appraiser shall submit their loss estimate to the umpire, and agreement by the umpire and at least one of the Appraisers as to the amount of a "data protection loss" or "business interruption loss" shall be binding on all "insureds" and us. The "named insured" and we will equally share the costs of the umpire and any other costs other than the cost of the Appraisers. This provision shall govern only appraisal under this section and shall not control the determination of whether such "data protection loss" or "business interruption loss" is otherwise covered by this Policy. We retain and do not waive our right to deny coverage or to enforce any obligation under this Policy.

4.  With respect to **SECTION I — INSURING AGREEMENTS, 9. Fraudulent Instruction** and **10. Electronic Crime**:

    A.  If the "named insured" sustains any loss of "monies" or "securities" as described in **SECTION I — INSURING AGREEMENT, 9. Fraudulent Instruction** or **10, Electronic Crime,** the insured must report such loss to us in writing by facsimile, email or express or certified mail as soon as practicable during the "policy period" after discovery by the insured. In no event shall we be given notice of such loss later than sixty (60) days after the expiration date of the "policy period".

    B.  Before coverage under **SECTION I — INSURING AGREEMENTS, 9. Fraudulent Instruction** or **10. Electronic Crime** will apply, the "named insured" must prepare and submit to us a proof of loss, duly sworn to, within sixty (60) days after the insured discovered such loss. Such proof of loss shall include any available documentation of fraudulent written, electronic or telephone instructions, documentation of verification via a method other than the original means of the request, the amount of loss incurred, and all other insurance available to the insured in connection with such loss.

## SECTION IX — OTHER INSURANCE

The coverage under this Policy shall apply in excess of any other valid and collectible insurance available to any insured, including any self-insured retention or deductible portion thereof, unless such other insurance is written only as specific excess insurance over the Policy Aggregate Limit of Liability or any other applicable limit of liability or coverage of this Policy.

## SECTION X — SUBROGATION

If any payment is made under this Policy and there is available to us any of the insured's rights of recovery against any other party, then we shall maintain all such rights of recovery. The insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after an incident or event giving rise to a "claim" or "loss" to prejudice such rights. Any recoveries shall be applied first to subrogation expenses, second to "loss" paid by us and lastly to the retention. Any additional amounts recovered shall be paid to the "named insured".

## SECTION XI — DEFINITIONS

1.  "Authorized employee" means an employee who is authorized by the insured to transfer "money" or "securities" or to instruct other employees to transfer "money" or "securities".

2.  "Breach notice law" means any federal, state, local or foreign statute or regulation that requires notice to persons whose "personally identifiable information" was accessed or reasonably may have been accessed by an unauthorized person.

3.  "Breach resolution and mitigation services" means a credit monitoring, identity monitoring or other solution offered to "notified individuals". The product offered to "notified individuals" will be selected from our panel by us in consultation with the "insured organization".

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

4.  "Business interruption loss" means the actual "income loss", "forensic expenses" and "extra expense" incurred during the "period of restoration". "Business interruption loss" shall not include:

   A.  "loss" arising out of any liability to any third party for whatever reason; legal costs or legal expenses of any type; "loss" incurred as a result of unfavorable business conditions, loss of market or any other consequential loss; or costs or expenses the "insured organization" incurs to identify or remove software program errors or vulnerabilities; or

   B.  expenses incurred by the insured to update, upgrade, enhance or replace "computer systems" to a level beyond that which existed prior to the actual and necessary interruption of "computer systems"; or the costs and expenses incurred by the "insured organization" to restore, reproduce or regain access to any "data asset" that was altered, corrupted, destroyed, deleted, damaged or rendered inaccessible as a result of the failure of "computer security" to prevent a "security breach".

5.  "Call center services" means the provision of a call center to answer calls during standard business hours for a period of ninety (90) days following notification (or longer if required by applicable law or regulation) of an incident for which notice is provided pursuant to Paragraph **D.** of **SECTION I — INSURING AGREEMENTS, 2. Privacy Breach Response Services.** "Call center services" will be provided by a service provider from our panel selected by us in consultation with the "insured organization".

6.  "Claim" means:

   A.  a written demand received by any insured for money or services;

   B.  with respect to coverage provided under **SECTION I — INSURING AGREEMENTS, 3. Regulatory Defense and Penalties** only, institution of a "regulatory proceeding" against any insured;

   C.  a written request or agreement to toll or waive a statute of limitations relating to a potential "claim" described in Paragraph **A.** above; and

   D.  with respect to coverage provided under Paragraph **a.** of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability** only, a demand received by any insured to fulfill the "insured organization's" contractual obligation to provide notice of an incident, or reasonably suspected incident, described in Paragraph **A.** of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability** pursuant to a "breach notice law".

   Multiple "claims" arising from the same or a series of related or repeated acts, errors, or omissions, or from any continuing acts, errors, omissions, or from multiple "security breaches" arising from a failure of "computer security" shall be considered a single "claim" for the purposes of this Policy, irrespective of the number of claimants or "insureds" involved in the "claim". All such "claims" shall be deemed to have been made at the time of the first such "claim".

7.  "Claims expenses" means:

   A.  reasonable and necessary fees charged by an attorney designated pursuant to Paragraph **1.** of **SECTION II — DEFENSE AND SETTLEMENT OF CLAIMS;**

   B.  all other legal costs and expenses resulting from the investigation, adjustment, defense and appeal of a "claim", suit, or proceeding arising in connection therewith, or circumstance which might lead to a "claim" if incurred by us or the insured with our prior written consent;

   C.  the premium cost for appeal bonds for covered judgments or bonds to release property used to secure a legal obligation, if required in any "claim" against an "insured" provided that we shall have no obligation to appeal or to obtain bonds.

   "Claims expenses" do not include any salary, overhead, or other charges by the insured for any time spent cooperating with the defense and investigation of any "claim", or circumstance that might lead to a "claim", under this Policy, or costs to comply with any regulatory orders, settlements or judgments.

8.  "Client" means a customer of the "named insured" to whom the insured provides goods or services under a written contract or for a fee.

9.  "Computer expert services" means costs for:

   A.  a computer security expert to determine the existence and cause of an actual or suspected electronic data breach which may require the "insured organization" to comply with a "breach notice law" and to determine the extent to which such information was accessed by an unauthorized person or persons; and if such breach is actively in progress on the "insured organization's" "computer systems", to assist in containing the existing intrusion on such systems from accessing "personally identifiable information"; and

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**CB 00 01 12 19**
**Page 16 of 24**

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**B.** a Payment Card Industry (PCI) Forensic Investigator that is approved by the PCI Security Standards Council and is retained by the "insured organization" in order to comply with the terms of a "merchant services agreement" to investigate the existence and extent of an actual or suspected compromise of credit card data; and, in our discretion, where a computer security expert described in Paragraph **a.** above has not been retained, for a computer security expert to provide advice and oversight in connection with the investigation conducted by the PCI Forensic Investigator; and

**C.** a computer security expert to demonstrate the insured's ability to prevent a future electronic data breach as required by a "merchant services agreement".

"Computer expert services" will be provided by a service provider from our panel selected by us in consultation with the "insured organization".

**10.** "Computer security" means software, computer or network hardware devices, as well as the "insured organization's" information security policies and procedures, the function or purpose of which is to prevent "unauthorized access or use", a "denial of service attack" against "computer systems", infection of "computer systems" by "malicious code" or transmission of "malicious code" from "computer systems". "Computer security" includes anti-virus and intrusion detection software, firewalls and electronic systems that provide access control to "computer systems" through the use of passwords, biometric or similar identification of authorized users.

**11.** "Computer systems" means computers, any software residing on such computers, and associated input and output devices, data storage devices, networking equipment, and back up facilities:

**A.** operated by and either owned by or leased to the "insured organization", or

**B.** with respect to **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability, 2. Privacy Breach Response Services, 3. Regulatory Defense and Penalties, 4. Website Media Content Liability** and **5. PCI Fines, Expenses and Costs** only, systems operated by a third party service provider and used for the purpose of providing hosted computer application services, including cloud services, to the "insured organization" or for processing, maintaining, hosting or storing the "insured organization's" electronic data, pursuant to written contract with the "insured organization" for such services.

**12.** "Control group" means any principal, partner, corporate officer, director, "manager", general counsel (or most senior legal counsel) or risk manager of the "insured organization" and any individual in a substantially similar position.

**13.** "Cyber extortion loss" means:

**A.** any "extortion payment" that has been made under duress by or on behalf of the "insured organization", with our prior written consent, but solely for the purpose of preventing or terminating an "extortion threat";

**B.** reasonable and necessary expenses incurred by the "insured organization", with our prior written approval, that directly relate to the insured's efforts to prevent or terminate an "extortion threat".

**14.** "Damages" means a monetary judgment, award or settlement. The term "damages" shall not include or mean:

**A.** future profits, restitution, disgorgement of unjust enrichment or profits by an insured, or the costs of complying with orders granting injunctive or equitable relief;

**B.** return or offset of fees, charges, or commissions charged by or owed to an insured for goods or services already provided or contracted to be provided;

**C.** taxes or loss of tax benefits;

**D.** fines, sanctions or penalties;

**E.** punitive or exemplary damages, or any damages which are a multiple of compensatory damages, unless insurable by law in any applicable venue that most favors coverage for such punitive, exemplary or multiple damages;

**F.** discounts, coupons, prizes, awards or other incentives offered to the insured's customers or clients;

**G.** liquidated damages, but only to the extent that such damages exceed the amount for which the insured would have been liable in the absence of such liquidated damages agreement;

**H.** any amounts for which the insured is not liable, or for which there is no legal recourse against the insured; or

**I.** "claims expenses".

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**CB 00 01 12 19**
**Page 17 of 24**

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9083-5F8FFD4B761F

**15.** "Data asset" means any software or electronic data that exists in computer systems and that is subject to regular back up procedures.

**16.** "Data protection loss" means the reasonable and necessary costs and expenses incurred by the "Insured organization" to regain access to, replace, restore, reassemble or recollect any "data asset", or if any "data asset" cannot reasonably be accessed, replaced, restored, reassembled or recollected, then the actual reasonable and necessary costs and expenses incurred by the "insured organization" to reach this determination. "Data protection loss" shall not mean, and there shall be no coverage for:

   **A.** costs or expenses incurred by the "insured organization" to identify or remediate software program errors or vulnerabilities or update, replace, restore, assemble, reproduce, recollect or enhance a "data asset" or "computer systems" to a level beyond that which existed prior to the alteration, corruption, destruction, deletion or damage of such "data asset";

   **B.** costs or expenses to research or develop any "data asset", including but not limited to trade secrets or other proprietary information;

   **C.** the monetary value of profits, royalties or lost market share related to a "data asset", including but not limited to trade secrets or other proprietary information or any other amount pertaining to the value of the "data asset";

   **D.** loss arising out of any liability to any third party for whatever reason; or

   **E.** legal costs or legal expenses of any type.

**17.** "Denial of service attack" means a cyber-attack where the perpetrator seeks to make a machine or network resource unavailable to its intended users.

**18.** "Digital currency" means a type of digital currency that:

   **A.** requires cryptographic techniques to regulate the generation of units of currency and verify the transfer thereof;

   **B.** is both stored and transferred electronically; and

   **C.** operates independently of a central bank or other central authority.

**19.** "Employee" means:

   **A.** a natural person:

      **i.** while in the regular service of the "insured organization" in the ordinary course of its business;

      **ii.** whom the insured has the right to direct and control while performing labor or service for the "insured organization"; and

      **iii.** who is compensated directly by the "insured organization" through salary, wages or commissions;

   **B.** a natural person who is directed and controlled by the "insured organization" while performing labor or service for the "insured organization" pursuant to a lease or other written contract to which the "insured organization" is a party;

   **C.** a natural person volunteer who is directed and controlled by the "insured organization" while performing labor or service for the "insured organization";

   **D.** a natural person who is a director, trustee, officer, administrator, manager or partner of the "insured organization", when performing acts coming within the scope of the usual duties of a director, trustee, officer, administrator, manager or partner; or

   **E.** a natural person who is:

      **i.** a trustee, officer, employee, administrator, fiduciary or manager of any Employee Welfare or Pension Benefit Plan, as defined in the Employee Retirement Income Security Act of 1974 and any amendments thereto ("ERISA"), which is or becomes solely sponsored by the "Insured Organization"; or

      **ii.** required to be bonded by Title 1 of ERISA.

**20.** "Extortion payment" means cash, "digital currency", marketable goods or services demanded to prevent or terminate an "extortion threat". If an "extortion payment" is made by or on behalf of the "insured organization" in "digital currency", payment by us shall be made in United States of America Dollars equal to the US Dollar-value of the "digital currency" at the time the "extortion payment" is made. For purposes of this paragraph, an "extortion payment" using "digital currency" shall be considered made at the time that such "digital currency" is first recorded in a public ledger of transactions for such "digital currency".

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 00 01 12 19
Page 18 of 24

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

21. "Extortion threat" means a threat to:

   A. alter, destroy, damage, delete or corrupt any "data asset";

   B. prevent access to "computer systems" or a "data asset";

   C. perpetrate a theft or misuse of a "data asset" on "computer systems" through external access;

   D. introduce "malicious code" into "computer systems" or to third party computer systems from "computer systems"; or

   E. publicly disclose a "data asset", "personally identifiable information" or "third party information" that is obtained by "unauthorized access or use" to the "insured organization's" "computer systems";

   unless an "extortion payment" is received from or on behalf of the "insured organization".

22. "Extra expense" means reasonable and necessary expenses that are incurred by the "insured organization" during the "period of restoration" to minimize, reduce or avoid an "income loss", over and above those expenses the "insured organization" would have incurred had no interruption of "computer systems" occurred.

23. "Financial institution" means:

   A. a bank, credit union, saving and loan association, trust company or other licensed financial service where the "insured organization" maintains a "transfer account"; or

   B. a securities broker-dealer, mutual fund, liquid assets fund or similar investment company where the "insured organization" maintains a "transfer account".

24. "Forensic expenses" means reasonable and necessary expenses incurred by the "insured organization" to investigate the source or cause of the failure of "computer security" to prevent a "security breach".

25. "Fraudulent Instructions" means a fraudulent written instruction, electronic instruction (including email or web-based instruction) or telephone instruction provided by a person purporting to be a "vendor", "client", or an "authorized employee", that is intended to mislead an Insured through the misrepresentation of a material fact that is relied upon in good faith by such Insured.

26. "Funds Transfer Fraud" means fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions by a "third party" issued to a "financial institution" directing such institution to transfer, pay or deliver "money" or "securities" from any account maintained by the "insured organization" at such institution, without the "insured organization's" knowledge or consent.

27. "Income loss" means an amount equal to:

   A. the net profit or loss before interest and tax that the "insured organization" would have earned or incurred; and

   B. continuing normal operating expenses incurred by the "insured organization" (including payroll), but only to the extent that such operating expenses must necessarily continue during the "period of restoration" and such expenses would have been incurred by the "insured organization" had such interruption not occurred.

   In determining "income loss", due consideration shall be given to:

   A. the prior experience of the "insured organization's" business operations before the beginning of the "period of restoration";

   B. the probable business operations the "insured organization" could have performed had no actual and necessary interruption occurred as result of a failure of "computer security" to prevent a "security breach"; and

   C. the "insured organization's" ability to reasonably reduce or limit the interruption of "computer systems" or conduct its business operations by other means.

28. "Insured organization" means the "named insured" and/or any "subsidiaries" of the "named insured".

29. "Legal services" means fees charged by an attorney:

   A. to determine the applicability of and actions necessary for the "insured organization" to comply with "breach notice laws" due to an actual or reasonably suspected theft, loss or "unauthorized disclosure" of "personally identifiable information";

   B. to provide necessary legal advice to the "insured organization" in responding to actual or suspected theft, loss or "unauthorized disclosure" of "personally identifiable information";

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 00 01 12 19
Page 19 of 24

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

    **C.** to advise the "insured organization" regarding the notification of relevant governmental entities of an actual or reasonably suspected theft, loss or "unauthorized disclosure" of "personally identifiable information"; and

    **D.** to advise the "insured organization" in responding to credit card system operating regulation requirements for any actual or suspected compromise of credit card data that is required to be reported to the "insured organization's" merchant bank under the terms of a "merchant services agreement"; however, "legal services" do not include fees incurred in any actual or threatened legal proceeding, arbitration or mediation, or any advice in responding to credit card system operating regulation in connection with an assessment of "PCI fines, expenses, and costs".

"Legal services" will be provided in accordance with the terms and conditions set forth in this Policy and will be provided by an attorney from our panel selected by us in consultation with the "insured organization".

**30.** "Loss" means:

    **A.** "damages";

    **B.** "claims expenses";

    **C.** privacy breach response services;

    **D.** "PCI fines, expenses and costs";

    **E.** "cyber extortion loss";

    **F.** "data protection loss";

    **G.** "business interruption loss";

    **H.** "penalties";

    **I.** loss covered under **SECTION I — INSURING AGREEMENTS, 9. Fraudulent Instruction;**

    **J.** loss covered under **SECTION I — INSURING AGREEMENTS, 10. Electronic Crime.**

**31.** "Malicious code" means any virus, Trojan horse, worm or any other similar software program, code or script intentionally designed to insert itself into computer memory or onto a computer disk and spread itself from one computer to another.

**32.** "Management control" means:

    **A.** owning, directly or indirectly, more than fifty percent (50%) of the outstanding securities, representing the present right to vote for the election of an entity's directors, members of the board of managers, management committee members or persons serving in a functionally equivalent role for such an entity operating or organized outside of the United States of America; or

    **B.** having the right, pursuant to a written contract or bylaws, charter, operating agreement or similar documents of an entity to elect, appoint or designate a majority of:

        **i.** the Board of Directors of a corporation;

        **ii.** the Management Committee of a joint venture or partnership;

        **iii.** the Management Board of a limited liability company; or

        **iv.** persons serving in a functionally equivalent role for such an entity operating or organized outside of the United States of America.

**33.** "Manager" means manager of a limited liability company.

**34.** "Media material" means any information in electronic form, including words, sounds, numbers, images, or graphics and shall include advertising, video, streaming content, web-casting, online forums, bulletin boards and chat room content, but does not mean computer software or the actual goods, products or services described, illustrated or displayed in such "media material".

**35.** "Merchant services agreement" means any agreement between an insured and a financial institution, credit/debit company, credit/debit card processor or independent service operator enabling an insured to accept credit card, debit card, prepaid card, or other payment cards for payments or donations.

**36.** "Money" means:

    **A.** currency, coins or bank notes in current use and having a face value; and

    **B.** traveler's checks, register checks or money orders held for sale to the public.

**37.** "Named insured" means the individual, partnership, entity or corporation designated as such in the Declarations of the Policy.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

38. "Notification services" means:

   A.  notification by first class mail or e-mail to United States of America, Canadian or Mexican residents; and

   B.  notification by first class mail or e-mail to individuals residing outside the United States of America, Canada or Mexico, but only to the extent reasonably practicable.

   "Notification services" will be provided by a service provider from our panel selected by us in consultation with the "insured organization".

39. "Notified individual" means an individual person to whom notice is given or attempted to be given under Paragraph **D.** of **SECTION I — INSURING AGREEMENTS, 2. Privacy Breach Response Services** pursuant to a "breach notice law".

40. "Out-of-Band Authentication" means a method of challenge and response to the requestor of a transfer, payment or delivery of "money" or "securities" by an insured, via a method other than the original means of request, to verify the authenticity or validity of the request.

41. "PCI fines, expenses and costs" means the direct monetary fines, penalties, reimbursements, fraud recoveries or assessments owed by the "insured organization" under the terms of a "merchant services agreement", but only where such fines, penalties, reimbursements, fraud recoveries or assessments result both from the "insured organization's" actual or alleged noncompliance with published Payment Card Industry (PCI) Data Security Standards and from a data breach caused by an incident, or reasonably suspected incident, described in Paragraphs **A.** and **B.** of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability;** provided, that the term "PCI fines, expenses and costs" shall not include or mean any charge backs, interchangeable fees, discount fees or prospective service fees.

42. "Penalties" means:

   A.  any civil fine or punitive sum of money  payable to a governmental entity that was imposed in a "regulatory proceeding" by any federal, state, local or foreign governmental entity, in such entity's regulatory or official capacity; the insurability of "penalties" shall be in accordance with the law in the applicable venue that most favors coverage for such "penalties"; and

   B.  amounts which the insured is legally obligated to deposit in a fund as equitable relief for the payment of consumer claims due to an adverse judgment or settlement of a "regulatory proceeding"; but shall not include payments to charitable organizations or disposition of such funds other than for payment of consumer claims for losses caused by an event covered pursuant to Paragraphs **A., B.,** or **C.** of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability;**

   C.  "Penalties" do not mean:

      i.   costs to remediate or improve "computer systems";

      ii.  costs to establish, implement, maintain, improve or remediate security or privacy practices, procedures, programs or policies;

      iii. audit, assessment, compliance or reporting costs; or

      iv.  costs to protect the confidentiality, integrity and/or security of "personally identifiable information" from theft, loss or disclosure.

43. "Period of restoration" means the time period that:

   A.  begins after the expiration of the "waiting period" following the actual and necessary interruption of "computer systems" and

   B.  ends one hundred twenty (120) days after the actual and necessary interruption of "computer systems" ends (or would have ended with the exercise of due diligence and dispatch);

   provided that in no event shall the "period of restoration" mean a period of time greater than one hundred eighty (180) days; and provided further that restoration of "computer systems" will not end the "period of restoration" if such systems are actually and necessarily interrupted or suspended again within one hour of such restoration due to the same cause as the original interruption or suspension.

44. "Personally identifiable information" means:

   A.  information concerning the individual that constitutes nonpublic personal information as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant to this Act;

   B.  medical or health care information concerning the individual, including protected health information as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and regulations issued pursuant to this Act;

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**C.** Information concerning the individual that is defined as private personal information under statutes enacted to protect such information in foreign countries, for "claims" subject to the law of such jurisdiction;

**D.** information concerning the individual that is defined as private personal information under a "breach notice law";

**E.** education records as defined by the Family Educational Rights and Privacy Act which are directly related to an individual's attendance as a student; or

**F.** the individual's drivers' license or state identification number, social security number, unpublished telephone number, and credit, debit, or other financial account numbers in combination with associated security codes, access codes, passwords or PINs (personal identification numbers); if such information allows an individual to be uniquely and reliably identified or contacted or allows access to the individual's financial account or medical record information.

"Personally identifiable information" does not include publicly available information that is lawfully made available to the general public from government records.

**45.** "Policy period" means the period of time between the inception date and the effective date of termination of coverage and specifically excludes any extended reporting period or any prior policy period or renewal period.

**46.** "Privacy law" means a federal, state or foreign statute or regulation requiring the "insured organization" to protect the confidentiality and/or security of "personally identifiable information".

**47.** "Privacy policy" means the "insured organization's" public declaration of its policy for collection, use, disclosure, sharing, dissemination and correction or supplementation of, and access to "personally identifiable information".

**48.** "Property" means tangible property other than "money" or "securities" that has intrinsic value.

**49.** "Public relations and crisis management expenses" shall mean the following costs, approved in advance by us, which are directly related to mitigating harm to the "insured organization's" reputation or potential "loss" covered by this Policy resulting from an incident described in Paragraphs A. and B. of **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability** or from a "public relations event":

**A.** costs incurred by a public relations or crisis management consultant;

**B.** costs for media purchasing or for printing or mailing materials intended to inform the general public about the incident;

**C.** for incidents or events in which notifications services are not otherwise provided pursuant to **SECTION I — INSURING AGREEMENTS, 1. Information Security and Privacy Liability** and **2. Privacy Breach Response Services**, costs to provide notifications and notices via e-mail or first class mail to affected individuals where such notifications are not required by law (voluntary notifications), including non-affected customers or patients of the "insured organization";

**D.** costs to provide government mandated public notices related to breach events (including such notifications required under the Health Insurance Portability and Accountability Act of 1996 or the Health Information Technology for Economic and Clinical Health Act;

**E.** costs to provide services to restore healthcare records of "notified individuals" residing in the United States of America whose "personally identifiable information" was compromised as a result of theft, loss or "unauthorized disclosure"; and

**F.** other costs approved in advance by us.

"Public relations and crisis management expenses" must be incurred no later than twelve (12) months following the reporting of such "claim" or breach event to us and, with respect to paragraphs a. and b. above, within ninety (90) days following the first publication of such "claim" or incident. If voluntary notifications are provided, e-mail notification will be provided in lieu of first class mail to the extent practicable.

**50.** "Public relations event" means the publication or imminent publication in a newspaper (or other general circulation print publication) or on radio, television or a publically accessible website of a covered "claim" or incident under this Policy.

**51.** "Regulatory proceeding" means a request for information, civil investigative demand or civil proceeding commenced by service of a complaint or similar proceeding brought by or on behalf of any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity in connection with such proceeding.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 00 01 12 19
Page 22 of 24

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

52. "Related party" means the "insured organization" and any past, present or future employees, directors, officers, "managers", partners or natural person independent contractors of the "insured organization".

53. "Securities" mean negotiable and non-negotiable instruments or contracts representing either "money" or "property" and includes:

   A. tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   B. evidences of debt issued in connection with credit or charge cards, which cards are not issued by the insured.

54. "Security breach" means:

   A. "unauthorized access or use" of "computer systems", including "unauthorized access or use" resulting from the theft of a password from a "computer system" or from any insured;

   B. A "denial of service attack" against "computer systems" or "computer systems" that are not owned, operated or controlled by an insured; or

   C. infection of "computer systems" by "malicious code" or transmission of "malicious code" from "computer systems".

   A series of continuing "security breaches", related or repeated "security breaches", or multiple "security breaches" resulting from a continuing failure of "computer systems" shall be considered a single "security breach" and be deemed to have occurred at the time of the first such "security breach".

55. "Subsidiary" means any corporation, limited liability company, joint venture or partnership while the "named insured" has "management control" over such entity, if the "named insured":

   a. had "management control" over such entity on the inception date of this Policy or such entity was an insured under a Policy issued by us of which this Policy is a renewal; or

   B. acquires "management control" after the inception date of this Policy provided the revenues of the entity do not exceed fifteen percent (15%) of the "named insured's" annual revenues for the four quarterly periods directly preceding inception of the Policy;

   provided that this coverage only provides coverage for acts, errors, omissions, incidents or events that take place while the "named insured" has "management control" over such entity.

56. "Third Party" means any person or entity other than a "related party".

57. "Third party information" means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not insured under this Policy which is not available to the general public and is provided to the insured subject to a mutually executed written confidentiality agreement or which the "insured organization" is legally required to maintain in confidence; however, "third party information" shall not include "personally identifiable information".

58. "Transfer Account" means an account maintained by the "insured organization" at a "financial institution" from which the "insured organization" can initiate the transfer, payment or delivery of "money" or "securities".

59. "Unauthorized access or use" means the gaining of access to or use of "computer systems" by an unauthorized person or persons or the use of "computer systems" in an unauthorized manner.

60. "Unauthorized disclosure" means the disclosure of (including disclosure resulting from phishing) or access to information in a manner that is not authorized by the "insured organization" and is without knowledge of, consent, or acquiescence of any member of the "control group".

61. "Vendor" means any entity or natural person that provides goods or services to the insured pursuant to a written agreement.

62. "Waiting period" means the period of time beginning when the actual and necessary interruption of "computer systems" caused directly by a failure of "computer security" to prevent a "security breach" begins and expiring after the elapse of twelve (12) hours. A "waiting period" shall apply to each "period of restoration".

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

## SECTION XII — ASSISTANCE AND COOPERATION

1. We shall have the right to make any investigation we deem necessary, and the insured shall cooperate with us in all investigations. The insured shall execute or cause to be executed all papers and render all assistance as is requested by us. The insured agrees not to take any action which in any way increases our exposure under this Policy.

2. Upon our request, the insured shall assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of acts, errors or omissions, incidents or events with respect to which insurance is afforded under this Policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

3. The insured shall not admit liability, make any payment, assume any obligations, incur any expense, enter into any settlement, stipulate to any judgment or award or dispose of any "claim" without our written consent, except as specifically provided in **SECTION II — DEFENSE AND SETTLEMENT OF CLAIMS**. Compliance with a "breach notice law" will not be considered an admission of liability for purposes of this Clause.

4. Expenses incurred by the insured in assisting and cooperating with us do not constitute "claims expenses" under the Policy.

## SECTION XIII — ACTION AGAINST US

No action shall lie against us or our representatives unless and until, as a condition precedent thereto, the insured shall have fully complied with all provisions, terms and conditions of this Policy and, with respect to **INSURING AGREEMENTS, 1. Information Security and Privacy Liability, 3. Regulatory Defense and Penalties, 4. Website Media Content Liability** and **5. PCI Fines, Expenses and Costs,** the amount of the insured's obligation to pay shall have been finally determined either by judgment or award against the insured after trial, regulatory proceeding, arbitration or by written agreement of the insured, the claimant, and us.

No person or organization shall have the right under this Policy to join us as a party to an action or other proceeding against the insured to determine the insured's liability, nor shall we be impleaded by the insured or the insured's legal representative.

## SECTION XIV — ASSIGNMENT

The interest hereunder of any insured is not assignable. If the insured shall die or be adjudged incompetent, such insurance shall cover the insured's legal representative as the insured as would be permitted under this Policy.

## SECTION XV — NAMED INSURED AS AGENT

The "named insured" shall be considered the agent of all insureds, and shall act on behalf of all insureds with respect to the giving of or receipt of all notices pertaining to this Policy, the acceptance of any endorsements to this Policy, and the "named insured" shall be responsible for the payment of all premiums and Retentions.

## SECTION XVI — AUTHORIZATION

By acceptance of this Policy, the insureds agree that the "named insured" will act on their behalf with respect to the giving and receiving of any notice provided for in this Policy, the payment of premiums and the receipt of any return premiums that may become due under this Policy, and the agreement to and acceptance of endorsements.

## SECTION XVII — VALUATION AND CURRENCY

All premiums, limits, deductibles, "loss" and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of "loss" under this Policy is stated in a currency other than United States of America dollars or is paid in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in the Wall Street Journal on the date the judgment becomes final or payment of the settlement or other element of "damages", "penalties", or "PCI Fines, Expenses and Costs" is due or, with respect to "claims expenses", the date they are paid.

## SECTION XVIII — TERRITORY

This Policy applies to "claims" made, acts committed, or "loss" occurring anywhere in the world.

## SECTION XIX — BANKRUPTCY

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Policy.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

PENNSYLVANIA CHANGES

CYBER LIABILITY AND DATA BREACH RESPONSE
CB 70 10 12 19

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

CYBER LIABILITY AND DATA BREACH RESPONSE COVERAGE FORM

**A. SECTION II — DEFENSE AND SETTLEMENT OF CLAIMS** is amended by the addition of the following:

If we initially defend an "insured" or pay for an "insured's" defense but later determine that none of the "claims", for which we provided a defense or "claims expenses", are covered under this Insurance, we have the right to reimbursement for the "claims expenses" we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify the "insured" in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of "claims expenses" and to seek reimbursement for "claims expenses".

**B.** Paragraph **2.A.** of **SECTION VII — EXTENDED REPORTING PERIODS** is deleted in its entirety and replaced by the following:

**A.** This policy is cancelled or not renewed for any reason; or

**C.** Paragraph **4.** of **SECTION VII — EXTENDED REPORTING PERIODS** is deleted in its entirety and replaced by the following:

**4.** A Supplemental Extended Reporting Period option of one (1) year is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, as described in Paragraph **3.** above, ends.

You must give us a written request for the endorsement within sixty (60) days after the end of the "policy period". The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

The "named insured" must give us a written request within sixty (60) days of the "named insured's" election of the Supplemental Extended Reporting Period. Payment of the full additional premium for the Supplemental Extended Reporting Period is due within sixty (60) days of the termination of this Policy. If notice of election and payment for the Supplemental Extended Reporting Period is not given to us within such sixty (60) day period, there shall be no right to purchase the Supplemental Extended Reporting Period. The additional premium for the Supplemental Extended Reporting Period shall be 100% of the current term's annual premium.

This Supplemental Extended Reporting Period endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy other than as above stated.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 70 10 12 19
Page 1 of 1

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F **...ED — AUTOMATIC STATUS**

CYBER LIABILITY AND DATA BREACH RESPONSE
**CB 79 08 06 20**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

CYBER LIABILITY AND DATA BREACH RESPONSE COVERAGE FORM

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. **SECTION III — WHO IS AN INSURED**, is amended by the addition of the following:

   **8.** An "additional insured", but only as respects "claims" against such person or entity for acts, errors or omissions of the "insured organization".

2. **SECTION XI — DEFINITIONS**, is amended by the addition of the following:

   "Additional insured" means any person or entity that the "insured organization" has agreed in writing to add as an "additional insured" under this Policy prior to the commission of any act for which such person or entity would be provided coverage under this Policy, but only to the extent the "insured organization" would have been liable and coverage would have been afforded under the terms and conditions of this Policy had such "claim" been made against the "insured organization".

3. **SECTION IV — EXCLUSIONS**, Paragraph **15.** is amended by the addition of the following:

   This exclusion will not apply to a "claim" made by an "additional insured".

All other terms and conditions of this Policy remain unchanged.

CB 79 08 06 20
Page 1 of 1

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM)

CYBER LIABILITY AND DATA BREACH RESPONSE
**CB 80 01 12 19**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

CYBER LIABILITY AND DATA BREACH RESPONSE COVERAGE PART

A. The insurance does not apply:

1. Under any Liability Coverage, to injury, sickness, disease, death or destruction:

   A. with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   B. resulting from the "hazardous properties" of "nuclear material" and with respect to which **(i)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(ii)** the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the "hazardous properties" of "nuclear material", if:

   A. the "nuclear material" **(i)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(ii)** has been discharged or dispersed therefrom;

   B. the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

   C. the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **C.** applies only to injury to or destruction of property at such "nuclear facility".

B. As used in this endorsement:

1. "Hazardous properties" include radioactive, toxic or explosive properties.

2. "Nuclear material" means "source material", "special nuclear material" or by-product material".

3. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

4. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

5. "Waste" means any waste material **(i)** containing "by-product material" and **(ii)** resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(i)** and **(ii)** of the definition of "nuclear facility".

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**CB 80 01 12 19**
**Page 1 of 2**

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9083-5F8FFD4B761F

6.  "Nuclear facility" means:

   **(i)** any "nuclear reactor";

   **(ii)** any equipment or device designed or used for **(a)** separating the isotopes of uranium or plutonium, **(b)** processing or utilizing "spent fuel", or **(c)** handling, processing or packaging "waste";

   **(iii)** any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(iv)** any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

7.  "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

8.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

All other terms and conditions of this Policy remain unchanged.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**CB 80 01 12 19**
**Page 2 of 2**

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

# RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - LIABILITY — DIRECT (U.S.A.)

CYBER LIABILITY AND DATA BREACH RESPONSE
**CB 80 02 12 19**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

CYBER LIABILITY AND DATA BREACH RESPONSE COVERAGE PART

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**INSURED'S COPY**

CB 80 02 12 19
Page 1 of 1

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

# SANCTION LIMITATION AND EXCLUSION CLAUSE

CYBER LIABILITY AND DATA BREACH RESPONSE
**CB 80 03 12 19**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

CYBER LIABILITY AND DATA BREACH RESPONSE COVERAGE PART

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, law or regulations of the European Union, United Kingdom or United States of America.

All other terms and conditions of this Policy remain unchanged.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

CB 80 03 12 19
Page 1 of 1

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| Policy Number | Policy Number |
|---|---|
| S 2210263 | S 2210263 |

# BUSINESS AUTOMOBILE COVERAGE DECLARATION

| Policy Effective Date: FEBRUARY 12, 2022 | Coverage Effective Date: FEBRUARY 12, 2022 |
|---|---|

**Business of Named Insured:** RETAIL CARPET STORE

Item Two - SCHEDULE OF COVERAGES AND COVERED AUTOS. This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

## Coverage Schedule

| Coverages | Covered Autos Symbols | Limit The Most We Will Pay for Any One Accident or Loss | Premium |
|---|---|---|---|
| Liability | 1 | $1,000,000 CSL | $3,349.00 |
| Personal Injury Protection (or First Party Benefits) | 5 | Separately stated in each P.I.P Endorsement | $20.00 |
| Added Personal Injury Protection (or Added First Party Benefits) | 5 | Separately stated in each P.I.P Added Endorsement | $5.00 |
| Auto Medical Payments | | | |
| Uninsured Motorists | 2 | $1,000,000 CSL | $40.00 |
| Underinsured Motorists | 2 | $1,000,000 CSL | $178.00 |
| Physical Damage Comprehensive Coverage | 7 | Actual Cash Value or Cost of Repair, whichever is less minus any applicable deductible shown on the Auto Schedule for Each Covered Auto for all Loss except Fire or Lightning. | $230.00 |
| Physical Damage Specified Causes of Loss Coverage | | Actual Cash Value or Cost of Repair, whichever is less minus $25 deductible for Each Covered Auto for Loss caused by Mischief or Vandalism. | |
| Physical Damage Collision Coverage | 7 | Actual Cash Value or Cost of Repair, whichever is less minus the applicable deductible shown on the Auto Schedule for Each Covered Auto. | $476.00 |
| Physical Damage Towing and Labor Coverage | | for Each Disablement of a Private Passenger Auto. | |
| Hired Auto and Non-Owned Auto Coverage | | | INCL. |
| Premium for Endorsement | | | $107.00 |

## Auto Schedule

| No. | | Trade Name | Year | Body Type Truck Size | Vehicle Id. No. (VIN) | Size Class | Use/Class/Radius Code | List Symbol | Purchased by Insured Year | N/U | Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PA | 1 | GMC | 01 | SAVANA G25 | 1GTFG25MX11169399 | L | S/011890/L | | | | $21,074 |
| PA | 2 | CHEV | 08 | EXPRESS G2 | 1GCGG25C581154797 | L | S/011830/L | | | | $23,920 |

| No. | | Terr. | Liability Insurance Premium | P.I.P. or F.P.B. | Add. P.I.P. or F.P.B | Med. Paymts. Prem. | Um & Uim Motorists Premium | Physical Damage Insurance | | | | | Towing Prem. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Comprehensive | | Specified Causes of Loss | Collision | | |
| | | | | | | | | Ded. | Prem. | | Ded. | Prem. | |
| PA | 1 | 101 | 1,458 | 10 | 5 | | 109 | 500 | 107 | | 500 | 225 | |
| PA | 2 | 101 | 1,645 | 10 | | | 109 | 500 | 123 | | 500 | 253 | |
| Totals $ | | | 3,103 | 20 | 5 | | 218 | | 230 | | | 476 | |

Item Three - Schedule of Covered Autos You Own (see Auto Schedule) - Loss Payees Subject to Loss Payable Clause:
Vehicle No.                                   Name and Address of Loss Payee

Forms and Endorsements:

Refer to "Commercial Policy Forms and Endorsement Schedule"

Total Premium

CA-70S7 (02/92)            **INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| Policy Number | Policy Number |
|---|---|
| S 2210263 | S 2210263 |

## BUSINESS AUTOMOBILE COVERAGE DECLARATION (Continued)

| Policy Effective Date: FEBRUARY 12, 2022 | Coverage Effective Date: FEBRUARY 12, 2022 |
|---|---|

Item Four - Schedules of Hired or Borrowed Covered Auto Coverage and Premiums. Liability Insurance - Rating Basis, Cost of Hire

| State | Estimated Cost of Hire for Each State | Rate per Each $100 Cost of Hire | Minimum Premium | Premium |
|---|---|---|---|---|
| PENNSYLVANIA | IF ANY | .904 | $85.00 | $85.00 |
| | | | Total Premium | $85.00 |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners, employees or their family members). Cost of hire does not include charges for service performed by motor carriers of property or passengers.

**Physical Damage Coverage**

| Coverages | Limit of Insurance | Estimated Annual Cost of Hire | Rate per Each $100 Annual Cost of Hire | Premium |
|---|---|---|---|---|
| Comprehensive | Actual Cash Value, Cost of Repairs or Whichever is Less Minus      Ded. for Each Covered Auto For all Loss Except Fire or Lightning | | | |
| Specified Causes of Loss | Actual Cash Value, Cost of Repairs or Whichever is Less Minus $ 25 Ded. for Each Covered Auto, for Loss Caused by Mischief or Vandalism | | | |
| Collision | Actual Cash Value, Cost of Repairs or Whichever is Less Minus      Ded. for Each Covered Auto | | | |
| | | | Total Premium | |

PHYSICAL DAMAGE INSURANCE applies on a direct primary basis and for purposes of the condition entitled OTHER INSURANCE, any covered "auto" you hire or borrow is deemed to be a covered "auto" you own.

Item Five - Schedule for Non-Ownership Liability

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | 25 | $161.00 |
| | Number of Partners | | |
| Social Service Agency | Number of Employees | | |
| | Number of Volunteers | | |
| | | Total Premium | $161.00 |

Item Six - Schedule for Gross Receipts or Mileage Basis - Liability Insurance - Public Auto or Leasing Rental Concerns -

| Estimated Yearly | Rates | | Premiums | |
|---|---|---|---|---|
| | Liability Insurance | Auto Medical Payments | Liability Insurance | Auto Medical Payments |
| | | | | |
| | Total Premiums | | | |

CA-7058 (02/92)

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

# ...DED AND COMBINATION
# FIRST-PARTY BENEFITS ENDORSEMENT

POLICY NUMBER: S  2210263

COMMERCIAL AUTO
**CA 22 38 10 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

   PENNSYLVANIA BASIC FIRST-PARTY BENEFIT

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**Named Insured:**

**Endorsement Effective Date:**

**Basic First-party Benefit** is changed as follows:

### SCHEDULE

As indicated below, Added First-party Benefits or Combination First-party Benefits apply instead of the Basic First-party Benefit. The Limits Of Liability shown for the benefits selected below replace the Limits Of Liability shown in the Schedule for the Basic First-party Benefit.

| Benefits | Limit Of Liability (Per Insured) | | |
|---|---|---|---|
| [X] **Added First-party Benefits:** | | | |
| **Medical Expense Benefits** | Up to | SEE CA-2237 | |
| **Work Loss Benefits** | Up to | $5,000 | subject to a maximum |
| | Of | $1,000 | per month |
| **Funeral Expense Benefits** | Up to | NOT COVERED | |
| **Accidental Death Benefits** | | NOT COVERED | |
| [ ] **Combination First-party Benefits:** | | | |
| **Maximum Total Limit For All Benefits** Subject to the following individual limits: | Up to | | |
| **Medical Expense Benefits** | No specific dollar amount | | |
| **Work Loss Benefits** | No specific dollar amount | | |
| **Funeral Expense Benefits** | Up to $2,500 | | |
| **Accidental Death Benefits** | | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

### A. Coverage

We will pay Added First-party Benefits or Combination First-party Benefits in accordance with the "Act" up to the limits stated in the Schedule or Declarations to or for an "insured" who sustains "bodily injury" caused by an "accident" and arising out of the maintenance or use of an "auto". We will only pay Combination First-party Benefits for expenses or loss incurred within three years from the date of the "accident".

In addition to the Medical Expense Benefits described in the Basic First-party Benefit endorsement, Added First-party Benefits and Combination First-party Benefits also consist of:

1.  Work Loss Benefits consisting of:

    a.  Loss of income. Up to 80% of the gross income actually lost by an "insured".

Copyright, Insurance Services, Inc., 2012

**CA 22 38 10 13**
**Page 1 of 2**

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

b. Reasonable expenses actually incurred to reduce loss of income by hiring:

(1) Special help, thereby enabling the "insured" to work; or

(2) A substitute to perform the work a self-employed "insured" would have performed.

However, Work Loss Benefits do not include:

a. Loss of expected income for any period following the death of an "insured";

b. Expenses incurred for services performed following the death of an "insured"; or

c. Any loss of income, or expenses incurred for services performed, during the first five working days the "insured" did not work after the "accident" because of the "bodily injury".

2. Funeral Expense Benefits. Actual expenses incurred for an "insured's" funeral or burial if "bodily injury" resulting from the "accident" causes his or her death within 24 months from the date of the "accident".

3. Accidental Death Benefits. A death benefit paid if "bodily injury" resulting from an "accident" causes the death of you or any "family member" within 24 months from the date of the "accident".

**B. Exclusions**

In addition to the exclusions in the Basic First-party Benefit endorsement, the following exclusion also applies.

We will not pay:

Accidental Death Benefits on behalf of any person who intentionally caused or attempted to cause "bodily injury" to himself, herself or any other person.

**C. Limit Of Insurance**

1. Regardless of the number of covered "autos", premiums paid, claims made, "autos" involved in the "accident" or insurers providing First-party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or the Declarations. Combination First-party Benefits are subject to a maximum total single limit of liability with individual limits for specific benefits as shown in the Schedule or Declarations.

2. If Combination First-party Benefits are afforded, we will make available at least the minimum limit required by the "Act" for the Basic First-party Benefit. This provision will not change our total limit of liability.

**D. Changes In Conditions**

In addition to the conditions applicable to the Basic First-party Benefit endorsement, the following condition also applies:

**Payment Of Accidental Death Benefits**

The Accidental Death Benefit under this policy will be paid to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, benefits shall be paid to:

1. The deceased "insured's" surviving spouse; or

2. If there is no surviving spouse, the deceased "insured's" surviving children; or

3. If there is no surviving spouse or surviving children, the deceased "insured's" estate.

Copyright, Insurance Services, Inc., 2012

**CA 22 38 10 13**
**Page 2 of 2**

**INSURED'S COPY**

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**PENNS... _ /ANIA CHANGES**

COMMERCIAL AUTO
**CA 01 80 03 21**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The following is added to Paragraph **2.a. Supplementary Payments:**

Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

**B. Changes In Conditions**

1. Paragraph **2.b.(5)** of the **Duties In The Event Of An Accident, Claim, Suit Or Loss** Condition is replaced by the following:

   **(5)** Submit to an independent medical examination when required by a court order issued in accordance with PA. CONS. STAT. SECTION 1796.

2. The following is added to Paragraph **5. Transfer Of Rights Of Recovery Against Others To Us** Condition:

   If we make any payment due to an "accident" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

3. The following paragraph is added to the **Other Insurance** Condition:

   If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. Section 818.2, then:

   **a.** For any "auto" you own, which is loaned to a customer as a temporary substitute for an "auto" insured under a "customer's private passenger automobile insurance policy" which is out of use because it is being transported, serviced, repaired or inspected, Covered Autos Liability, but only with respect to damages because of "bodily injury" and Physical Damage Coverage provided by this Coverage Form shall be excess in the event of an "accident" or "loss".

   **b.** For any "auto" insured under your "customer's private passenger automobile insurance policy", while it is being transported, serviced, repaired or inspected by you or your "employee":

      **(1)** Covered Autos Liability, but only with respect to damages because of "bodily injury";

      **(2)** Comprehensive Coverage;

      **(3)** Specified Cause Of Loss Coverage; and/or

      **(4)** Collision Coverage;

   provided by this Coverage Form shall be primary in the event of an "accident" or "loss".

Copyright, Insurance Services Office, Inc., 2020

**CA 01 80 03 21**
**Page 1 of 2**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**4.** The following is added to Paragraph **B. General Conditions:**

**a. Constitutionality Clause**

The premium for, and the coverages of, this Coverage Form have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment, the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the Coverage Form and void or amend the provisions of the Coverage Form, subject to the approval of the Insurance Commissioner.

**b. Conformity Clause**

If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. Section 818.2, then whenever an "auto" insured under your "customer's private passenger automobile insurance policy" is being transported, serviced, repaired or inspected by you or your "employee":

**(1)** The provisions of the:

**(a)** Covered Autos Liability, but only with respect to damages because of "bodily injury";

**(b)** Comprehensive Coverage;

**(c)** Specified Cause Of Loss Coverage; and/or

**(d)** Collision Coverage;

provided by this Coverage Form are hereby amended to conform to 40 Pa. Stat. Ann. Section 991.2007a; and

**(2)** Pursuant to 40 Pa. Stat. Ann. Section 991.2007a, the Limits Of Insurance provided in the Schedule or in the Declarations are hereby increased as needed to an amount equal to the:

**(a)** Applicable limit(s);

**(b)** Actual cash value; and/or

**(c)** Amount necessary to repair or replace the property with other property of like kind and quality;

set forth in the "customer's private passenger automobile insurance policy".

**C. Changes In Definitions**

For motor vehicle dealers as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. Section 818.2, the following definition is added:

"Customer's private passenger automobile insurance policy" means a private passenger automobile insurance policy that:

**1.** Is currently in effect; and

**2.** Lists an "auto" owned by your customer or a "customer's auto" in the Declarations.

Copyright, Insurance Services Office, Inc., 2020

**CA 01 80 03 21**
**Page 2 of 2**

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| Policy Number | Policy Number |
|---|---|
| S  2210263 | S  2210263 |

# BUSINESSOWNERS COVERAGE DECLARATIONS

| Policy Effective Date: FEBRUARY 12, 2022 | Coverage Effective Date: FEBRUARY 12, 2022 |
|---|---|

**Named Insured is:** CORPORATION

**Business of Named Insured:** RETAIL CARPET STORE

## DESCRIPTION OF PREMISES

| Prem. No. | Bldg. No. | Location | Occupancy |
|---|---|---|---|

**Refer to "Schedule of Locations"**

In return for payment of the premium and subject to all the terms of this policy, we agree with you to provide insurance for those coverages for which a specific limit is shown in the following coverage schedule

## COVERAGE SCHEDULE

| Prem. No. | Bldg. No. | Coverage | Property Limit of Insurance | Blanket Insurance | Deductible | Valuation | Automatic Increase in Insurance |
|---|---|---|---|---|---|---|---|
| 1 | 1 | BUSINESS PERSONAL PROPERTY | $212,998 | NONE | $1,000 | RC | N/A |
| 2 | 1 | BUSINESS PERSONAL PROPERTY | $71,000 | NONE | $1,000 | RC | N/A |
| 3 | 1 | BUSINESS PERSONAL PROPERTY | $5,274 | NONE | $1,000 | RC | N/A |

## LIABILITY AND MEDICAL PAYMENTS

| | | | |
|---|---|---|---|
| Liability and Medical Expenses Limit | $1,000,000 | General Aggregate Limit | $3,000,000 |
| Medical Expenses Limit - Per Person | $10,000 | Product Aggregate Limit | $3,000,000 |

| Forms and Endorsements: | Premium Amount |
|---|---|
| | $7,017.00 |
| Refer to "Commercial Policy Forms and Endorsement Schedule" | |

BP 71 19 09 19

**INSURED'S COPY**

Case ID: 231001459

000023 02/96 2.07

4000075 2210263498

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| Previous Policy Number | Policy Number |
|---|---|
| S  2210263 | S  2210263 |

## Businessowners Schedule
## Plus Coverage Option

**Unless specifically increased in the Optional Increased Limits Schedule, the limits set forth below are the limits that apply to the coverages included in the Plus Coverage Option.**

| COVERAGE | LIMIT |
|---|---|
| **PROPERTY** | |
| Additional Costs | $10,000 |
| Appurtenant Structures | $50,000 |
| Arson, Theft and Vandalism Rewards (not applicable in NY) | $10,000 |
| Back-Up Of Sewers And Drains | $25,000 |
| Blanket Additional Coverage (BAC): | $75,000 |
| Accounts Receivable ($10,000 Off Premises sub-limit) | Included in BAC Limit |
| Electronic Information Systems (Computer Equipment and Electronic Data) | Included in BAC Limit |
| Spoilage | Included in BAC Limit |
| Valuable Papers ($10,000 Off Premises sub-limit) | Included in BAC Limit |
| Brands and Labels | Included in BPP Limit |
| Building Owner - Leasehold Interest | $25,000 |
| Building Owner - Tenant Move Back Expenses | $25,000 |
| Business Income/Extra Expense | |
| Actual Loss Sustained | 12 months |
| Waiting Period | 0 hours |
| Business Income/Extra Expense Additional Coverages | |
| Auto Physical Damage Business Income | $10,000 |
| Civil Authority (Five mile coverage limitation from the damaged property) | 30 Days |
| Contractual Penalties | $10,000 |
| Dependent Properties ☒ Dependent Property ☐ Secondary Dependent Property | $25,000 |
| Extended Period of Indemnity | 75 Days |
| Food Contamination Shutdown | |
| Food Contamination | $10,000 |
| Additional Advertising Expense | $5,000 |
| Interruption of Computer Operations | $10,000 Policy Period |
| Newly Acquired Premises | $250,000 / 90 Days to Report |

Copyright, 2019 Selective Insurance Company of America. All rights reserved.

**BP 72 49 09 19**
**Page 1 of 4**

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| COVERAGE | LIMIT |
|---|---|
| Off Premises - Utility Services Time Element | $10,000 |
| Pollutant Clean-up and Removal - Business Income | $10,000 |
| Unnamed Premises - Business Income | $10,000 |
| Tenant Additional Rental Expense | $10,000 |
| Web Site | $25,000 |
| Business Personal Property - Seasonal Increase | 35% |
| Claim Expenses | $10,000 |
| Commercial Tools and Small Equipment | $10,000 |
| Consequential Loss (Pairs and Sets) | Included in BPP Limit |
| Crime Related Coverages | |
| Computer Fraud | $5,000 |
| Credit Card Slips | $5,000 |
| Employee Theft - Including Employee Benefit Plans | $15,000 |
| Forgery Or Alterations | $15,000 |
| Funds Transfer Fraud | $5,000 |
| Money and Securities - Inside | $10,000 |
| Money and Securities - Outside | $5,000 |
| Money Orders and Counterfeit Money | $5,000 |
| Unauthorized Business Card Use | $5,000 |
| Debris Removal - Additional Limit | 10% of Bldg/BPP Limit or $50,000 whichever is greater |
| Deferred Payments | $5,000 |
| Expediting Expense | $5,000 |
| Fine Arts ($5,000 any one item) | $10,000 |
| Fire Department Service Charge | $10,000 |
| Fire Extinguisher Systems Recharge Expense | Actual Loss Sustained |
| Glass Expenses | Included |
| Installation Property | $10,000 |
| Lock Replacement Coverage | $5,000 |
| Loss Payment on Merchandise Sold (Selling Price) | Included in BPP Limit |
| Mobile Equipment (Used to Service Premises) | $5,000 |
| Newly Acquired or Constructed Property - Building | $500,000 / 90 Days to Report |
| Newly Acquired or Constructed Property - Business Personal Property | $250,000 / 90 Days to Report |

Copyright, 2019 Selective Insurance Company of America. All rights reserved.

**BP 72 49 09 19**
**Page 2 of 4**

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| COVERAGE | LIMIT |
|---|---|
| Non-Owned Detached Trailers | $10,000 |
| Off Premises Utility Services - Direct Damage | $10,000 |
| Ordinance or Law Coverage | |
| Coverage 1 - Loss to the Undamaged Portion of the Building | Included Within Bldg Limit |
| Coverage 2 - Demolition Cost | 10% of Bldg Limit or $50,000 whichever is greater |
| Coverage 3 - Increased Cost of Construction | |
| Coverage 4 - Tenants Improvements and Betterments | $25,000 |
| Coverage 5 - Increased Period of Restoration | $25,000 |
| Outdoor Property | $50,000 |
| Outdoor Trees, Shrubs and Plants ($2,500 any one item) | $10,000 |
| Personal Effects | $10,000 |
| Personal Property At Unnamed Premises - Within The Coverage Territory | $10,000 |
| Personal Property At Unnamed Premises - Outside The Coverage Territory | $10,000 |
| Pollutant Clean-up and Removal | $25,000 |
| Premises Boundary Increased Distance | 1,000 Feet |
| Preservation of Property | 45 Days |
| Property In Transit | $25,000 |
| Salesperson's Samples | $10,000 |
| Tenant Building and Business Personal Property Coverage Required By Lease | $20,000 |
| Tenant Lease Assessment | $10,000 |
| Tenant Leasehold Improvements | $25,000 |
| Theft Loss to Building | Included in BPP Limit |
| Theft Limitations | |
| Furs | $7,500 |
| Jewelry, Watches and Precious Metals | $7,500 |
| Patterns and Dies | $7,500 |
| Virus and Harmful Code | $25,000 Occurrence $75,000 Any One Policy Year |
| | |
| **LIABILITY** | |
| Damage To Premises Rented To You | $300,000 |
| Blanket Additional Insureds As Required By Contract | Included |
| Broad Form Vendors | Included |

Copyright, 2019 Selective Insurance Company of America. All rights reserved.

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| COVERAGE | LIMIT |
|---|---|
| Discrimination | Included in P&AI |
| Incidental Malpractice | Included |
| Knowledge Of Occurrence, Offense, Claim Or Suit | Included |
| Liberalization | Included |
| Medical Payments For Non-For-Profit Members | Included in Med Pay Limit |
| Mental Anguish (not applicable in NY) | Included in the BI Definition |
| Newly Formed or Acquired Organizations | Included up to 180 days |
| Non-Owned Aircraft (not owned or operated by you) | Included |
| Non-Owned Watercraft ( <60' long, not used to carry persons or goods for charge) | Included |
| Not-for-profit Organization Members as Additional Insureds | Included |
| Primary and Non-Contributory | Included |
| Supplementary Payment - Bail Bonds | $3,000 |
| Supplementary Payment - Reasonable Expenses & Loss of Earnings | $1,000 Per Day |
| Temporary Workers as Employees | Included |
| Unintentional Failure to Disclose Hazards | Included |
| Waiver of Subrogation | Included |

Copyright, 2019 Selective Insurance Company of America. All rights reserved.

**BP 72 49 09 19**
**Page 4 of 4**

**INSURED'S COPY**

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B751F

# ...ED LOCATION(S)
# GENERAL AGGREGATE LIMIT

POLICY NUMBER: S  2210263

BUSINESSOWNERS
**BP 14 17 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

**Designated Location(s):**
EACH LOCATION OWNED BY OR RENTED TO YOU

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**SECTION II — LIABILITY** is amended as follows:

**A.** For all sums which the insured becomes legally obligated to pay as damages for "bodily injury" or "property damage" caused by "occurrences" covered under Paragraph **A.1. Business Liability,** and for all medical expenses caused by accidents covered under Paragraph **A.2. Medical Expenses,** which can be attributed only to ongoing operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Paragraph **A.1. Business Liability,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Paragraph **A.2. Medical Expenses,** regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under Paragraph **A.1. Business Liability** for damages or under Paragraph **A.2. Medical Expenses** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expenses continue to apply. However, instead of being subject to the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

**B.** For all sums under Paragraph **A.1. Business Liability** which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by "occurrences" and medical expenses caused by accidents under Paragraph **A.2. Medical Expenses,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

Copyright, Insurance Services Office, Inc., 2009

**BP 14 17 01 10**
**Page 1 of 2**

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

1. Any payments made under Paragraph **A.1. Business Liability** for damages or under Paragraph **A.2. Medical Expenses** for medical expenses shall reduce the amount available under the Other Than Products/Completed Operations Aggregate Limit or the Products/Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products/Completed Operations Aggregate Limit, and not reduce the Other Than Products/Completed Operations Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Liability And Medical Expenses Definitions** section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Paragraph **D. Liability And Medical Expenses Limits Of Insurance**, not otherwise modified by this endorsement, shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 2009

**BP 14 17 01 10**
**Page 2 of 2**

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F **...ITY EXPOSURE SCHEDULE**

POLICY NUMBER: S  2210263

**BUSINESSOWNERS
BP 72 76 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement provides supplementary information to be used with the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Additional Liability Exposures | | | |
|---|---|---|---|
| Location | | Description | Exposure |
| 001 | 001 | ADDL LIAB – CONTRACTORS SUBCONTRACTED WORK | $30,000 |
| 002 | 001 | ADDL LIAB – CONTRACTORS SUBCONTRACTED WORK | $30,000 |

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 76 09 18
Page 1 of 1**

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**EQUIPMENT BREAKDOWN DEDUCTIBLE ENDORSEMENT**

POLICY NUMBER: S  2210263

BUSINESSOWNERS
BP 80 13 09 18

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EQUIPMENT BREAKDOWN

The following is added to EQUIPMENT BREAKDOWN:

### SCHEDULE

The Deductibles applicable to any one "accident" are shown below:

| Prem. No. | Bldg. No. | Deductible(s) |
|-----------|-----------|---------------|
|           |           |               |

Unless otherwise shown in the Schedule above, the deductible(s) will be:
**COMBINED COVG    FOLLOWS PROPERTY DEDUCTIBLE**

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

BP 80 13 09 18
Page 1 of 1

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**BUSINESSOWNERS PROPERTY ENHANCEMENT ENDORSEMENT**

BUSINESSOWNERS
**BP 72 46 07 21**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SECTION I — PROPERTY** of the Businessowners Coverage Form is amended as shown below.

1. All references to 100 feet are changed to 1,000 feet.

2. If we or any of our affiliates issue other insurance to you and more than one limit of insurance applies to loss or damage sustained by you, the following limitations will apply:

   a. Your recovery under all such insurance will not exceed the actual amount of loss or damage sustained; and

   b. The insurance provided by this endorsement applies in excess of and, except as to premium, limits and notice, follows the terms, conditions, limitations and exclusions of other applicable insurance issued to you by us or any of our affiliates.

3. With respect to coverage provided by this endorsement, the provisions of the Businessowners Coverage Form apply unless modified by this endorsement.

   1. Paragraph **1.a.(5)** does not apply and is replaced by the following:

      (5) Personal property owned by you, or for which you are liable, that is used to maintain or service the buildings or structures or the premises, including:

         (a) Fire extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings, draperies and shades;

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

         (e) Personal property located within common areas of buildings owned by you. This includes but is not limited to furnishings and fixtures in lobbies, public hallways, stairs and corridors;

         (f) Lawn maintenance and snow removal equipment;

         (g) Alarm systems;

   2. The following is added to Paragraph **1.a. Buildings:**

         (7) Indoor swimming pools which are an integral part of the buildings.

         (8) Office contents owned by you as the building owner that is used to maintain or service the buildings or structures.

   3. Paragraph **1.b.(2) Business Personal Property** does not apply and is replaced by the following:

      (2) Property of others that is in your care, custody or control, but this property is not covered for more than the amount for which you are legally liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others. Property of others does not include Personal Property of Employees;

   4. Paragraph **1.b.(3) Business Personal Property** does not apply and is replaced by the following:

      (3) Tenant's improvements and betterments unless a separate tenant's improvements and betterments limit is shown in the Declarations for a described premises. Improvements and betterments are fixtures, alterations, installations or additions:

         (a) Made a part of the building or structure you occupy but do not own; and

         (b) You acquired or made at your expense but cannot legally remove;

   5. Paragraph **1.b.(5) Business Personal Property** does not apply and is replaced by the following:

      (5) Exterior and interior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

BP 72 46 07 21
Page 1 of 27

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

6.  The following is added to **1.b. Business Personal Property:**

> (6) Exterior awnings or related exterior coverings attached to the building, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The exterior awning or related exterior covering attached to the building must be owned by you or in your care, custody or control.

**B.** Paragraph **A.2. Property Not Covered** is amended as follows:

1.  Paragraphs **2.b., 2.e.** and **2.i.** do not apply and are replaced by the following:

> **b.** "Money" or "securities," except as provided in the Employee Theft, Forgery Or Alterations, Computer Fraud, Funds Transfer Fraud and the Money and Securities Coverage Extensions;

> **e.** Outdoor fences, radio and television receiving equipment, including its lead-in wiring, masts or towers, signs, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Outdoor Property and Trees, Shrubs and Plants Coverage Extensions;

> **i.** "Electronic data", except as provided under the Electronic Information Systems coverage included in the Blanket Additional Coverage. This Paragraph **i.** does not apply to your "stock" of pre-packaged software.

**C.** Paragraph **A.4. Limitations** is amended as follows:

1.  Paragraph **4.a.(3)** does not apply and is replaced by the following:

> (3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Money and Securities Coverage Extension.

2.  Paragraph **4.c.** does not apply and is replaced by the following:

> **c.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

> (1) For furs, fur garments and garments trimmed with fur, the limit shown in the Schedule.

> (2) For jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals, the limit shown in the Schedule. This limit does not apply to jewelry or watches worth $100 or less per item.

> (3) For patterns, dies, molds and forms, the limit shown in the Schedule.

**D.** Paragraph **A.5. Additional Coverages** does not apply and is replaced by the following:

Unless otherwise stated in this Endorsement or in a specific Additional Coverage, Additional Coverages:

1.  Apply to each described premises on a per occurrence basis;

2.  Are subject to the Deductible provision of this Endorsement; and

3.  Are stand-alone Additional Coverages that do not:

> **a.** Impact the coverage scope or limits applicable to any Covered Property, Business Personal Property, Personal Property of Others, Business Income and Extra Expense or any other Additional Coverage; or

> **b.** Otherwise modify this policy's coverage scope or limits.

**Business Income**

1.  **Direct Damage**

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises includes the area within 1,000 feet of the site at which the described premises are located.

> With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

> **a.** The portion of the building which you rent, lease or occupy;

> **b.** The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

Copyright, 2020 Selective Insurance Company of America. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

**BP 72 46 07 21**
**Page 2 of 27**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

c. Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

If the Schedule shows for Business Income:

a. Actual Loss Sustained, then we will pay the actual loss of Business Income that occurs within 12 consecutive months following the date of direct physical loss or damage unless optional coverage for 18 or 24 consecutive months is shown in the Schedule; or

b. A maximum dollar limit, then we will pay for loss of Business Income that occurs within 12 consecutive months following the date of direct physical loss or damage, unless optional coverage for 18 or 24 consecutive months is shown in the Schedule, subject to the Limit of Insurance shown in the Schedule.

2. **Extended Period of Indemnity**

If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

a. Begins on the date property except finished "stock" is actually repaired, rebuilt or replaced and "operations" are resumed; and

b. Ends on the earlier of:

(1) The date you could restore your "operations" with reasonable speed to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage occurred;

(2) The number of consecutive days shown in the Schedule after the date determined in (1) above unless a greater number of consecutive days is shown in the Schedule.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from a Covered Cause of Loss.

3. **Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

a. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and the described premises are within that area but are not more than five miles from the damaged property; and

b. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

For Business Income, this Additional Coverage will begin immediately after the time of the first action of civil authority that prohibits access to the described premises, unless one of the optional waiting period endorsements is attached to this policy and will apply for a period of up to 30 consecutive days from the date on which such coverage begins.

For Extra Expense, this Additional Coverage will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

a. Four consecutive weeks after the date of that action; or

b. When your Civil Authority Coverage for Business Income ends;

whichever is later.

4. **Dependent Properties**

We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from a Covered Cause of Loss.

Dependent property means property owned or operated by others you depend on to:

a. Deliver materials or services to you or to others for your account (Contributing Locations). But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

Copyright, 2020 Selective Insurance Company of America. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

b. Accept your products or services (Recipient Locations);

c. Manufacture your products for delivery to your customers under contract of sale (Manufacturing Locations); or

d. Attract customers to your business (Leader Locations).

Secondary dependent property means an entity which is not owned or operated by a dependent property and which:

a. Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

b. Accepts materials or services from a dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

(1) Water supply services;

(2) Wastewater removal services;

(3) Communication supply services; or

(4) Power supply services.

The dependent property or secondary dependent property must be located in the coverage territory of this policy.

This Additional Coverage does not apply:

a. To loss of Business Income you sustain due to physical loss or damage at the premises of dependent or secondary dependent properties for which you have more specific insurance either under this policy or another.

b. When the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

c. To loss of Business Income you sustain due to physical loss or damage at dependent or secondary dependent properties located outside this policy's coverage territory.

We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

a. Source of materials or services; or

b. Outlet for your products or services

If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

The expiration date of this policy will not reduce the Dependent Properties Business Income coverage period.

The most we will pay under this Additional Coverage is the limit shown in the Schedule.

5. **Food Contamination Shutdown**

If your business at a described location is ordered closed by the Board of Health or any other governmental authority as a result of the discovery of, or suspicion of, "food contamination" we will pay:

a. The loss of Business Income you sustain due to the necessary suspension of your "operations";

b. Your expense to clean your equipment as required by the Board of Health or any other governmental authority;

c. Your costs to replace consumable goods suspected to be contaminated;

d. Reimbursement to infected customers for doctor's care, hospitalization and necessary medical tests or vaccinations; and

e. Your expense to provide necessary medical tests and vaccinations for your employees (including temporary or leased employees) who are potentially infected by the "food contamination". This coverage is primary to any other insurance coverage. However, we will not pay for any expense that is otherwise covered under a Workers' Compensation policy.

In addition to the Food Contamination coverage outlined above, we will also pay additional advertising expenses you incur to restore your reputation.

We will not pay for loss caused directly or indirectly due to fines or penalties of any kind. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

This Additional Coverage also does not apply to any "food contamination" arising out of, or directly or indirectly related to an epidemic, a pandemic or any other wide-spread outbreak of communicable disease. For purposes of this Additional Coverage, an epidemic means an outbreak of communicable disease that simultaneously affects persons over a localized geographic area. A pandemic means an outbreak of communicable disease that typically affects a significant portion of the population over a wide geographic area, such as a country, multiple countries or multiple continents.

In the event of a loss you must:

**a.** Give us prompt notice of the suspension declaration;

**b.** Notify any public authority that may have jurisdiction over the incident; and

**c.** As soon as possible, give us a description of how, when and where the "food contamination" was first discovered.

"Food contamination" means an outbreak of food poisoning or food-related illness of one or more persons arising out of:

**a.** Tainted food you distributed or purchased except where such food has been contaminated by virus or bacteria and results in the outbreak of food poisoning or food-related illness at more than one location, regardless of whether the other location(s) is owned or operated by you, or in any way related to your business "operations"; or

**b.** Food which has been improperly processed, stored, handled or prepared in the course of your business "operations".

The most we will pay for:

**a.** Food Contamination is the limit shown in the Schedule; and

**b.** Additional Advertising Expense is $5,000 unless a different limit shown in the Schedule.

**6. Newly Acquired Premises**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the newly acquired premises. The loss or damage must be caused by or result from a Covered Cause of Loss at any premises you newly acquire by purchase or lease, other than fairs, trade shows or exhibits.

The most we will pay under this Additional Coverage is the limit shown in the Schedule for each newly acquired premise.

Insurance under this Additional Coverage will end when any of the following first occurs:

**a.** This policy expires;

**b.** The number of days shown in the Schedule after you acquire the premises;

**c.** You report the premises to us.

**7. Off Premises Utility Services - Time Element**

We will pay for the actual loss of Business Income or Extra Expense at a described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following types of property not located on the described premises:

**a.** Water Supply Property, meaning the following types of property supplying water to the described premises:

**(1)** Pumping stations; and

**(2)** Water mains.

**b.** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the described premises, other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities.

Coverage under this Additional Coverage does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

**c.** Communication Supply Property, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**(1)** Communication transmission lines, including optic fiber transmission lines;

**(2)** Coaxial cables; and

**(3)** Microwave radio relays except satellites.

Copyright, 2020 Selective Insurance Company of America. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

d. Power Supply Property, meaning the following types of property supplying electricity, steam or gas to the described premises:

(1) Utility generating plants;

(2) Switching stations;

(3) Substations;

(4) Transformers; and

(5) Transmission lines.

As used in this Additional Coverage, the term transmission lines includes all lines which serve to transmit communication service or power including lines which may be identified as distribution lines.

We will pay the actual loss sustained from the initial time of service(s) failure at the described premises but only when the service interruption at the described premises exceeds 24 hours immediately following the direct physical loss or damage. Coverage does not apply to any reduction of income after service has been restored to your premises.

The most we will pay for loss or damage in any one occurrence under this Additional Coverage is the limit shown in the Schedule.

### 8. Interruption of Computer Operations

a. Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

b. With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(1) Coverage under this Additional Coverage - Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

(2) If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

(3) The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected,

designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

c. The most we will pay under this Additional Coverage - Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

d. This Additional Coverage - Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in c. above has not been exhausted.

e. Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs a. through d. of this Additional Coverage.

f. Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs a. through d. of this Additional Coverage.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

### 9. Web Sites

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage by a Covered Cause of Loss to:

a. Your business "computer" hosting your business web site at a described location; or

b. Your business web site operation at the premises of a vendor acting as your service provider.

The most we will pay for loss under this Additional Coverage is the lesser of:

a. The loss you sustain during the 7-day period immediately following the first 12 hours after the suspension of your website operations; or

b. The limit shown in the Schedule.

### 10. Contractual Penalties

You may extend your Business Income coverage to apply to contractual penalties you are legally liable to pay under a written contract between you and your customers. This Additional Coverage only applies if the penalties:

a. Result from your failure to timely deliver your product according to contract terms;

b. Result from direct physical loss or damage by a Covered Cause of Loss; and

c. Have been paid to your customer.

The most we will pay under this Additional Coverage is the limit shown in the Schedule.

### 11. Unnamed Premises - Business Income

We will pay for:

a. The loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and

b. The reasonable and necessary Extra Expense you incur during the "period of restoration";

as a result of direct physical loss or damage to property at "unnamed premises" caused by or resulting from a Covered Cause of Loss.

For this Additional Coverage, "unnamed premises" means locations:

a. Owned, leased or operated by you; or

b. Not owned, leased or operated by you,

where Your Business Personal Property or Personal Property of Others in your care, custody or control is located that are within the Coverage Territory and not described in the Declarations.

This Additional Coverage does not apply to loss of Business Income caused by or resulting from loss or damage to property:

a. At the premise of a dependent property;

b. At any location to which the Newly Acquired Premises Additional Coverage applies;

c. At any vendor location to which the Web Sites Additional Coverage applies; or

d. In transit.

The most we will pay for loss under this Additional Coverage is the limit shown in the Schedule.

### 12. Pollutant Clean-Up And Removal

We will pay for the loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by the discharge, dispersal, seepage, migration, release or escape of "pollutants" to land or water at the described premises. Such discharge, dispersal, seepage, migration, release or escape must be caused by or result from a Covered Cause of Loss that occurs during the policy period.

The most we will pay under this Additional Coverage is the limit shown in the Schedule.

### 13. Auto Physical Damage Business Income

We will pay for the loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss or damage to a "covered motor vehicle". The loss or damage must be caused by or result from a Covered Cause of Loss.

"Covered motor vehicle" means a vehicle:

a. Owned by you; or

b. Leased to you for a period greater than 6 months; and

c. Insured by us or any of our affiliates under an Automobile or Garage Coverage Part:

   (1) Covered for direct physical loss or damage; and

   (2) Maintains rental reimbursement coverage; and

Copyright, 2020 Selective Insurance Company of America. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**d.** Used to transport your business personal property.

For this Additional Coverage only:

**a.** "Operations" also means your business activities involving the use of a "covered motor vehicle".

**b.** "Period of restoration" applies to the "covered motor vehicle" rather than the described premises.

Payment for Extra Expense does not apply under this Additional Coverage.

This Additional Coverage does not apply to "private passenger type vehicles".

"Private passenger type vehicle" means a four-wheel auto of the private passenger or station wagon type.

The most we will pay under this Additional Coverage is the limit shown in the Schedule.

The following applies to all Business Income Additional Coverages:

**1.** Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**b.** Continuing normal operating expenses incurred, including payroll.

**2.** Suspension means:

**a.** The partial slowdown or complete cessation of your business activities; and

**b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**3.** When Business Income is written on an Actual Loss Sustained basis, all Business Income Additional Coverages are in addition to the Limit of Insurance shown in the Declarations.

When Business Income is written with a maximum dollar limit, then Business Income - Direct Damage, Extended Business Income and Civil Authority are subject to the Limit of Insurance shown in the Declarations.

**Extra Expense**

**1.** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**a.** The portion of the building which you rent, lease or occupy;

**b.** The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**c.** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**2.** Extra Expense means expense incurred:

**a.** To avoid or minimize the suspension of business and to continue "operations";

(1) At the described premises; or

(2) At replacement premises or at temporary location, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**b.** To minimize the suspension of business if you cannot continue "operations".

**c.** To:

(1) Repair or replace any property; or

(2) Research, replace or restore the lost information on damaged "valuable papers and records"

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or the Business Income Additional Coverage.

**3.** With respect to the coverage provided in this Additional Coverage, suspension means:

**a.** The partial slowdown or complete cessation of your business activities; or

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

BP 72 46 07 21
Page 8 of 27

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**4.** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage unless optional coverage for 18 or 24 consecutive months is shown in the Schedule. This Additional Coverage is not subject to the Limits of Insurance of **SECTION I — PROPERTY.**

**Brands and Labels**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you shall:

**1.** Stamp the word "Salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**2.** Remove the brands and labels, if doing so will not physically damage the merchandise or its containers.

You must relabel the merchandise or its containers to comply with the law.

We will pay reasonable costs you incur to perform the activity described in **1.** or **2.** above.

This Additional Coverage is included within the Business Personal Property Limit of Insurance shown in the Declarations.

**Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in Paragraphs **1.** through **7.** below.

**1.** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation;

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

  **(1)** A cause of loss listed in Paragraph **2.a.** or **2.b.;**

  **(2)** One or more of the "specified causes of loss";

  **(3)** Breakage of building glass;

  **(4)** Weight of people or personal property; or

  **(5)** Weight of rain that collects on a roof.

**3.** This Additional Coverage - Collapse does not apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Awnings;

**b.** Gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Piers, wharves and docks;

**f.** Beach or diving platforms or appurtenances;

**g.** Retaining walls; and

**h.** Walks, roadways and other paved surfaces,

If an abrupt collapse is caused by a cause of loss listed in Paragraphs **2.a.** through **2.d.**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   a. The collapse of personal property was caused by a cause of loss listed in Paragraphs **2.a.** through **2.d.** of this Additional Coverage; and

   b. The personal property which collapses is inside a building; and

   c. The property which collapses is not of a kind listed in Paragraph **4.** regardless of whether that kind of property is considered to be personal property or real property.

   The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage - Collapse, will not increase the Limits of Insurance provided in this coverage.

8. As used in this Additional Coverage, the term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in Paragraphs **1.** through **7.** above.

**Consequential Loss**

If a Covered Cause of Loss occurs to covered "stock", we will pay any reduction in value of the remaining undamaged parts of damaged "stock".

This Additional Coverage is included within the Business Personal Property Limit of Insurance shown in the Declarations.

**Debris Removal**

We will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the Policy Period.

This Additional Coverage does not apply to costs to:

1. Extract "pollutants" from land or water; or

2. Remove, restore, or replace polluted land or water.

If the sum of direct physical loss or damage and debris removal expense exceeds the applicable Limit of Insurance we will pay up to an additional 10% of this Limit of Insurance for each location under the Debris Removal Additional Coverage or $25,000 whichever is greater, unless a higher percentage/limit is shown in the Schedule.

**Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

1. The coverage described in Paragraphs **2.** and **6.** below only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

2. We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

   a. Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

   b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

   c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

3. The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12 month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

Copyright, 2020 Selective Insurance Company of America. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**BP 72 46 07 21
Page 10 of 27**

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5.  The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverage.

6.  The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

    a.  If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

    b.  If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

## Ordinance or Law Coverage

You may extend the insurance provided by this Coverage Form to apply to Ordinance or Law.

This Additional Coverage is subject to the provisions of the Ordinance Or Law Endorsement **BP 72 67** attached to this policy.

### Pollutant Clean-Up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional coverage is the limit shown in the Schedule for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

### Preservation of Property

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

1.  While it is being moved or while temporarily stored at another location; and

2.  Only if the loss or damage occurs within the number of days shown in the Schedule after the property is first moved.

### Tenant Additional Rental Expense

If your lease is cancelled by the lessor in accordance with a valid lease provision due to direct physical loss or damage caused by or resulting from a Covered Cause of Loss to property at the location in which you are a tenant, we will pay for additional rental expense incurred by you for a period of up to 365 days up to the limit shown in the Schedule.

Additional rental expense means the difference between the monthly rent you were paying prior to the loss and the monthly rent you are paying at your new replacement location. If the area being occupied at the new location is greater than that at the old location, the additional rental expense to be paid will be pro-rated.

The most we will pay for loss under this Additional Coverage is the limit shown in the Schedule.

### Tenant Lease Assessment

We will extend your Business Personal Property to apply to your share of any assessment charged to all tenants by the building owner as a result of direct physical loss or damage caused by or resulting from a Covered Cause of Loss to building property you occupy as agreed to in your written lease agreement.

The most we will pay for loss under this Additional Coverage is the limit shown in the Schedule.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**Tenant Leasehold Improvements**

If your lease is cancelled in accordance with a valid lease provision due to direct physical loss or damage caused by or resulting from a Covered Cause of Loss to property at the location in which you are a tenant, and you cannot legally remove tenant's improvements and betterments, we will extend Business Personal Property coverage or if written under a separate limit of insurance your Tenant's Improvements and Betterments coverage to apply to the unamortized value of tenant's improvements and betterments that remain and that you were forced to abandon.

The most we will pay for loss under this Additional Coverage is the limit shown in the Schedule.

This Additional Coverage is included within the Business Personal Property or if written separately, the Tenant's Improvements and Betterments Limit of Insurance shown in the Declarations.

**Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

1. Results in discharge of any substance from an automatic fire protection system; or

2. Is directly caused by freezing.

E. Paragraph **A.6. Coverage Extensions** does not apply and is replaced by the following:

**Coverage Extensions**

In addition to the Limits of Insurance of **SECTION I — PROPERTY,** you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Coverage Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

Unless otherwise stated in this Endorsement or in a specific Coverage Extension, Coverage Extensions:

1. Are in addition to the Building and Business Personal Property Limits of Insurance shown in the Declarations;

2. Apply to each described premises on a per occurrence basis;

3. Are subject to the Deductible provision of this Endorsement; and

4. Are stand-alone Coverage Extensions that do not:

   a. Impact the coverage scope or limits applicable to any Covered Property, Business Personal Property, Personal Property of Others or any other Coverage Extension; or

   b. Otherwise modify this policy's coverage scope or limits.

**Additional Costs**

You may extend the insurance provided by this Coverage Form to pay for Additional Costs as a result of direct physical loss or damage to buildings at described premises caused by or resulting from a Covered Cause of Loss.

1. Additional Costs mean only the following necessary additional expenses you have paid over and above the estimated completed cost of any building or structure covered by this Coverage Extension:

   a. Additional real estate broker fees or commission;

   b. Additional architect, engineering and consulting fees other than fees and costs billed by and payable to independent or public adjusters or any of their affiliated entities;

   c. Additional legal or accounting fees; and

   d. Additional advertising and promotional expenses.

2. This Coverage Extension does not apply to:

   a. Claim Expenses; or

   b. Ordinance Or Law.

3. We will pay any covered loss of Additional Costs only for that period of time that:

   a. Begins on the date of the Covered Cause of Loss; and

   b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

   The most we will pay under this Coverage Extension is the limit shown in the Schedule.

**Appurtenant Structures**

1. When there is Building Limit of Insurance shown in the Declarations at the described premises, you may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to incidental appurtenant structures within 1,000 feet of the described premises, caused by or resulting from a Covered Cause of Loss.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**BP 72 46 07 21**
**Page 12 of 27**

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

2. When there is a Business Personal Property Limit of Insurance shown in the Declarations at the described premises, you may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to Business Personal Property within incidental appurtenant structures within 1,000 feet of the described premises, caused by or resulting from a Covered Cause of Loss.

3. Incidental appurtenant structures include storage buildings, carports, garages and similar structures which have not been specifically described in the Declarations.

The most we will pay for loss or damage under this Coverage Extension for any combination of loss or damage to Building and Business Personal Property is the limit shown in the Schedule.

## Arson, Theft and Vandalism Rewards

(This provision does not apply in New York)

We will pay for rewards given to any person or persons other than you; your officers; your partners or "members"; your "managers"; your employees; or public police, or fire officials for information leading to a conviction in connection with:

1. A fire loss to the described premises caused by arson;

2. An actual or attempted theft of "money", "securities", or Covered Property; or

3. A vandalism loss to the described premises.

The most we will pay under this Coverage Extension is the limit shown in the Schedule, or the amount of the claim, whichever is less. This is the most we will pay regardless of the number of persons who provided information.

## Back-Up Of Sewers And Drains

You may extend the insurance provided by this Coverage Form to pay for direct loss or damage caused by:

1. Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

2. Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

With respect to Paragraph **2.** above, we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

This Coverage Extension does not apply to loss or damage resulting from:

1. Your failure to keep a sump pump or its related equipment in proper working condition; or

2. Your failure to perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the schedule.

**This Coverage Extension is not flood insurance.** We will not pay for direct physical loss or damage from water that backs up or overflows from a sewer, drain or sump pump caused by any flood whether or not the flood contributes concurrently or in any sequence to the loss. Flood includes the accumulation of surface water, waves, tides, tidal waves, overflow of streams or other bodies of water, or their spray, all whether driven by wind or not that enters the sewer or drain system.

## Blanket Additional Coverage

You may extend the insurance provided by this Coverage Form to apply to a Blanket Additional Coverage Limit of Insurance, which applies at each described premises to the sum of all covered losses under the coverages described below. You may allocate this limit among the coverages as you desire.

The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under the Blanket Additional Coverage is the limit shown in the Schedule.

The Blanket Additional Coverage consists of the following coverages:

1. **Accounts Receivable**

   Within the Blanket Additional Coverage Limit of Insurance, we will pay for direct physical loss or damage to your records of "accounts receivable" at the described premises caused by or resulting from a Covered Cause of Loss.

   For "accounts receivable" not at the described premises, the most we will pay is up to the limit shown in the Schedule unless you give us written notice within 10 days after removal of your records of "accounts receivable" because of imminent danger of loss. We will pay for loss while they are:

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

BP 72 46 07 21
Page 13 of 27

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

a. At a safe place away from your described premises.

b. Being taken to and returned from that place.

This off-premises "accounts receivable" limit is included in and not in addition to the Blanket Additional Coverage limit.

Paragraph **B. Exclusions** in Section I — Property does not apply to this Coverage Extension except for:

a. Governmental Action;

b. Nuclear Hazard;

c. War and Military Action;

d. Dishonesty;

e. False Pretense;

f. Weather Conditions;

g. Acts or Decisions;

h. Negligent Work; and

i. Accounts Receivable Exclusion.

2. **Electronic Information Systems**

Within the Blanket Additional Coverage Limit of Insurance, we will pay for direct physical loss or damage to your "computer(s)" and "electronic data".

This Coverage Extension is subject to the provisions of the Electronic Information Systems Coverage Endorsement **BP 70 27** attached to this policy.

3. **Spoilage**

Within the Blanket Additional Coverage Limit of Insurance, when a Business Personal Property Limit is shown in the Declarations for the described premises, you may extend the insurance provided by this Coverage Form to apply to direct loss or damage to "perishable stock" caused by:

a. A change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment at the described premises;

b. Contamination by a refrigerant only while the refrigerating apparatus or equipment is at the described premises; or

c. Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises due to conditions beyond your control.

We will not pay for loss or damage to "perishable stock" located:

a. On buildings;

b. In the open; or

c. In vehicles.

Paragraph **B. Exclusions** in **Section I — Property** is replaced by the following:

a. Of the exclusions contained in Paragraph **B.1.** in Section I — Property, only the following apply:

(1) Earth Movement;

(2) Governmental Action;

(3) Nuclear Hazard;

(4) War And Military Action; and

(5) Water.

b. The following exclusions are added:

We will not pay for loss or damage caused by or resulting from:

(1) The disconnecting of any refrigeration, cooling or humidity control systems from the source of electrical power;

(2) The shutting off of any switch or other device used to control the flow of electric power or current;

(3) The inability of an electrical utility company, your stationary heating plant or any other power source to provide sufficient heat or power due to:

(i) Lack of fuel;

(ii) Lack of capacity to make enough heat or power; or

(iii) Order of the government.

(4) Breaking of any glass that is a permanent part of any refrigeration, cooling or humidity control system.

"Perishable Stock" means personal property:

1. Maintained under controlled temperature or humidity conditions for its preservation; and

2. Susceptible to loss or damage if the controlled temperature or humidity conditions change.

4. **Valuable Papers and Records - Cost of Research**

Within the Blanket Additional Coverage Limit of Insurance, we will pay for direct physical loss or damage to your "valuable papers and records" or those in your care, custody or control at the described premises caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace, or restore the lost information on lost or damaged "valuable papers and records", for which duplicates do not exist.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**BP 72 45 07 21**
**Page 14 of 27**

**INSURED'S COPY**

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

For "valuable papers and records" not at the described premises, the most we will pay is the limit shown in the Schedule. This off-premises "valuable papers and records" limit is included in and not in addition to the Blanket Additional Coverage limit.

Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

Paragraph **B. Exclusions** in Section I — Property does not apply to this Coverage Extension except for:

a. Governmental Action;

b. Nuclear Hazard;

c. War and Military Action;

d. Dishonesty;

e. False Pretense;

f. Errors Or Omissions;

g. Weather Conditions;

h. Acts or Decisions; and

i. Negligent Work.

### Building Owner - Leasehold Interest

1. You may extend the insurance provided by this Coverage Form to apply to loss of rental income in the event that your tenant(s) cancel their lease(s) in a described premises due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss.

2. Loss of Rental Income does not include:

    a. Prepaid Rent;

    b. Security and other deposits made by tenants;

    c. Insurance, taxes or other payments you made on behalf of the tenants.

3. We will pay only for loss of rental income that you sustain after tenantability is restored and until the earlier of:

    a. The date you lease the premises to another tenant;

    b. 12 months immediately following the "period of restoration"; or

    c. The normal expiration date of the cancelled lease(s).

The most we will pay for loss of rental income under this Coverage Extension is the limit shown in the Schedule.

### Building Owner - Tenant Move Back Expenses

1. You may extend the insurance provided by this Coverage Form to apply to expenses you incur as building owner to move tenants back into a described premises that was previously vacated due to temporary un-tenantability caused by direct physical loss or damage by a Covered Cause of Loss.

2. We will pay only for the following move back expenses that are documented, reasonable and necessary:

    a. Packing, insuring and transporting Business Personal Property;

    b. Re-establishing electric utility and communication services, less any refunds due tenants from discontinued services;

    c. Assembly and setting up fixtures and equipment; or

    d. Unpacking and reshelving "stock" and supplies.

3. We will pay only for move back expenses incurred within 60 days of the date that the portion of the building rented by your tenant has been repaired or rebuilt and is ready for occupancy.

4. If your tenants have valid and collectible insurance for move back expenses, we will pay only for the amount in excess of the amount payable from such other insurance.

The most we will pay for move back expenses under this Coverage Extension is the limit shown in the Schedule.

### Claim Expenses

You may extend the insurance provided by this Coverage Form to apply to necessary and reasonable expenses you incur at our specific request to assist us in:

1. The investigation of a claim or suit; or

2. The determination of the amount of loss, such as taking inventory or auditing business records.

We will not pay for:

1. Any expenses incurred, directed or billed by or payable to attorneys, insurance adjusters or their associates or subsidiaries.

2. Any costs incurred due to the Loss Condition - Appraisal.

3. Any expenses incurred, directed or billed by or payable to insurance agents or brokers or their associates or subsidiaries.

The most we will pay under this Coverage Extension is the limit shown in the Schedule.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

## Commercial Tools and Small Equipment

1. You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to commercial tools and small equipment including communication devices and diagnostic equipment usual to your business operations which are:

   a. Your property;

   b. The property of others in your care, custody or control; or

   c. The property of your employees. Damage to the property of your employees is limited to while on your premises

   but only if such loss or damage is caused by or results from a Covered Cause of Loss or is caused by flood, earthquake or landslide.

2. In addition to the items listed within **Property Not Covered**, we will not pay for any loss to the following property:

   a. Watercraft or watercraft parts and equipment;

   b. Commercial tools and small equipment that are permanently mounted to a vehicle, including trailers;

   c. Tires or tire tubes, attached or unattached, for use with commercial tools and small equipment, unless the loss or damage is caused by "theft", malicious mischief, or the result of a "specified cause of loss"; or

   d. Any property while underground, airborne or waterborne.

3. We will not pay for any loss caused by or resulting from:

   a. Any repair, adjusting, servicing, testing or maintenance process unless fire or explosion ensues, then only for the loss caused by such ensuing fire or explosion;

   b. "Theft" from an unattended vehicle including loss:

      (1) From inside a vehicle, including trailers or from a permanently mounted toolbox, except when:

         (a) Securely locked;

         (b) There is visible evidence that entry was forced; and

         (c) its windows were fully closed; or

      (2) While items are placed on the exterior of an unattended vehicle, including trailers, unless the item:

         (a) Was secured;

         (b) Was protected by privacy locks; and

         (c) There is visible evidence that removal was accomplished by force.

4. The most we will pay for any loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule but not more than $1,000 for any one tool and not more than $2,500 for any one tool box or piece of small equipment.

## Computer Fraud

If a limit of insurance is shown in the Declarations for Computer Fraud, you may extend the insurance provided by this Coverage Form to apply to Computer Fraud.

This Coverage Extension is subject to the provisions of the Computer Fraud Endorsement **BP 72 25** attached to this policy.

The most we will pay under this Coverage Extension is the limit shown in the Schedule for any one "occurrence".

## Credit Card Slips

We will pay for amounts you are unable to collect due to loss of or damage to credit card slips while located at the described premises as the result of a Covered Cause of Loss.

It is your responsibility to demonstrate the amount of the loss under this Coverage Extension. If you are unable to conclusively demonstrate the amount of loss, the amount of the loss will be determined as follows:

1. If you have been in business for more than twelve months at the location of the loss, one-thirtieth (1/30) of the average monthly amount of credit card slips will be considered as average daily credit card slips for that location.

   The twelve months immediately preceding the discovery of the loss will be used to determine the average monthly amount.

2. If you have been in business for less than twelve months at the location of the loss, the average daily credit card slips shall be one-thirtieth (1/30) of the average monthly amount of credit card slips for the number of months you have been in business at that location.

3. The average daily credit card slips will be multiplied by the number of days for which slips are lost to determine the amount of the loss subject to the maximum limit indicated below.

The most we will pay as a result of loss or damage to credit card slips under this Coverage Extension is the limit shown in the Schedule.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**Deferred Payments**

You may extend the insurance provided by this Coverage Form to cover your interest in lost or damaged personal property, caused by or resulting from a Covered Cause of Loss, sold by you under a conditional sale or trust agreement or any installment or deferred payment plan after delivery to buyers.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule.

When loss occurs and the buyer continues to pay you, there will be no loss payment.

In the event of loss or damage covered by this Coverage Extension:

1. When a total loss to that property occurs, deferred payments are valued on the amount shown on your books as due from the buyer.

2. When a partial loss to that property occurs and the buyer refuses to continue payment, forcing you to repossess, deferred payments are valued as follows:

   a. If the realized value of the repossessed property is greater than or equal to the amount shown on your books as due from the buyer, we will make no payment; but

   b. If the realized value of the repossessed property is less than the amount shown on your books as due from the buyer, we will pay the difference.

**Employee Theft (including Employee Benefit Plans)**

If a limit of insurance is shown in the Declarations for Employee Theft, you may extend the insurance provided by this Coverage Form to apply to Employee Theft.

This Coverage Extension is subject to the provisions of the Employee Theft Endorsement **BP 72 24** attached to this policy.

The most we will pay under this Coverage Extension is the limit shown in the Schedule for any one "occurrence".

**Expediting Expenses**

You may extend the insurance provided by this Coverage Form to apply to necessary and reasonable expenses you incur to make temporary repairs, expedite permanent repairs, or expedite permanent replacement, at the described premises if the described premises has sustained direct physical loss or damage causes by a Covered Cause of Loss.

Expediting expenses include overtime wages and the extra cost of express or other rapid means of transportation.

Expediting expenses do not include expenses you incur for the temporary rental of property or temporary replacement of damaged property.

The most we will pay under this Coverage Extension is the limit shown in the Schedule.

**Fine Arts**

You may extend the insurance provided by this Coverage Form to apply to fine arts.

This Coverage Extension is subject to the provisions of the Fine Arts Endorsement **BP 72 27** attached to this policy.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule for any one item of fine art and the limit shown in the Schedule for any one occurrence.

**Fire Department Service Charge**

When the Fire Department is called to save or protect Covered Property from direct physical loss or damage caused by or resulting from a Covered Cause of Loss, we will pay for your liability for fire department service charges:

1. Assumed by contract or agreement prior to loss; or

2. Required by local ordinance.

The most we will pay under this Coverage Extension is the limit shown in the Schedule. The limit shown in the Schedule is the most we will pay regardless of the number of responding fire departments or fire units and the number or type of services performed.

**Fire Extinguisher Systems Recharge Expense**

1. We will pay:

   a. The lesser of the cost to recharge or replace your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 1,000 feet of the described premises; and

   b. For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

2. No coverage will apply if the fire extinguishing system is discharged during installation or testing.

3. The most we will pay under this Coverage Extension is the actual cost/loss sustained.

**Forgery Or Alterations**

If a limit of insurance is shown in the Schedule for Forgery Or Alteration, you may extend the insurance provided by this Coverage Form to apply to Forgery Or Alterations.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**BP 72 46 07 21**
**Page 17 of 27**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

This Coverage Extension is subject to the provisions of the Forgery Or Alterations Endorsement **BP 72 68** attached to this policy.

The most we will pay under this Coverage Extension is the limit shown in the Schedule for any one "occurrence".

**Funds Transfer Fraud**

If a limit of insurance is shown in the Schedule for Funds Transfer Fraud, you may extend the insurance provided by this Coverage Form to apply to Funds Transfer Fraud.

This Coverage Extension is subject to the provisions of the Funds Transfer Fraud Endorsement **BP 72 26** attached to this policy.

The most we will pay under this Coverage Extension is the limit shown in the Schedule for any one "occurrence".

**Glass Expenses**

In the event direct physical loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss results in loss or damage to building glass, we will pay for glass expenses incurred to:

1. Repair and replace frames immediately encasing and contiguous to such glass when necessary because of such damage;

2. Install temporary plates in or board up openings containing such glass when necessary because of unavoidable delay in repairing or replacing such damaged glass;

3. Remove or replace any obstructions other than window displays, when necessary in replacing such damaged glass, lettering or ornamentation; and

4. Repair or replace damage to or destruction of the lettering and ornamentation of glass including loss caused by chemicals accidentally or maliciously applied.

This Coverage Extension is included within the Building and/or Business Personal Property Limit of Insurance shown in the Declarations.

**Installation Property**

1. You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to "installation property" while:

    a. At a premises, other than a described premises, where you or subcontractors working for you are performing operations;

    b. At any temporary storage location you do not own, lease or operate; or

    c. While in transit;

    but only if such loss or damage is caused by or results from a Covered Cause of Loss or is caused by flood, earthquake or landslide.

2. "Installation property" means your property and property of others for which you are liable or in which you have an interest, which is intended for installation, such as, but not limited to materials, supplies, fixtures, machinery and equipment and including labor or services furnished in connection with the installation.

3. This Coverage Extension does not apply to Commercial Tools and Small Equipment which is covered under the Commercial Tools and Small Equipment Coverage Extension.

4. The most we will pay for any loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule.

**Lock Replacement Coverage**

We will pay for the cost to replace locks necessitated by the theft of keys from your premises.

The most we will pay for loss under this Coverage Extension is the limit shown in the Schedule.

Each loss for lock replacement covered by this Coverage Extension is subject to a $50 deductible.

**Loss Payment on Merchandise Sold**

You may extend the coverage that applies to your Business Personal Property to cover direct physical loss or damage to merchandise that you have sold but not yet delivered caused by or resulting from a Covered Cause of Loss.

The basis of the valuation of such merchandise shall be the price paid by the customer to the insured, not to exceed the amount for which the insured is legally liable.

This Coverage Extension is included within the Business Personal Property Limit of Insurance shown in the Declarations for each described premises.

**Mobile Equipment**

You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to your mobile equipment such as fork lifts, lawn mowers, electric carts, tractors and similar vehicles, which are used principally on the described premises to service the premises or your business caused by or resulting from a Covered Cause of Loss.

This Coverage Extension does not apply to vehicles which are licensed for use on public roads, not principally kept on the described premises or insured elsewhere.

The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**BP 72 46 07 21**
**Page 18 of 27**

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

## Money and Securities

1. We will pay for loss of "money" and "securities":

   a. Inside the "premises" or "banking premises":

      (1) Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

      (2) Resulting directly from disappearance or destruction.

      The most we will pay for loss in any one "occurrence" is the limit shown in the Schedule.

   b. Outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

      The most we will pay for loss in any one "occurrence" is the limit shown in the Schedule.

2. For purposes of this Coverage Extension, an "occurrence" means:

   a. An individual act or event;

   b. The combined total of all separate acts or events whether or not related; or

   c. A series of acts or events whether or not related;

   committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations.

3. This Coverage Extension does not cover:

   a. Acts by you, your partners or "members" or of "employees", "managers", directors, trustees or authorized representatives:

      (1) Whether acting alone or in collusion with other persons; or

      (2) While performing services for you or otherwise.

   b. Loss that is an indirect result of an "occurrence" covered by this Coverage Extension including, but not limited to loss resulting from:

      (1) Your inability to realize income that you would have realized had there been no loss of or damage to "money" or "securities";

      (2) Payment of damages of any type for which you are legally liable;

      (3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

   c. Loss resulting from accounting or arithmetical errors or omissions.

   d. Loss resulting from the giving or surrendering of property in any exchange or purchase.

   e. Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

   f. Fees, costs and expenses incurred by you which are related to any legal action.

5. You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

## Money Orders and Counterfeit Money

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise "money" or services:

1. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

2. "Counterfeit money" that is acquired during the regular course of business.

This Coverage Extension does not cover:

1. Acts by you, your partners or "members" or of "employees", "managers", directors, trustees or authorized representatives:

   a. Whether acting alone or in collusion with other persons; or

   b. While performing services for you or otherwise;

2. Loss that is an indirect result of an "occurrence" covered by this Coverage Extension including, but not limited to loss resulting from:

   a. Your inability to realize income that you would have realized had there been no loss of or damage to "money" or "securities";

   b. Payment of damages of any type for which you are legally liable;

   c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

3. Loss resulting from accounting or arithmetical errors or omissions.

4. Loss resulting from the giving or surrendering of property in any exchange or purchase.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

5. Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

6. Fees, costs and expenses incurred by you which are related to any legal action.

For purposes of this Coverage Extension, an "occurrence" means:

1. An individual act or event;

2. The combined total of all separate acts or events whether or not related; or

3. A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations.

The most we will pay for any one loss under this Coverage Extension is the limit shown in the Schedule.

**Newly Acquired or Constructed Property**

1. When a Building Limit of Insurance is shown in the Declarations, you may extend the insurance that applies to Building to apply to:

   a. Your new buildings while being built on the described premises; and

   b. Buildings you acquire at premises, other than the described premises, intended for:

      (1) Similar use as the building described in the Declarations; or

      (2) Use as a warehouse.

   The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule for each newly acquired property.

2. When a Business Personal Property Limit of Insurance is shown in the Declarations, you may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

   The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule for each newly acquired property.

3. Insurance under this Coverage Extension for each newly acquired or constructed property will end when any of the following first occurs:

   a. This policy expires;

   b. The number of days shown in the Schedule after you acquire or begin to construct the property; or

c. You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

**Non-Owned Detached Trailers**

1. When a Business Personal Property Limit of Insurance is shown in the Declarations at the described premises, you may extend the insurance provided under this Coverage Form to apply to direct physical loss or damage to trailers or semi-trailers that you do not own caused by a Covered Cause of Loss, provided that:

   a. The trailer or semi-trailer is used in your business;

   b. The trailer or semi-trailer is in your care, custody or control at the described premises; and

   c. You have a contractual responsibility to pay for loss or damage to the trailer or semi-trailer.

2. We will not pay for loss or damage that occurs:

   a. While the trailer or semi-trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion; or

   b. During hitching or unhitching operations, or when a trailer or semi-trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

3. The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule.

4. This insurance applies in excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**Off Premises Utility Services - Direct Damage**

You may extend the insurance provided by this Coverage Form to apply to loss or damage to Covered Property caused by the interruption of services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following types of property not located on the described premises:

1. Water Supply Services meaning the following types of property supplying water to the described premises:

   a. Pumping stations; and

   b. Water mains.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

2. Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

   a. Communication transmission lines, including optic fiber transmission lines;

   b. Coaxial cables; and

   c. Microwave radio relays except satellites.

3. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

   a. Utility generating plants;

   b. Switching stations;

   c. Substations;

   d. Transformers; and

   e. Transmission lines.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule.

**Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage, including debris removal expense, to the following outdoor property owned or leased by you caused by or resulting from a Covered Cause of Loss:

1. Outdoor fences;

2. Outdoor signs and flagpoles whether or not attached to buildings;

3. Outdoor lights, whether or not attached to buildings;

4. Paved surfaces, including but not limited to bridges, roads, walks, foot and cart bridges, patios and parking lots;

5. Playground equipment;

6. Radio and television receiving equipment including loss or damage to your radio and television antennas, satellite dishes and similar audio/visual receiving equipment, their lead-in wiring, masts or towers;

7. Outdoor tents, canopies, and awnings of fabric or slate construction not attached to a building and located on your described premises;

8. Ornamental Gardens. However, loss or damage caused by weight of ice, snow or sleet is not covered;

9. Hardscape landscaping consisting of masonry or stone bridges, walks, patios, retaining walls or similar surfaces or wooden landscaping bridges, permanent objects whose primary function is decoration, benches, statues, fountains, monuments and gazebos or similar structures; and

10. Outdoor artwork and decorative objects.

However, this Coverage Extension does not apply to loss or damage caused by freezing or thawing.

The most we will pay including debris removal expense, for loss or damage to any combination of Covered Property, Business Income and Extra Expense, under this Coverage Extension is the limit shown in the Schedule.

**Outdoor Trees, Shrubs and Plants**

You may extend the insurance provided by this Coverage Form, including debris removal expense, to apply to loss of your outdoor trees, shrubs and plants, caused by or resulting from a Covered Cause of Loss other than windstorm, hail, or weight of snow, ice or sleet.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule, but not more than $2,500 for any one tree, shrub or plant.

**Personal Effects**

You may extend the insurance that applies to Your Business Personal Property to apply to direct physical loss or damage to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule.

Each loss for personal effects owned by any one individual is subject to a $100 deductible.

**Property in Transit (Including F.O.B. Shipments)**

1. You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to personal property used in your business that is in transit at your risk more than 1,000 feet from the described premises caused by or resulting from a Covered Cause of Loss or caused by flood, earthquake or landslide.

   We cover property shipped:

   a. By any type of carrier you do not own, lease, or operate; or

   b. In or on any vehicle you own, lease, or operate.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

2. We will also pay for loss or damage to property you ship on a F.O.B., meaning Free on Board, basis if you cannot collect the loss from the consignee. But we will only pay the amount of your interest in the property.

3. This Coverage Extension does not apply to:

   a. Personal Property At Unnamed Premises - Within the Coverage Territory;

   b. Salesperson's Samples

   which are covered under separate Coverage Extensions.

4. The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule.

**Personal Property At Unnamed Premises - Within the Coverage Territory**

You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to your Business Personal Property and Personal Property of Others while at an "unnamed premises" caused by or resulting from a Covered Cause of Loss and for direct loss or damage caused by flood, earthquake or landslide.

For this Coverage Extension, "unnamed premises" means locations:

1. Owned, leased or operated by you; or

2. Not owned, leased or operated by you, where Your Business Personal Property or Personal Property of Others in your care, custody or control is located, including fairs, trade shows or exhibitions;

that are within the Coverage Territory and not described in the Declarations.

This Coverage Extension does not apply to:

1. Commercial Tools and Small Equipment;

2. Installation Property;

3. Newly Acquired or Constructed Property;

4. Personal Effects;

5. "Portable Computers";

6. Property In Transit;

7. Salesperson's Samples; and

8. Property outside of the Coverage Territory.

which are covered under separate Coverage Extensions.

The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule.

**Personal Property At Unnamed Premises - Outside the Coverage Territory**

You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to Business Personal Property and Personal Property of Others while at an "unnamed premises" caused by or resulting from a Covered Cause of Loss.

For this Coverage Extension, "unnamed premises" means locations:

1. Owned, leased or operated by you; or

2. Not owned, leased or operated by you, where Your Business Personal Property or Personal Property of Others in your care, custody or control is located, including fairs, trade shows or exhibitions;.

that are at worldwide locations outside the Coverage Territory except within any country upon which the United States government has imposed sanctions, embargoes or any similar prohibition.

This Coverage Extension does not apply to:

1. Commercial Tools and Small Equipment;

2. Installation Property;

3. Newly Acquired or Constructed Property;

4. Personal Effects;

5. "Portable Computers";

6. Property In Transit except as provided below;

7. Salesperson's Samples; and

8. Property within the Coverage Territory.

The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense for this Coverage Extension is the limit shown in the schedule except for Property In Transit which is $5,000.

**Salesperson's Samples**

1. You may extend the insurance provided by the Coverage Form to apply to direct physical loss or damage to samples of your stock in trade including containers while:

   a. In the custody of your sales representative, agent or any employee who travels with sales samples;

   b. In your custody while you are acting as a sales representative; or

   c. In transit between premises that you own, lease or operate and your sales representative;

   but only if such loss or damage is caused by or results from a Covered Cause of Loss.

2. We will not pay for any loss to the following property:

   a. Property which has been sold;

Copyright, 2020 Selective Insurance Company of America. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**BP 72 46 07 21
Page 22 of 27**

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

b. "Money" and "securities", "valuable papers and records" or "accounts receivable";

c. Jewelry, precious or semi-precious stones, gold, silver, platinum, or other precious metals or alloys;

d. Furs, fur garments or garments trimmed with fur; or

e. Any property while waterborne.

3. The following exclusions set forth in Paragraph B. Exclusions in Section I Property do not apply:

a. B.1.b. Earth Movement;

b. B.1.g. Water;

c. B.2.g. False Pretense;

d. B.2.l.(4) Settling, cracking, shrinking or expansion;

e. B.2.l.(7)(a) Dampness or dryness of atmosphere; and

f. B.2.l.(7)(b) Changes in or extremes of temperature.

4. We will not pay for any loss or damage caused by "theft" from an unattended vehicle including:

a. Loss from inside a vehicle, including trailers, or from a permanently mounted exterior toolbox except when:

(1) Securely locked;

(2) There is visible evidence that entry was forced; and

(3) Its windows were fully closed; or

b. While items are placed on the exterior of an unattended vehicle, including trailers, unless the item:

(1) Was secured;

(2) Was protected by privacy locks; and

(3) There is visible evidence that removal was accomplished by force.

5. The most we will pay for any loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the schedule.

**Tenant Building and Business Personal Property Coverage - Required by Lease**

You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to Building and Business Personal Property for which you have a contractual responsibility to insure caused by or resulting from a Covered Causes of Loss. This includes building fixtures, machinery and equipment that you are contractually responsible to insure.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule.

**Theft Loss to Building**

You may extend the coverage that applies to your Business Personal Property to cover loss directly resulting from an act of theft to that portion of a non-owned building that you occupy.

**Unauthorized Business Card Use**

You may extend the insurance provided by this Coverage Form to apply to loss and related actually incurred costs resulting from the theft or unauthorized use of your business credit, debit or charge cards issued in your business name and used solely for business purposes.

We will not pay for the theft or unauthorized use by employees of business credit, debit or charge cards or when such cards have been entrusted to a person other than the person whose name is on the card.

The most we will pay under this Coverage Extension is the limit shown in the Schedule.

F. Paragraph B. Exclusions is amended as follows:

1. The following is added to Exclusion 1.a. **Ordinance or Law:**

This exclusion applies except as provided under the Additional Coverage for Ordinance Or Law.

2. The following is added to Exclusion 1.g. **Water:**

This exclusion applies except as provided under the Coverage Extension for Back-Up of Sewers and Drains.

3. The following exclusion is added to B.1.:

k. **Computer Virus or Harmful Code**

Computer virus, harmful code or similar instruction introduced into or enacted on a computer system, including "electronic data", or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

This exclusion does not apply to the extent that coverage is provided under the Electronic Information Systems coverage which is part of the Blanket Additional Coverage.

G. Paragraph C. Limits Of Insurance is amended as follows:

1. Paragraph C.2. is deleted and does not apply.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

2. Paragraph **C.5. Business Personal Property Limit - Seasonal Increase** does not apply and is replaced by the following:

a. Subject to meeting the requirements outlined in Paragraph b. below, the Limit of Insurance for Business Personal Property will increase by the percentage shown in the Schedule to provide for seasonal variations.

b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations for the described premises is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

(2) The period of time you have been in business as of the date the loss or damage occurs.

Otherwise, the Limit of Insurance for Business Personal Property will automatically increase by only 10% to provide for seasonal variations.

If Business Personal Property is written on a blanket basis, the blanket limit does not apply to the Business Personal Property Limit – Seasonal Increase provision. The seasonal increase percentage is applied to the applicable described premises Business Personal Property limit shown in the Declarations.

**H.** Paragraph **D. Deductibles** does not apply and is replaced by the following:

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of **SECTION I — PROPERTY**.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under the following Coverage Extensions is $250:

a. Blanket Additional Coverage except for Spoilage. Deductible shown in the Declarations applies to Spoilage;

b. Commercial Tools and Small Equipment;

c. Computer Fraud;

d. Deferred Payments;

e. Employee Theft;

f. Fine Arts;

g. Forgery or Alterations;

h. Funds Transfer Fraud;

i. Glass Expenses;

j. Installation Property;

k. Money and Securities;

l. Money Orders and Counterfeit Paper;

m. Outdoor Property;

n. Outdoor Trees, Shrubs and Plants;

o. Salesperson's Samples;

p. Unauthorized Business Card Use.

3. Regardless of the Deductible applicable to any Coverage, Additional Coverage, or Coverage Extension, the Deductible shown in the Declarations is the most we will deduct from all loss or damage arising out of one occurrence.

4. No deductible applies to the following Additional Coverages:

a. Business Income;

b. Extra Expense;

c. Preservation of Property.

5. No deductible applies to the following Coverage Extensions:

a. Arson, Theft and Vandalism Rewards;

b. Claim Expenses;

c. Credit Card Slips;

d. Expediting Expenses;

e. Fire Department Service Charge;

f. Fire Extinguisher Systems Recharge Expense.

**I.** Paragraph **E. Property Loss Conditions** is amended as follows:

1. The following is added to Paragraph **E.5.d.**:

(8) If the Guaranteed Replacement Cost - Buildings option applies as shown in the Declarations, Paragraph (1) above does not apply to Buildings. Instead we will determine the value of Buildings at replacement cost (without depreciation) and without regard to the Limit of Insurance shown in the Declarations, subject to the following:

(a) We will not pay more for loss or damage on a replacement cost basis than the least of the following amounts, subject to (d) and (e) below.

(i) The actual cost to replace the damaged building or structure, provided that:

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**aa.** You report to us, within 90 days of the start of any additions, improvements or enlargements of $10,000 or more made to the described building(s) during the policy period; and

**bb.** You agree to increase the Limit of Insurance for the described building(s) to reflect the replacement cost value of the additions, improvements or enlargements.

**(ii)** The cost to replace, on the same premises, the damaged property with other property:

**aa.** Of comparable material and quality; and

**bb.** Used for the same purpose; or

**(iii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been rebuilt at the original premises.

**(b)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this endorsement provides if you notify us of your intent to do so within 180 days after the loss or damage.

**(c)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

**(d)** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(e)** Any additional Limit of Insurance provided by this option does not apply to loss or damage caused directly or indirectly by mine subsidence.

**J.** Paragraph **G. Optional Coverages** does not apply.

**K.** Paragraph **H. Property Definitions** is amended as follows:

**1.** Paragraph **9.** "period of restoration" definition is deleted and replaced by the following:

"Period of Restoration" means the period of time that:

**a.** Begins:

**(1)** For Business Income with no hour waiting period after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the described premises or dependent property unless one of the optional waiting period endorsements is attached to this policy; or

**(2)** For Extra Expense immediately after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises or dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

The expiration date of this policy will not cut short the "period of restoration".

**2.** Paragraph **14. "Valuable Papers and Records"** is deleted and replaced by:

**14.** "Valuable papers and records" means:

**a.** Inscribed, printed or written:

**(1)** Documents;

**(2)** Manuscripts; and

**(3)** Records,

including abstracts, books, deeds, drawings, films, maps, mortgages, X-ray negatives and prints and patient charts and records.

But "Valuable Papers and Records" does not mean "money" or "securities".

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

3. The following definitions are added:

15. "Accounts Receivable" means:

   a. All amounts due from customers that you are unable to collect;

   b. Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

   c. Collection expenses in excess of your normal collection expenses that are made necessary by the loss; and

   d. Other reasonable expenses that you incur to reestablish your records of "accounts receivable".

4. The following definitions are added and apply to the crime related coverage extensions:

16. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

17. "Custodian" means you or any of your partners or "members" or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

18. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount of details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

19. "Employee" means:

   a. Any natural person:

      (1) While in your service or for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any dishonest act committed by the "employee";

      (2) Who you compensate directly by salary, wages or commissions; and

      (3) Who you have the right to direct and control while performing services for you.

   b. Any natural person who is furnished temporarily to you:

      (1) To substitute for a permanent "employee" as defined in Paragraph 19.a. above, who is on leave; or

      (2) To meet seasonal or short-term work load conditions;

      while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises".

   c. Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph 19.b. above.

   d. Any natural person who is:

      (1) A trustee, officer, "employee", administrator or "manager" except an administrator or manager who is an independent contractor of any "employee benefit plan"; and

      (2) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan".

   e. Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you.

   f. Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of the "premises".

   g. Any "employee" of an entity merged or consolidated with you prior to the effective date of this policy.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

**h.** Any of your "managers", directors or trustees while:

**(1)** Performing acts within the scope of the usual duties of an "employee"; or

**(2)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors of board or trustees to perform specific, as distinguished from general directorial acts on your behalf.

But "employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in **19.a.** through **19.h.** above.

**20.** "Employee benefit plan" means any welfare or pension benefit plan that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**21.** "Forgery" means the signing of the name of another person or organization with intent to deceive. It does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**22.** "Fraudulent instruction" means:

**a.** An electronic, telegraphic, cable, teletype, tele facsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

**b.** A written instruction (other than those described in the Forgery or Alteration Coverage Extension) issued by you, which was forged or altered by someone other than you without your knowledge or consent or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

**c.** An electronic, telegraphic, cable, teletype, tele facsimile, telephone or written instruction initially received by you which purports to have been transmitted by an employee but which was in fact fraudulently transmitted by someone else without your or the employee's knowledge or consent.

**23.** "Funds" means "money" and "securities".

**24.** "Messenger" means you or a relative of yours or any of your partners or "members" or any "employee" while having care and custody of property outside the "premises".

**25.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, "electronic data" or any property specifically excluded by the Businessowners Coverage Form.

**26.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**27.** "Theft" means the unlawful taking of property to the deprivation of the insured.

**28.** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "money" and "securities":

**a.** By means of electronic, telegraphic, cable, teletype, tele facsimile or telephone instructions communicated directly through an electronic funds transfer system; or

**b.** By means of written instructions (other than those described in the Forgery or Alteration Coverage Extension) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**29.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

# AMENDATORY ENDORSEMENT

BUSINESSOWNERS
**BP 72 85 10 20**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS PROPERTY ENHANCEMENT

With respect to coverage provided by this endorsement, the provisions of the Businessowners Coverage Form and Businessowners Property Enhancement Endorsement apply unless modified by the endorsement.

**A.** Under Paragraph **D.** Additional Coverages, the following Paragraph **3.** is added to the lead-in wording:

   **3.** Are stand-alone Additional Coverages that do not:

   **a.** Impact the coverage scope or limits applicable to any Covered Property, Business Personal Property, Personal Property of Others, Business Income and Extra Expense or any other Additional Coverage; or

   **b.** Otherwise modify this policy's coverage scope or limits.

**B.** Under Paragraph **E.** Coverage Extensions, the following Paragraph **4.** is added to the lead-in wording:

   **4.** Are stand-alone Coverage Extensions that do not:

   **a.** Impact the coverage scope or limits applicable to any Covered Property, Business Personal Property, Personal Property of Others or any other Coverage Extension; or

   **b.** Otherwise modify this policy's coverage scope or limits.

Copyright, 2020 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**INSURED'S COPY**

**BP 72 85 10 20**
**Page 1 of 1**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| Policy Number: |
| S  2210263 |

# EMPLOYMENT PRACTICES LIABILITY INSURANCE
# COVERAGE DECLARATIONS

THIS INSURANCE PROVIDES CLAIMS MADE AND REPORTED COVERAGE. DEFENSE COSTS APPLY AGAINST THE LIMITS OF INSURANCE AND ARE SUBJECT TO THE DEDUCTIBLE.

THIS INSURANCE CONSISTS OF THIS DECLARATIONS PAGE, THE EMPLOYMENT PRACTICES LIABILITY COVERAGE, AND ANY ENDORSEMENTS LISTED IN ITEM 9. BELOW.

EXCEPT FOR THE GENERAL CONDITIONS AND LIMITATIONS, OR UNLESS STATED TO THE CONTRARY IN ANY COVERAGE PART, THE TERMS AND CONDITIONS OF EACH COVERAGE PART OF THIS POLICY APPLY ONLY TO THAT COVERAGE PART AND SHALL NOT APPLY TO ANY OTHER COVERAGE PART OF THIS POLICY. ANY TERM REFERENCED IN THE GENERAL CONDITIONS AND LIMITATIONS, WHICH IS DEFINED IN A COVERAGE PART, SHALL, FOR THE PURPOSES OF COVERAGE UNDER THAT COVERAGE PART, HAVE THE MEANING SET FORTH IN THAT COVERAGE PART. IF ANY PROVISION IN THE GENERAL CONDITIONS AND LIMITATIONS IS INCONSISTENT OR IN CONFLICT WITH THE TERMS AND CONDITIONS OF ANY COVERAGE PART, THE TERMS AND CONDITIONS OF SUCH COVERAGE PART SHALL CONTROL FOR PURPOSES OF THAT COVERAGE PART.

| | |
|---|---|
| Company Name: SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST | |
| Producer Name: THE REINARD AGENCY INC | 00-02680-00000 |
| **Item 1. and Item 2.**<br>Named Insured and Address<br>SEE COMMERCIAL POLICY COMMON DECLARATION:  IL-7025 | **Item 3.**<br>Policy Period:<br>From:   FEBRUARY 12, 2022<br>To:      FEBRUARY 12, 2023<br><br>12:01 A.M Standard Time At "your" Mailing Address Above. |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE APPLICABLE TERMS OF THIS COVERAGE, WE AGREE WITH YOU TO PROVIDE THE INSURANCE COVERAGE STATED IN THIS POLICY.

**Item 4.**

| Limits of Insurance: | | |
|---|---|---|
| | Aggregate Limit: | $250,000 |
| | Each "Claim" Limit: | $250,000 |
| | Prior Acts Aggregate Limit: | NOT COVERED |
| | Prior Acts Each "Claim" Limit: | NOT COVERED |

**Item 5.**

| Deductible: | $5,000 | Each "Claim" |
|---|---|---|

**Item 6.**

| Retroactive Date: | FEBRUARY 12, 2016 |
|---|---|
| Prior Acts Date: | NOT COVERED |

**Item 7.**

Form of Business: CORPORATION

**Item 8.**

Premium:    $297.00

**Item 9.**
Endorsements Attached to this Coverage:

REFER TO "COMMERCIAL POLICY FORMS AND ENDORSEMENT SCHEDULE"

COUNTERSIGNED BY: _____    DATE: _____
          (Authorized Representative)

EPL 00 03 04 07                      INSURED'S COPY

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| Previous Policy Number | Policy Number |
|---|---|
| S  2210263 | S  2210263 |

## SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST
3426 TORINGDON WAY, CHARLOTTE, NC 28277

## DECLARATIONS - COMMERCIAL UMBRELLA LIABILITY COVERAGE

**Item One - Name of Insured & Mailing Address**

SEE COMMERCIAL POLICY COMMON DECLARATION:  IL-7025

**Policy Period**

From:  **FEBRUARY 12, 2022**
To:    **FEBRUARY 12, 2023**
12:01 A.M., Standard Time At The
Insured's Mailing Address.

**Producer:**

SEE COMMERCIAL POLICY COMMON DECLARATION:  IL-7025

**Producer Number:**
00-02680-00000

**Named Insured is:** CORPORATION

**Business of the Named Insured:** RETAIL CARPET STORE

**Limits Of Insurance**

Occurrence Limit    $1,000,000.00          Aggregate Limit    $1,000,000.00

**Self Retained Limit:**          $.00

### Schedule of Underlying Insurance and Limits

**Standard Employers Liability or Stop-Gap Employers Liability Policy**          **Policy No.**    KWC1048122

Company    AmTrust Group

**Policy Period**
From:    FEBRUARY 12, 2022
To:      FEBRUARY 12, 2023

| | |
|---|---|
| Employers Liability Each Accident | $100,000 |
| Disease Each Employee | $100,000 |
| Disease Each Policy | $500,000 |

**Commercial General Liability Policy**          **Policy No.**

Company

**Policy Period**
From:
To:

General Aggregate
Products-Completed Operations
Personal and Advertising Injury Limit
Each Occurrence Limit

**Automobile Liability Policy**          **Policy No.**    S  221026306

Company    SELECTIVE INS CO OF THE S

**Policy Period**
From:    FEBRUARY 12, 2022
To:      FEBRUARY 12, 2023

Bodily Injury and Property
Damage Combined Each Accident          $1,000,000

**Premium Schedule:**

| Estimated Exposure Base | Rate | Rate Per | Annual Minimum Premium | Estimated Premium Due |
|---|---|---|---|---|

In the event of cancellation by the Named Insured we will receive and retain not less than as the Policy Minimum Premium.          $200.00

**Forms and Endorsements:**

SEE FORMS AND ENDORSEMENT SCHEDULE:  IL-7035

| JANUARY 20, 2022 | MID ATLANTIC REGION | |
|---|---|---|
| **Issue Date** | **Issuing Office** | **Authorized Representative** |

CX-0003 (01/99)          **INSURED'S COPY**          Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

| | Effective Date | | Policy Number |
|---|---|---|---|
| | FEBRUARY 12, 2022 | | S  2210263 |

## DECLARATIONS - COMMERCIAL UMBRELLA LIABILITY COVERAGE
## SCHEDULE OF UNDERLYING INSURANCE AND LIMITS EXTENSION

BOP

Company SELECTIVE INS CO OF THE S

Policy Period
  From:   FEBRUARY 12, 2022
  To:    FEBRUARY 12, 2023

Policy No. S   221026306
EACH OCCURENCE LIMIT:           $1,000,000
GENERAL AGGREGATE LIMIT:     $3,000,000
PRODUCT AGGREGATE LIMIT:     $3,000,000

---

**Policy No.**

Company

Policy Period
  From:
  To:

---

**Policy No.**

Company

Policy Period
  From:
  To:

---

**Policy No.**

Company

Policy Period
  From:
  To:

---

**Policy No.**

Company

Policy Period
  From:
  To:

---

**Policy No.**

Company

Policy Period
  From:
  To:

CX-0004 (01/99)

**INSURED'S COPY**

Case ID: 231001459

DocuSign Envelope ID: C3D4ED6F-0792-4122-9063-5F8FFD4B761F

# CYBER LIABILITY AND DATA BREACH RESPONSE COVERAGE

COMMERCIAL UMBRELLA LIABILITY
**CXL 497 06 20**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

The following is added to **SECTION I, COVERAGES,** Paragraph **B. EXCLUSIONS:**

**Cyber Liability and Data Breach Response Coverage Part Exclusion:**

If we or any of our affiliates have issued to you a policy that includes the **Cyber Liability and Data Breach Response Coverage Part** (inclusive of all forms bearing a CB prefix), no coverage exists for "ultimate net loss" in excess of the "retained limit" because of "bodily injury", "property damage" or "personal and advertising injury" covered by - or that, but for the exhaustion of policy limits, would be covered by - the **Cyber Liability and Data Breach Response Coverage Part.** The **Commercial Umbrella Liability Coverage Part** does not apply in excess of the **Cyber Liability and Data Breach Response Coverage Part.**

Copyright, 2019 Selective Insurance Company of America. All rights reserve.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**INSURED'S COPY**

Case ID: 231001459

**CERTIFICATE OF SERVICE**

I, Amy J. Blumenthal, hereby certify that on this 16th day of November, 2023 the

foregoing Notice of Removal was filed via ECF and available for viewing and downloading and

also served upon the following by the Courts electronic filing system and Email:

> Scott R. Gallant, Esquire
> Gallant & Tull
> One Penn Center, Suite 880
> 1617 John F. Kennedy Boulevard
> Philadelphia, PA 19103
> sgallant@sgallantlaw.com
> **Counsel for Plaintiff**

By: _____

Amy J. Blumenthal
KUTAK ROCK LLP
100 N. 18th Street, Suite 1920
Philadelphia, PA  19103
215-299-4384
amy.blumenthal@kutakrock.com

*Attorneys for Defendant Selective*
*Insurance Company of the Southeast*